**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|   |   |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION NATIONAL INDUSTRY PENSION FUND et al.,<br><br>  *Plaintiffs*,<br><br>  v.<br><br>FLAGSHIP FACILITY SERVICES, INC. et al.,<br><br>  *Defendants*. | Civil Action No. 25-3438 (TJK) |

## <u>MEMORANDUM ORDER</u>

Plaintiffs sue five corporations that supply janitorial services to Denver International Airport, alleging that they have failed to pay contributions to their pension fund and to provide the fund with certain reports.  Three Defendants move to dismiss the complaint in part for failure to state a claim.  For the reasons explained below, the Court will grant the motion but will permit Plaintiffs leave to file an amended complaint to try to fix the problems identified.

## I.    Background

Plaintiffs are the Service Employees International Union ("SEIU") National Industry Pension Fund (the "Pension Fund"), and its Board of Trustees.  ECF No. 1 ¶¶ 5, 7.  The Pension Fund provides retirement benefits to workers whose employers are signatories to a collective bargaining agreement, or CBA, with a local member union of the SEIU.  *Id.* ¶ 14.  "Participating employers must make a monthly contribution to the Pension Fund, which is the sum of a base contribution and a supplemental contribution."  *Id.* ¶ 15.  "The terms of the base contribution are established in the CBA between the participating employer and the local union, and are, generally, the product of the hours recorded for the workers employed by a participating employer and a monetary

amount established in the CBA." *Id*. ¶ 16. "The supplemental contribution is the product of the required base contribution, and a percentage set out in the [Pension] Fund's Rehabilitation Plan," which is a product of the Pension Fund's "critical status," as defined in the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*., since 2009. *Id*. ¶ 17; ECF No. 1-1; *see* 29 U.S.C. § 1085(b)(2).

Under ERISA, pension funds in "critical status" must adopt a "rehabilitation plan" and impose curative measures. *See generally* 29 U.S.C. § 1085. The rehabilitation plan must include "options to be proposed to the bargaining parties . . . to enable the plan to cease to be in critical status by the end of the rehabilitation period" which may include increases in employer contributions or decreases in benefit spending. *Id.* § 1085(e)(3)(A)(i). Upon adopting the rehabilitation plan, the pension fund must "provide to the bargaining parties 1 or more schedules showing revised benefit structures, revised contribution structures, or both, which, if adopted, may reasonably be expected to enable the [pension fund] to emerge from critical status in accordance with the rehabilitation plan." *Id.* § 1085(e)(1)(B)(i). One such schedule—called the "default schedule"—may be imposed on employers who fail to agree to any of the other schedules presented to them under certain conditions. *Id.* §§ 1085(e)(1)(B), (3)(C).

The Pension Fund established such a plan—the "Rehabilitation Plan"—shortly after entering critical status, with a rehabilitation period lasting until 2024. *See* ECF No. 1 ¶ 17; ECF No. 1-1 at 2. As required by statute, the Rehabilitation Plan set out schedules for contributing employers to supplement their contributions. *See* ECF No. 1-1. The Plan's default schedule requires those employers to make a monthly supplemental contribution to the Pension Fund equal to 62.5% of the base contribution that the relevant CBA requires them to contribute to the Pension Fund per month. *See* ECF No. 1 ¶ 28; ECF No. 1-1 at 8.

2

Defendants are five companies that provide janitorial services at Denver International Airport. In January 2021, Defendant Flagship Facility Services ("Flagship") entered into a "services procurement contract . . . with the City & County of Denver, Colorado." ECF No. 1 ¶ 19. Flagship then subcontracted parts of the contract to the four other Defendants. *Id*. ¶ 20. All five Defendants employ workers represented by Service Employees International Union Local 105 ("Local 105"), an SEIU member union that participates in the Pension Fund. *Id*. ¶¶ 22–23. Plaintiffs allege that, after winning the contract, Flagship entered into a CBA with Local 105 and the other Defendants each then signed a "memorandum of agreement with Local 105, through which they agreed to be bound by the terms" of its CBA with Flagship, "including any addendums, side letters and MOUs to the [CBA]." *Id*. ¶¶ 21, 24. Importantly, Plaintiffs also allege that the "CBA between [Flagship] and Local 105 assumed the terms of a CBA between Local 105 and ISS Facility Services—the predecessor company to [Flagship] in providing janitorial services at Denver International Airport—which required ISS Facility Services to make a 62.5 percent supplemental contribution to the Pension Fund." *Id*. ¶ 22.

In sum, Plaintiffs allege that each Defendant is required to make the following contributions to the Pension Fund: "a monthly base contribution . . . in an amount equivalent to the product of forty cents ($0.40) and the total number of hours worked by the Local 105 workers who are employed by each Defendant"; and as "a matter of federal law, *see* 29 U.S.C. §§ 1085 (e)(3)(C)(i) & (ii), and [their] assumption of the terms of ISS Facility Services' CBA with Local 105, . . . a monthly supplemental contribution of 62.5 percent of the base contribution." *Id*. ¶¶ 27–28. But, they say, Defendants have failed to make any of these contributions and have also failed to provide the Pension Fund information that would allow it to calculate the number of Local 105 member-hours worked. *Id*. ¶¶ 29–30.

3

Plaintiffs sued in September 2025.  ECF No. 1.  In Count I, they allege that Defendants violated ERISA § 515 and § 301 of the Labor Management Relations Act, 29 U.S.C. § 141 *et seq.*, by failing to make the required monthly base and supplemental contributions to the Pension Fund. *Id.* ¶¶ 38–41.  In Count II, they allege that Defendants failed to submit remittance reports detailing the number of hours Local 105 members worked, in violation of the applicable CBAs.  *Id.* ¶¶ 42–44.  Plaintiffs request a monetary judgment equal to the delinquent contributions plus interest, liquidated damages, fees, and costs.  *Id.* at 9–10 (Prayer for Relief).  They also request an order compelling Defendants to produce the remittance reports required to calculate the contribution amounts.  *Id.*

Three of the five Defendants move to dismiss.[1]  ECF No. 30.  Flagship, AFL Maintenance Group, and Whayne & Sons Enterprises (collectively, "Moving Defendants") argue that Plaintiffs have failed to state a claim because the complaint does not include allegations that, if true, establish that they are bound by SEIU's prior CBA with ISS Facility Services or that they are liable under any other theory for supplemental contributions to the Pension Fund.  *See generally id.*  After Moving Defendants' motion to dismiss was fully briefed, Plaintiffs moved for the Court to take judicial notice of four exhibits which, they say, the Court may consider in resolving the motion. ECF No. 38.

## II.   Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A plaintiff states a facially plausible claim when he pleads "factual content that

---

[1] The two remaining Defendants have yet to appear, despite Plaintiffs purporting to have served them.  ECF Nos. 14, 21.

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court accepts as true "all well-pleaded factual allegations" and "construes reasonable inferences from those allegations in the plaintiff's favor." *Sissel v. HHS*, 760 F.3d 1, 4 (D.C. Cir. 2014).  But "mere conclusory statements" are not enough to establish a plausible claim, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## III.    Analysis

Moving Defendants argue that Plaintiffs have failed to plausibly allege that they are liable for the supplemental contributions of 62.5% of the base contributions.[2]  In response, Plaintiffs say that they adequately alleged Defendants' liability for the supplemental contributions on two grounds: first, that Defendants "assum[ed] . . . the terms of ISS Facility Services' CBA," which included the obligation to make those supplemental contributions, ECF No. 1 ¶¶ 22, 28, and second, under a section of ERISA that provides for the automatic imposition of a rehabilitation fund's default schedule on employers in certain cases, *see id.* ¶ 28; 29 U.S.C. § 1085(e)(3)(C).  Not so. The Court will dismiss that part of Count I against the Moving Defendants, but for the reasons explained below, will grant Plaintiffs' request to amend their complaint to try to correct this deficiency.

### A.    Plaintiffs Have Not Plausibly Alleged that Moving Defendants Assumed the Terms of a Prior CBA that Require Supplemental Contributions

Plaintiffs have failed to plausibly allege that Defendants are liable for the supplemental contributions through their assumption of the terms of the CBA between ISS Facility Services and

---

[2] Moving Defendants do not argue that Plaintiffs have failed to state a claim with respect to their monthly base contribution—the other part of Count I, *see* ECF No. 30-1 at 12—or Count II.

Local 105.  To repeat, Plaintiffs allege that the "CBA between [Flagship] and Local 105 assumed the terms of a CBA between Local 105 and ISS Facility Services—the predecessor company to [Flagship] in providing janitorial services at Denver International Airport—which required ISS Facility Services to make a 62.5 percent supplemental contribution to the Pension Fund."  *Id*. ¶ 22. Then, Plaintiffs allege, each other Defendant signed a "memorandum of agreement with Local 105, through which they agreed to be bound" by the CBA between Flagship and Local 104— including its agreement to provide supplemental contributions.  *Id.* ¶ 24.  But Moving Defendants have provided two of Flagship's CBAs with Local 105 for successive three-year terms, which, as they argue, "make no reference at all to ISS Facility Services or any prior collective bargaining agreement."[3]  ECF No. 30-1 at 9; *see* ECF Nos. 30-5, 30-6.  More to the point, Flagship's CBAs with Local 105 do not appear to assume the terms of any other CBA or suggest any other reason why Moving Defendants are liable for a monthly supplemental contribution.  *See* ECF Nos. 30-5, 30-6.  Under these circumstances, the Court need not credit any allegation or draw a reasonable inference to the contrary.  *See Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (declining to credit a factual allegation in a pleading contradicted by undisputed facts of which the court took judicial notice).

Plaintiffs seem to concede as much in their opposition, by abandoning the argument that Flagship's CBAs with Local 105 explicitly incorporate the terms of the ISS Facility Services CBA. Instead, they present a new theory of liability based on the continuity of the workforce between ISS Facility Services and Defendants.  *See* ECF No. 37 at 15–16.  And they ask the Court to take

---

[3] The Court may consider Flagship's CBA with Local 105 without converting the motion into one for summary judgment because Plaintiffs incorporate the CBA into the complaint by reference, its authenticity is not in dispute, and it is central to their allegations.  *See Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

judicial notice of facts contained in public records relating to Flagship's winning of the procurement contract that they say support this theory.[4]  ECF No. 38.  But "the Court must assess the sufficiency of [the Complaint] based on the allegations contained in that pleading, and not based on new claims or theories advanced in an opposition brief."  *Doe v. OPM*, 813 F. Supp. 3d 156, 178 (D.D.C. 2025).  Moreover, Plaintiffs request leave to amend their complaint to "elaborate on the theories of liability," including "why and how Flagship assumed the obligation to make rehabilitation plan contributions from its predecessor."  ECF No. 37 at 22.  Thus, as explained further below, rather than take judicial notice of these documents, the Court will simply allow Plaintiffs the chance to amend their complaint.

**B.    Plaintiffs Have Not Alleged Sufficient Facts to Support a Statutory Obligation on the Part of Moving Defendants for Supplemental Contributions**

Plaintiffs also allege that Defendants are liable for the supplemental contributions set out in the Rehabilitation Plan's Default Schedule "as a matter of federal law," citing two provisions of ERISA that allow for the imposition of a default schedule on employers.  ECF No. 1. ¶ 28 (citing 29 U.S.C. §§ 1085(e)(3)(C)(i)–(ii)).  But here, too, the complaint does not include sufficient facts to support a plausible claim for relief.

The relevant statute—29 U.S.C. § 1085(e)(3)(C)—allows that, in certain circumstances, a pension fund may impose its default schedule on employers who have otherwise failed to adopt one of the schedules in its rehabilitation plan.  The section contains a few prerequisites: a CBA

---

[4] Plaintiffs ask the Court to take judicial notice of the procurement contracts between Flagship—and, before it, ISS Facility Services—and the City and County of Denver to show that Flagship employed the same workers, at the same location, and doing the same work as ISS Facility Services did.  ECF No. 38; *see* ECF No. 37 at 16.  Therefore, Plaintiffs argue, the Court may infer that it was "advantageous" for Flagship to adhere to the CBA that was already in place between ISS Facility Services and Local 105, rather than re-negotiate a new CBA, and so it may also infer that Flagship assumed the obligations of that CBA.  ECF No. 37 at 16.

must be in place and must have expired either when the pension fund enters critical status or while it is still in critical status. *Id.* §§ 1085(e)(3)(C)(i)(I), (ii)(I). And the employer must have "receiv[ed] one or more schedules" from the pension fund but "fail[ed] to adopt a contribution schedule with terms consistent with" the rehabilitation plan within 180 days. *Id.* §§ 1085(e)(3)(C)(i)(II), (ii)(II), (iii). Put simply, a pension fund may impose a default schedule on an employer with whom the relevant union has a CBA if that employer has not agreed to another supplemental contribution schedule within 180 days of the either (1) the fund either entering critical status or (2) the expiration of a CBA that *did* include a supplemental contribution requirement. *See id.* § 1085(e)(3)(C); ECF No. 30-1 at 6–7.

Plaintiffs' allegations on this point are limited to a conclusory statement that Defendants are liable for the supplemental contributions "as a matter of federal law." ECF No. 1 ¶ 28. With no factual allegations to back up this conclusion, including any related to the relevant factors under § 1085(e)(3)(C), this is the type of "mere conclusory statement[]" that the Court need not credit. *Iqbal*, 556 U.S. at 678. Perhaps recognizing this, Plaintiffs again pivot in their opposition to a new theory of statutory liability for these contributions based on the text of the Rehabilitation Plan, Defendants' purported acceptance of the terms of that document, and a different provision of § 1085. *See* ECF No. 37 at 18–21. But, again, the Court need not credit new legal theories set forth for the first time in a party's opposition. Moreover, it is not the Court's responsibility to, in the first instance, "hunt[] through the record" in search of favorable facts for Plaintiffs' case. *Nichols v. Vilsack*, No. 13-cv-1502 (RDM), 2015 WL 9581799, at *1 (D.D.C. Dec. 30, 2015). And again, Plaintiffs request leave to amend their complaint. They assert that, if given a chance to amend, they could "describe in detail" how "Flagship is and has been well aware of the

8

requirement to make rehabilitation plan contributions," a nod to the standard under § 1805(e)(3)(C)(i).  ECF No. 37 at 22.  Again, as explained below, the Court will give them that chance.

*    *    *

"Dismissal with prejudice is the exception," *Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012), and may only be entered if "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency," *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996).  The Court cannot say that standard is met here.  Thus, the Court will allow Plaintiffs the chance to amend their complaint solely to try to address the deficiencies identified above with respect to Count I's allegations that Defendants owe supplemental contributions.

## IV.    Conclusion and Order

For the above reasons, it is hereby **ORDERED** that Moving Defendants' Motion to Dismiss, ECF No. 30, is **GRANTED IN PART** as to Plaintiffs' claims, in Count I, for supplemental contributions.  It is further **ORDERED** that those claims are **DISMISSED** with respect to Moving Defendants only.  It is further **ORDERED** that Plaintiffs' Motion to Take Judicial Notice, ECF No. 38, is **DENIED WITHOUT PREJUDICE**.  It is further **ORDERED** that by August 19, 2026, Plaintiffs shall file an amended complaint that addresses the deficiencies identified above with respect to Count I's allegations that Defendants owe supplemental contributions.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: July 20, 2026

9