**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SERVICE EMPLOYEES INTERNATIONAL UNION NATIONAL INDUSTRY PENSION FUND, *et al.*** <br> **Plaintiff,** <br> **v.** <br> **FLAGSHIP FACILITY SERVICES, LLC, *et al.*** <br> **Defendants.** | **Case No.: 1:25-cv-03438 (TJK)** |

**<u>DEFENDANT FLAGSHIP'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COUNTS III, IV AND V OF PLAINTIFFS' AMENDED COMPLAINT</u>**

Defendant Flagship Aviation Services, LLC ("Flagship")[1], by and through its counsel, files this Memorandum of Law in Support of Flagship's Motion to Dismiss Counts III, IV and V of the Service Employees International Union Pension Fund (the "Pension Fund") and the Board of Trustees of the Pension Fund (the "Board" and collectively with the Pension Fund, the "Plaintiffs") Amended Complaint under Fed. R. Civ. P. 12(b)(6).[2] Plaintiffs' Amended Complaint is still devoid of sufficient facts supporting its claims for legal and equitable relief, and no set of facts could be pleaded as to the supplemental contribution rate that would entitle Plaintiffs to such relief as Plaintiffs' allegation are refuted by the very same documents upon which Plaintiffs rely.

---

[1] Plaintiffs erroneously names Flagship Facility Services, LLC, in its Amended Complaint. Flagship Aviation Services, LLC, is the successor in interest to Flagship Airport Services, Inc., and is the entity providing the relevant services at the Denver International Airport.
[2] Flagship is not a party to Counts I and II.

Therefore, Counts III, IV and V of Plaintiffs' Amended Complaint to the extent they assert that Flagship owes a supplemental pension contribution rate of $.25 per hour worked (in addition to the $.40 per hour worked contribution rate set forth in the relevant collective bargaining agreements) should be dismissed with prejudice.

Because Plaintiffs could possibly amend their Amended Complaint to state that the Pension Fund accepted or would accept Flagship contributions at the $.40 per hour contribution rate set forth in the relevant collective bargaining agreements, Counts III, IV and V as to the $.40 contribution rate should be dismissed without prejudice.[3]

---

[3] As to Count V, Flagship does not contest that if the Pension Fund accepts its collective bargaining agreements covering its work at the Denver International Airport for participation in the Pension Fund that it would be required to provide contribution reports for the time periods in which Flagship has operated at the Denver International Airport.

**TABLE OF CONTENTS**


I. Introduction ..................................................... 1

II. Background ..................................................... 2

A. Relevant Statutory Background ..................................................... 2

B. Relevant Factual Background ..................................................... 4

i. The Pension Fund ..................................................... 4

ii. Flagship and The Collective Bargaining Agreements ..................................................... 4

iii. The Rehabilitation Schedules ..................................................... 5

III. STANDARD OF REVIEW ..................................................... 7

IV. Argument ..................................................... 8

A. The Relevant CBAs Do Not Impose a Supplemental ..................................................... 9

B. The Plaintiffs Fail to Allege that they Satisfied Required Statutory Conditions Before Imposing the Default Schedule Under the ..................................................... 11

V. CONCLUSION ..................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................7

*Banneker Ventures, LLC v. Graham*,
798 F.3d 1119, 418 U.S. App. D.C. 398 (D.C. Cir. 2015) ....................6, 10, 11

*Cortec Industries, Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991)....................6

*Firestone v. Firestone*,
76 F.3d 1205 (D.C. Cir. 1996) ....................9, 13

*Hinton v. Corrections Corp. of Am.*,
624 F.Supp.2d 45 (D.D.C. 2009) ....................6

*Hurd v. District of Columbia*,
864 F.3d 671 (D.C. Cir. 2017) ....................10

*Joyner v. Morrison & Foerster LLP*,
140 F.4th 523 (D.C. Cir. 2025)....................7, 8

*Marshall v. Honeywell Technology Solutions, Inc.*,
536 F. Supp. 2d 59 (D.D.C. 2008) ....................6

*Sandpiper Residents Ass'n v. U.S. Dep't of Hous. & Urban Dev.*,
106 F.4th 1134 (D.C. Cir. 2024), *quoting Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296 (D.C. Cir. 2014)....................8

*Shanks v. Int'l Union of Bricklayers & Allied Craftworkers*,
134 F.4th 585 (D.C. Cir. 2025)....................7

*United Mine Workers of Am. 1974 Pension Plan v. Energy W. Mining Co.*,
39 F.4th 730 (D.C. Cir. 2022)....................13

**Statutes**

26 U.S.C. § 412(e)(3)(C)(i)....................3

26 U.S.C. § 412(e)(3)(C)(ii) ....................4, 11

26 U.S.C. §432(e)(1)....................12

26 U.S.C. §432(e)(1)(B)(i)....................12

26 U.S.C. §432(e)(3)(C) ....................12, 13

29 U.S.C. § 186(c) ....................2, 11

29 U.S.C. § 1085(e)(1)....................12

29 U.S.C. § 1085(e)(1)(B) ....................3

29 U.S.C. § 1085(e)(1)(B)(i)....................12

29 U.S.C. § 1085(e)(3)(A) ....................3

29 U.S.C. § 1085(e)(3)(C) ....................12

29 U.S.C. § 1085(e)(3)(C)(i)....................3

29 U.S.C. § 1085(e)(3)(C)(ii) ....................3, 4, 11

29 U.S.C. § 1085(e)(5)....................2

29 U.S.C. § 1392(a) ....................2, 11

Employee Retirement Income Security Act § 4212 ....................2

ERISA ....................1, 2, 4, 8, 13

ERISA Section 305(e), 29 U.S.C. § 1085(e) ....................12

ERISA Section 515, 29 U.S.C. § 1145 ....................8, 10, 11

ERISA Sections 515 and 4212, 29 U.S.C. §§ 1145, 1392(a) ....................10

Internal Revenue Code Section 412(e)(5), 26 U.S.C. § 412(e)(5)....................2

IRC Section 432(e), 26 U.S.C. § 432(e) ....................12

LMRA Section 301, 29 U.S.C. § 185 ....................8

**Other Authorities**

5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1327 (3d. ed. 2014) ....................6

The Flagship....................5

Rule 12(b)(6)....................6, 7

Rule 56 ....................6

## I. Introduction

An employer's obligation to contribute to a multiemployer pension plan, and the amount of such contribution, must be set forth in a collective bargaining agreement or related agreement. The only exception to this requirement is where the multiemployer pension plan satisfies limited statutory requirements for imposing a higher contribution rate upon a contributing employer that set forth in a collective bargaining agreement. Here, the relevant collective bargaining agreements only provide for a contribution rate of $.40 per hour worked, and the Pension Fund fails to satisfy the statutory requirements to impose a contribution rate higher than $.40 having failed to inform Flagship prior to the negotiation of the relevant collective bargaining agreements that the default schedule contribution rate was greater than $.40. Expecting Flagship to perform its own due diligence to determine the default schedule contribution rate amount for work at the Denver International Airport (the "Denver Airport") does not satisfy the statutory requirements for imposing a higher contribution rate.

In simplest terms, Plaintiffs' Amended Complaint is the same futile attempt by the Plaintiffs to impose a pension contribution rate upon Flagship that it never agreed to pay, and that it had no knowledge that the Fund claimed was owed, until after agreeing to the relevant collective bargaining agreements. Counts III, IV and V of Plaintiffs' Complaint must be dismissed because, although ERISA does allow certain multiemployer pension plans which comply with specific statutory requirements to impose contribution rates greater than provided for in a collective bargaining agreement, here, the Pension Fund fails to allege the necessary facts to support such a claim. And Plaintiffs Complaint fails to allege that the Pension Fund accepted any of Flagship's Denver Airport collective bargaining agreements. Further, the documents upon which Plaintiff rely to support their claims in Counts III, IV and V, instead refute them.

Therefore, Plaintiffs cannot assert plausible facts to support their claim as such facts do not

exist. Accepting as true the alleged facts that are not refuted by the relevant documents upon which Plaintiffs' claims in Counts III, IV and V rely, but not the legal conclusions that Plaintiffs present, the Pension Fund is not entitled to the contributions in the amount sought. And because the documents that are incorporated into the Complaint by Plaintiffs reference to them in the Amended Complaint show that Plaintiffs could plead no set of facts that would entitle the Pension Fund to any relief as to the supplemental contribution, Counts III, IV and V of Plaintiffs' Amended Complaint should be dismissed with prejudice to the extent relating to the $.25 supplement contribution rate and without prejudice to the extent relating to the $.40 contribution rate set forth in the relevant collective bargaining agreements.

## II. Background

### A. Relevant Statutory Background

1. Employee Retirement Income Security Act ("ERISA") § 4212 defines an employer's obligation to contribute to a multiemployer pension plan as "an obligation to contribute arising—(1) under one or more collective bargaining (or related) agreements, or (2) as a result of a duty under applicable labor-management relations law." 29 U.S.C. § 1392(a). The Labor Management Relations Act requires that any employer contributions to an employee benefit trust fund jointly administered by employer and employee representatives, such as the Pension Fund, may only be made when "the detailed basis on which such payments are to be made is specified in a *written agreement with the employer*." 29 U.S.C. § 186(c) (emphasis added).

2. Under ERISA, in limited circumstances—inapplicable here—an employer may be obligated to contribute to a multiemployer pension plan in amounts greater than set forth in a collective bargaining or related agreement. *See* 29 U.S.C. § 1085(e)(5), Internal Revenue Code (the "Code") Section 412(e)(5), 26 U.S.C. § 412(e)(5).

3. A critical status multiemployer pension plan is one that is facing funding problems,

as determined by a plan actuary. The plan sponsor of such a plan is required to adopt a rehabilitation plan that "consists of—

> actions, including options or a range of options to be proposed to the bargaining parties, formulated, based on reasonably anticipated experience and reasonable actuarial assumptions, to enable the plan to cease to be in critical status by the end of the rehabilitation period and may include reductions in plan expenditures (including plan mergers and consolidations), reductions in future benefit accruals or increases in contributions, *if agreed to by the bargaining parties*, or any combination of such actions [emphasis added] . . .

(the "Rehabilitation Plan") 29 U.S.C. § 1085(e)(3)(A). These pension plans must then provide the employer and the union with schedules ("Rehabilitation Schedules") that present options for contribution rates and benefit accrual amounts, with at least one such schedule to be designated as the "Default Schedule"—all designed to comply with the Rehabilitation Plan. 29 U.S.C. § 1085(e)(1)(B).

4. For employers covered by a collective bargaining agreement that was in effect at the time the multiemployer pension plan entered critical status, the plan sponsor may implement the Default Schedule 180 days after expiration of that contract, but only if "***after receiving one or more schedules from the plan sponsor*** . . . the bargaining parties with respect to such agreement fail to adopt a contribution schedule with terms consistent with the rehabilitation plan and a schedule from the plan sponsor." 29 U.S.C. § 1085(e)(3)(C)(i); 26 U.S.C. § 412(e)(3)(C)(i).

5. Further, a critical status multiemployer pension plan may also impose a higher contribution rate than specified in a collective bargaining agreement if (1) the employer and the union have agreed to adopt a rehabilitation schedule in a prior collective bargaining agreement, or (2) they become bound by a default schedule imposed under 29 U.S.C. § 1085(e)(3)(C)(ii) after expiration of an earlier collective bargaining agreement. In the latter scenario, and 180 days after expiration of that agreement, the sponsor of such multiemployer pension plan may impose the updated rehabilitation schedule in effect on the date that the collective bargaining agreement

expired, but again only if "***after receiving one or more updated schedules from the plan sponsor*** . . ., the bargaining parties with respect to such agreement fail to adopt a contribution schedule with terms consistent with the updated rehabilitation plan and a schedule from the plan sponsor. . ." 29 U.S.C. § 1085(e)(3)(C)(ii); 26 U.S.C. § 412(e)(3)(C)(ii) (emphasis added).

6. ERISA does not impose a default contribution schedule against a new employer negotiating a first collective bargaining agreement that requires contributions to a critical status multiemployer pension plan. Nor does ERISA impose a default contribution schedule on an existing contributing employer that was never bound to accept a rehabilitation plan contribution schedule and never received notice of such schedules.

**B. Relevant Factual Background**

**i. The Pension Fund**

7. Plaintiff Pension Fund is a critical status multiemployer pension plan. Dkt. No. 53, ¶ 22.

**ii. Flagship and The Collective Bargaining Agreements**

8. Defendant Flagship contracted to provide janitorial services at the Denver Airport under a service procurement contract with the City and County of Denver, Colorado, dated January 19, 2021, and commenced providing these janitorial services directly, and through various subcontractors, beginning on approximately March 1, 2021. Dkt. No. 53, ¶ 61.

9. The collective bargaining agreement between the Service Employees International Union Local No. 105 ("Local 105") and Flagship's predecessor at the Denver Airport, ISS Facility Services ("ISS"), in effect on March 1, 2021, was extended by Local 105 and ISS through September 30, 2021 (the "ISS CBA"). Dkt. No. 53-3, Ex. C-3, C-4, pp. 56-88.

10. The ISS CBA states with regard to pension contributions that "t]he Company agrees to contribute to the Service Employees National Industry Pension Fund $.40 per hour worked for

each employee. *Id*. at p. 78. There is no reference to a supplemental contribution. And the ISS CBA does not state that the $.40 contribution rate in the CBA does not already include the 62.5% supplemental contribution. *Id.*

11. Flagship and Service Employees Local 105 entered into a collective bargaining agreement effective December 1, 2021 (the "Flagship 2021 CBA"), Dkt. No. 53-3, Ex. C-15 pp. 141-170 and a successor collective bargaining agreement effective from November 27, 2024, through March 12, 2028 (the "Flagship 2024 CBA" and collective the "Flagship CBAs"), Dkt. No. 53-3, Ex. C-16, pp. 172-204, that covers janitorial services at the Denver Airport (collectively the "CBAs").

12. The Flagship CBAs make no reference to any supplemental contribution and make no reference to binding Flagship to the Pension Fund's Agreement and Declaration of Trust. Instead, Article 22 of the CBAs—the sole provision of the CBAs that addresses pension contributions—states, in its entirety, that *"[t]he Company agrees to contribute to the Service Employees National Industry Pension Fund $0.40 per hour worked for each employee*." The CBAs contain no other provisions addressing pension contributions, including any supplemental contribution obligation, owed by Flagship to the Pension Fund, or that even reference the Pension Fund. ECF No. 53-3, Ex. C-15 pp. 165, No. 53-3, Ex. C-16 p. 198.

### iii. The Rehabilitation Schedules

13. On June 11, 2021, the Pension Fund emailed Flagship a copy of its Bargaining Basics Manual that the Pension Fund alleges contains a copy of the Rehabilitation Plan and the schedules of supplemental contributions under the Rehabilitation Plan. ECF No. 53, ¶ 102, p. 19. Despite referencing these documents in the Amended Complaint, the Plaintiffs fail to attach these documents although they are integral to the allegations in their Complaint. Flagship attaches true and accurate copies of the June 11, 2021, email and the Bargaining Basics Manual (the "Manual")

as Exhibits A and B, to its Motion to Dismiss Counts III, IV and V of Plaintiffs' Amended Complaint.[4]

14. The Manual sets out certain minimum requirements stating that a collective bargaining agreement "must fulfill the following requirements." Ex. B. p. 4.

15. Relevant to this action, the Manual requires that a collective bargaining agreement must state "the Rehabilitation Plan Schedule (Default or Preferred)" and "must indicate a minimum contribution rate of $.15 per paid hour." *Id.*

16. The Pension Fund's Rehabilitation Schedule set forth in the Manual states that for contributions on or after 2013, the contribution rate must include a supplemental surcharge of 62.5%. Ex. B. p. 40.

---

[4] On a motion brought pursuant to Rule 12(b)(6), the Court may consider documents attached to a complaint without converting the motion to one for summary judgment under Rule 56. Under the incorporation-by-reference doctrine, a defendant can submit in a motion to dismiss—and a court can consider—a document that "is not attached by the plaintiff but is referred to in the Complaint and integral to the plaintiff's claim." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133, 418 U.S. App. D.C. 398 (D.C. Cir. 2015); see also 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1327 (3d. ed. 2014). A document is "integral" to a Complaint if it "form[s] the basis for a claim or part of a claim." *Banneker Ventures*, 798 F.3d at 1133 (quoting *Carroll v. Yates*, 362 F.3d 984, 986 (7th Cir. 2004)). *Hinton v. Corrections Corp. of Am.*, 624 F.Supp.2d 45, 46 (D.D.C. 2009) (stating that on a motion to dismiss, a court may consider "the facts alleged in the Complaint, documents attached as exhibits or incorporated by reference in the Complaint, or documents upon which the Plaintiff's Complaint necessarily relies even if the document is produced not by the Plaintiff in the Complaint but by the Defendant in a motion to dismiss.") (internal quotation marks and citations omitted); *Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47-48 (2d Cir. 1991) (indicating that where the Plaintiff's Complaint has relied on a document but has not made that document an integral part of the Complaint by attaching it or incorporating it by reference, and the defendant presents the document in a motion to dismiss, a court may consider the document without converting the motion to one for summary judgment); *see also Marshall v. Honeywell Technology Solutions*, *Inc.,* 536 F. Supp. 2d 59, 65 (D.D.C. 2008) ("[W]here a document is referred to in the Complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion [to dismiss] to one for summary judgment.") (internal quotation and citation omitted). Though Plaintiffs do not attach the governing collective bargaining agreements to the Complaint (Dkt. No. 1), they are a required prerequisite for Plaintiffs to bring this lawsuit. By this reference, the Court can consider the collective bargaining agreements without converting this Motion to one under Rule 56.

17. The Manual's minimum contribution rate of $.15 per hour, plus a 62.5% supplemental contribution, results in a total contribution rate of $.24 per hour (($.15 X 62.5%) + $.15 = $.24375.

18. The $.40 contribution in the ISS CBAs and the Flagship CBAs is greater than the Manual's $.15 minimum contribution rate plus the 62.5% supplemental contribution, and nothing in the Manual, or the Rehabilitation Plan and supplemental contribution schedules included within the Manual, informs Flagship that the $.40 contribution rate does not already include the 62.5% supplemental contribution. *See* Ex. B.

19. The Manual also provides that a Pension Fund may refuse a collective bargaining agreement that "fails to comply with any requirements which the Trustees may have set with respect to participation in the Fund". Ex. B. p. 5.

20. The Plaintiffs' Amended Complaint fails to allege whether the Pension Fund accepted the Flagship CBAs for participation in the Pension Fund or rejected them.

## III. STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's allegations must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Shanks v. Int'l Union of Bricklayers & Allied Craftworkers*, 134 F.4th 585, 590 (D.C. Cir. 2025). Even though this standard is not equivalent to a probability requirement, "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).

When determining whether the plaintiff has met this plausibility standard, a court accepts the operative complaint's well-pleaded factual allegations as true and draws all reasonable

inferences in a plaintiff's favor. *Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 529 (D.C. Cir. 2025), *citing N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020). The court may also consider "any documents either attached to or incorporated in the complaint." *Id. quoting Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)). A court, however, does not "accept as true . . . the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Sandpiper Residents Ass'n v. U.S. Dep't of Hous. & Urban Dev.*, 106 F.4th 1134 (D.C. Cir. 2024), *quoting Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014).

## IV. Argument

The Pension Fund's claims against Flagship in Counts III, IV and V fail as a matter of fact and law. The CBAs—both the ISS and Flagship CBAs—referenced in the Complaint obligates Flagship to remit only $0.40 per hour in contributions. Dkt. No. 53-3, Ex. C-3, p. 78, Dkt. No. 53-3, Ex. C-15, p. 165, Dkt. No. 53-3, Ex. C-16, p. 198. The Manual that the Pension Fund provided Flagship includes the Rehabilitation Plan and supplemental contribution schedules but does not state that Flagship owed a 62.5% contribution on top of the $.40 contribution set forth in the CBAs. *See* Ex. B. Instead, the Manual just states that an employer's minimum contribution rate must be at least $.15 per hour worked plus a 62.5% supplemental contribution on top of that minimum contribution. Ex. B, pp. 4, 40. Because the relevant documents—the ISS CBA, Flagship CBAs and the Manual—refute the Plaintiffs' claim that it has a contractual basis to impose a $.40 contribution rate plus an additional 62.5% ($.25) supplemental contribution rate against Flagship, the Complaint does not state an actionable claim under ERISA Section 515, 29 U.S.C. § 1145, or LMRA Section 301, 29 U.S.C. § 185. The Amended Complaint also fails as a matter of law because in addition to the absence of a contractual agreement to pay the supplemental contribution—an agreement that does not exist here—the Manual contradicts the Plaintiffs'

allegations that the Pension Fund satisfied the necessary ERISA prerequisites to unilaterally impose the supplemental contributions on Flagship. Because Plaintiffs can allege no set of facts that would overcome the plain language of the CBAs and the Manual, Counts III, IV and V as to the 62.5% supplemental contribution rate should be dismissed with prejudice. *See Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996). Furthermore, the Plaintiffs Complaint fails to allege that the Pension Fund accepted the Flagship CBAs with only a $.40 contribution rate but may plausibly be amended to state that the Pension Fund will accept the Flagship CBAs with the $.40 contribution rate, Counts III, IV and V should be dismissed without prejudice as to the $.40 contribution rate.

### A. The Relevant CBAs Do Not Impose a Supplemental Contribution Obligation

Although Plaintiffs claim that Flagship and the subcontractors owe hourly contributions of $0.40 per hour, *plus* an additional 62.5% of this base contribution rate, the CBAs referenced in Plaintiff's Amended Complaint say nothing about any supplemental contribution or whether the $.40 contribution rate included or excluded the 62.5% supplemental contribution. *See* Dkt. No. 53-3, Ex. C-3, p. 78, Dkt. No. 53-3, Ex. C-15, p. 165, Dkt. No. 53-3, Ex. C-16, p. 198. Because the Manual requires a collective bargaining agreement to have a minimum contribution rate of $.15 per hour, and a 62.5% supplemental contribution on top of that minimum contribution, the $.40 per hour contribution rate in the ISS CBA and the Flagship CBAs, was greater than the minimum contribution rate of $.15 per hour plus the 62.5% supplemental contribution rate. And nothing in the CBAs or the Manual states that the contribution rate set forth in the CBAs does not already include the 62.5% supplemental contribution rate. In short, as with the Plaintiff's original Complaint, the Amended Complaint fails to plead plausible facts that Flagship was ever obligated to contribute to the Pension Fund at a contribution rate of $.65 per hour ($.40 base contribution

rate plus a $.25 supplemental contribution rate).

Rather, the documents integral to Plaintiffs' Amended Complaint establish that Flagship never had an obligation to contribute at a $.65 per hour worked contribution rate to the Pension Fund. And the Plaintiffs fail to even allege that the Pension Fund ever accepted the Flagship CBAs with only the $.40 contribution rate set forth in the Flagship CBAs. Because the Flagship CBAs and the Manual are dispositive as no allegations can refute the plain language of the operative documents, the Plaintiffs' claim as to the $.25 supplemental contribution rate should be dismissed with prejudice. Plaintiffs' claim as to the $.40 contribution should be dismissed without prejudice as Plaintiffs fail to allege that the Pension Fund accepted or would accept the Flagship CBAs with the $.40 contribution rate.

The Plaintiffs attach the ISS CBA and the Flagship CBAs as exhibits to the Amended Complaint, and therefore this Court may consider these documents at the motion to dismiss stage. *Hurd,* 864 F.3d at 678. Further, the Manual is fundamentally integral to Plaintiffs' claims and, therefore, may also be considered by the Court at this stage. *See Banneker Ventures, LLC,* 798 F.3d at 1133. The language of the Manual, including the provisions of the rehabilitation plan and supplemental contribution schedules, form the basis for the Plaintiffs' claim that the Pension Fund may impose the supplemental contribution on Flagship. Plaintiffs' Complaint confirms the importance of the Manual, as it repeatedly references the supplemental contribution schedules provided to Flagship as part of the Manual in the Amended Complaint. *See* Dkt No. 53, ¶¶ 102, 111, 151.

The Manual, and the supplemental contribution schedules within the manual, is the only basis the Fund could assert a claim for the 62.5% supplemental contribution rate. Under ERISA Sections 515 and 4212, 29 U.S.C. §§ 1145, 1392(a), an employer's obligation to contribute, and the amount of the contribution owed, to a multiemployer pension plan must be based on a

collective bargaining or related agreement. ERISA Section 515 mandates that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." *See* 29 U.S.C. § 1145. The Pension Fund may impose a supplemental contribution rate on the bargaining parties, but only if "***after receiving one or more updated schedules from the plan sponsor***. . ., the bargaining parties with respect to such agreement fail to adopt a contribution schedule with terms consistent with the updated rehabilitation plan and a schedule from the plan sponsor. . ." 29 U.S.C. § 1085(e)(3)(C)(ii); 26 U.S.C. § 412(e)(3)(C)(ii) (emphasis added). The Plaintiffs allege that the required supplemental contribution schedules are set forth in the Manual. Dkt No. 53, ¶ 102. Therefore, the Manual is integral to Plaintiff's Amended Complaint and may be considered by this Court at the motion to dismiss stage. *Banneker Ventures, LLC,* 798 F.3d at 1133

Under Article 22 of the ISS and Flagship CBAs, the Employers are expressly obligated to contribute no more than $0.40 per hour worked by each covered employee. Dkt. No. 53-3, Ex. C-3, p. 78; Dkt. No. 53-3, Ex. C-15, p. 165; Dkt. No. 53-3, Ex. C-16, p. 198. The CBAs contain no reference to any additional supplemental contribution. And the CBAs do not bind Flagship to any of the Pension Fund's plan documents, actions of the Pension Fund's trustees, or any future rehabilitation plan. Therefore, Flagship has no contractual obligation to make the contested supplemental contributions to the Fund. *See* 29 U.S.C. § 186(c); *see also* 29 U.S.C. § 1145, 29 U.S.C. § 1392(a).

### B. The Plaintiffs Fail to Allege that they Satisfied Required Statutory Conditions Before Imposing the Default Schedule Under the Rehabilitation Plan

Plaintiffs' claim in Count IV that they could impose the supplemental contribution

requirements of the default schedule under the Rehabilitation Plan, Dkt No. 53, ¶ 151, because the supplemental contribution schedules in the Manual, Ex. B, p. 40, state there is a 62.5% supplemental contribution rate. The Manual, however, only states that there is a minimum base contribution rate of $.15 per hour worked. Ex. B, p. 4. Nothing in the ISS CBAs, Flagship CBAs, or the Manual state that there is a base contribution rate of $.40 per hour, plus a 62.5% supplemental contribution. Rather, the $.40 contribution rate in the ISS CBA and the Flagship CBAs is greater than the $.15 per hour worked minimum contribution rate in the Manual, plus a 62.5% supplemental contribution rate, which in the aggregate would only be $.24 per hour worked.

As explained above, under ERISA Section 305(e), 29 U.S.C. § 1085(e), and IRC Section 432(e), 26 U.S.C. § 432(e), when a multiemployer pension plan is found to be in critical status, plan sponsors are required to adopt a Rehabilitation Plan. The Rehabilitation Plan must provide one or more schedules of reduced benefit structures and contribution increases, including one "default schedule" which outlines the maximum benefit reductions and contribution increases "necessary to emerge from critical status after future benefit accruals and other benefits." 29 U.S.C. § 1085(e)(1), 26 U.S.C. §432(e)(1).

The statute further mandates that within 30 days after the adoption of the Rehabilitation Plan, the plan sponsor is required to provide to the bargaining parties—the union and the contributing employer—"1 or more schedules showing revised benefit structures, revised contribution structures, or both, which, if adopted, may reasonably be expected to enable the multiemployer plan to emerge from critical status in accordance with the rehabilitation plan." 29 U.S.C. § 1085(e)(1)(B)(i); 26 U.S.C. §432(e)(1)(B)(i). The bargaining parties then have 180 days after the expiration date of the governing CBA to negotiate and adopt one of the schedules under the Rehabilitation Plan. 29 U.S.C. § 1085(e)(3)(C); 26 U.S.C. §432(e)(3)(C). If the parties do not adopt a schedule within that time period, the default schedule is automatically imposed, and the

contributing employer becomes obligated to make the supplemental contributions at those rates. *Id*.

In rejecting a multiemployer pension plan's attempt to impose liability against a former contributing employer that was inconsistent with ERISA's statutory requirements, the D.C Circuit ruled that "[it] is [the court's] duty to give effect, if possible, to every clause and word of [ERISA]." *United Mine Workers of Am. 1974 Pension Plan v. Energy W. Mining Co.*, 39 F.4th 730, 738 (D.C. Cir. 2022), *citing Duncan v. Walker*, 533 U.S. 167, 174 (2001). In light of pension contribution schedule in Article 22 in both of the Flagship CBAs and in the ISS CBA, and the plain language of the supplemental contribution schedules in the Manual, this Complaint fails to allege any facts establishing that Pension Fund satisfied ERISA's clear and mandatory prerequisites that the plan sponsor had to notify Flagship at the time it was negotiating the Flagship CBAs with Local 105 that Flagship default contribution rate consisted of a $.40 base contribution rate, plus a $.25 supplemental contribution rate, before the Pension Fund could impose a supplemental contribution obligation on Flagship. Based on language in the Manual, the Pension Fund only notified Flagship of a $.15 minimum contribution rate and of a 62.5% supplemental contribution rate on top of the $.15 minimum contribution rate. Ex. B., pp. 4, 40. Without alleging facts that it satisfied its obligation to notify Flagship of a $.40 base contribution rate plus a 62.5% supplemental contribution in addition to the $.40 contribution rate in the ISS CBA and the Flagship CBAs that are not refuted by the documents integral to Plaintiffs Amended Complaint, Plaintiffs have not plausibly alleged entitlement to any supplemental contributions. Therefore, Plaintiff's claims against Flagship for any supplemental contributions should be dismissed with prejudice. *See Firestone*, 76 F.3d at 1209.

## V. CONCLUSION

For all the foregoing reasons, Counts III, IV and V of Plaintiffs' Amended Complaint

should be dismissed with prejudice as to the $.25 supplemental contribution rate and without prejudice as to the $.40 contribution rate. The Plaintiffs' Amended Complaint failed to allege plausible facts not refuted by the documents integral to Plaintiffs' Amended Complaint showing that Flagship was subject to any supplemental contribution obligation under the relevant CBAs. Further, the Complaint fails to allege that Plaintiff Pension Fund adhered to ERISA's statutory requirements preliminary to imposing a rehabilitation schedule. Lastly, the Plaintiffs fail to plead in their Amended Complaint that the Pension Fund had accepted the Flagship CBAs and that it would accept contributions at the $.40 per hour worked in the relevant CBAs. As such, Counts III, IV and V of the Complaint should be dismissed with prejudice as to the 62.5% supplemental contribution rate and without prejudice as to the $.40 per hour contribution rate.

Dated: October 13, 2026

Respectfully submitted,

*/s/ Eric D. Field*

Eric D. Field
Littler Mendelson, P.C.
815 Connecticut Ave., NW, Suite 400
Washington, DC 20006
Telephone: 202-772-2539
Email: efield@littler.com

Allison Blankstein (*Pro Hac Vice Forthcoming*)
Littler Mendelson, P.C.
900 Third Avenue
New York, NY 10022
Telephone: 212-471-4426
Email: ablankstein@littler.com

*Counsel for Flagship Facility Services, Inc.*