UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION NATIONAL INDUSTRY PENSION FUND, *et al.*<br>Plaintiff,<br>v.<br>FLAGSHIP FACILITY SERVICES, LLC, *et al.*<br>Defendants. | Case No.: 1:25-cv-03438 (TJK) |

**DECLARATION OF ERIC FIELD IN SUPPORT OF DEFENDANT FLAGSHIP'S MOTION TO DISMISS COUNTS III, IV AND V OF PLAINTIFFS' AMENDED COMPLAINT**

I, Eric Field certify and declare as follows:

1. I am a shareholder of the law firm Littler Mendelson, P.C., and counsel of record for Defendant Flagship Aviation Services, LLC ("Flagship") in this action.[1] I have personal knowledge of the matters set forth in this declaration, and, if called as a witness, could and would testify competently thereon.

2. Attached hereto as **Exhibit A** to Flagship's Motion to Dismiss Counts III, IV and V of

[1] Plaintiffs erroneously names Flagship Facility Services, LLC, in its Amended Complaint. Flagship Aviation Services, LLC, is the successor in interest to Flagship Airport Services, Inc., and is the entity providing the relevant services at the Denver International Airport.

Plaintiffs' Amended Complaint is Plaintiff Pension Fund's email dated June 11, 2021, forwarding Defendant Flagship a copy of the Bargaining Basics Manual.

3. Attached hereto as **Exhibit B** to Flagship's Motion to Dismiss Counts III, IV and V of Plaintiffs' Amended Complaint is the Pension Fund's Bargaining Basics Manual that the Pension Fund provided Flagship on June 11, 2021.

I declare under penalties of perjury under the laws of the United States that the foregoing is true and correct.

Executed on October 13, 2026, in Washington D.C.

/s/ Eric D. Field
Eric D. Field

# EXHIBIT A

**From:** Joseph Dugan <joseph.dugan@seiufunds.org>
**Sent:** Friday, June 11, 2021 12:17 PM
**To:** Maggie Portillo <MPortillo@flagshipinc.com>
**Cc:** Ross Pollack <ross.pollack@seiufunds.org>; Asma Rheljari <asma.rheljari@seiufunds.org>
**Subject:** Flagship/SEIU

**This message originated from outside your organization**

---

Maggie,

I had previously reviewed the ISS CBA you provided and the MOU related to Flagship taking over the site and I did recognize there are some issues that need to be addressed - my colleague Asma confirmed this and noted a couple other issues. First and foremost, the MOU is not signed by the Local, so that needs to be sent to the Local for review and approval. Second, the CBA language related to the Pension Plan is not up to date and needs to include several items such as probationary period for new hires, 90 days, and more. We will need to prepare an Appendix to the CBA, or possibly the MOU, to provide this detail. Asma and I will work on this next Tuesday while we are in the office together and get it sent to you after approval on our end. I have also included an attachment that is our Bargaining Basics Manual that was recently updated and sent out to our Employers. Many of the relevant issues that need to be addressed are included in this manual. Please review.

I will be in touch again soon.

Joe

--

**Joseph Dugan**

Contract Technician

1800 Massachusetts Avenue NW

Washington, DC 20036

(202) 730-7526 (Direct Line)

(202) 842-0046 (Fax)

## TEAMWORK - ACCOUNTABILITY - INTEGRITY - EXCELLENCE

**** * Please note that our office is currently working remotely due to the COVID-19 (coronavirus) pandemic. * ****

**Pension** related items is **202-747-2906**.

**Health & Welfare** related items is **202-836-9561**

# EXHIBIT B

# National Industry Pension Fund Bargaining Basics Manual

SEIU Benefit Funds

# Table of Contents


Introduction ........ 3

Advantages for Employees and Employers ........ 3

Ongoing Support for Local Unions and Employers ........ 3

Minimum Contribution Requirements ........ 4

Required NIPF Pension Provisions ........ 4

Limitations on Collective Bargaining Agreements ........ 5

Compliance with Employee Retirement Income Security Act (ERISA) ........ 5

Sample CBA provisions ........ 6

1 Sample Appendix - All Employees from Date of Hire ........ 7

2 Sample Appendix - All Employees after 90 days ........ 10

3 Sample Appendix - All Employees after 90 days Retro ........ 13

4 Sample Appendix - Date of Hire & 1000 hours ........ 16

5 Sample Appendix - 90 days & 1000 hours ........ 20

6 Sample Appendix – 90 day-1000 hours & Retro ........ 24

7 Assumption Agreement ........ 27

The Rehabilitation Plan Bargaining Guide (November 25, 2009) ........ 28

Rehabilitation Plan - November 17, 2009 ........ 41

Rehabilitation Plan Addendums ........ 53

Addendum - May 2020 ........ 53

Addendum - October 23, 2019 ........ 54

Addendum - November 30, 2012 ........ 55

Addendum – May 19, 2011 ........ 56

Collections Policy ........ 57

NIPF TRUST Agreement ........ 67

# SEIU National Industry Pension Fund

## Bargaining Basics

### Introduction

The SEIU National Industry Pension Fund (NIPF) is a multiemployer defined benefit plan designed to pay a monthly benefit to participants at retirement. The NIPF was created in 1968 and is governed by a Board comprised of an equal number of union and employer trustees.

### Advantages for Employees and Employers

The NIPF enables local unions and employers to negotiate a viable pension plan that will provide pension benefits for participants with minimal vesting requirements.

For employers, there are no administrative responsibilities. Employers submit one monthly remittance report and contribution payment. Rates remain the same for the duration of the collective bargaining agreement, and contributions are tax deductible. Employment data shows that employee turnover, and associated training costs, often decrease when employers provide retirement benefits.

### Ongoing Support for Local Unions and Employers

The NIPF recognizes that its success depends on working closely with local unions and employers to secure and maintain participant benefits. We will review collective bargaining agreement provisions that relate to the NIPF prior to and during contract negotiations. We encourage locals and employers to contact us with any questions or requests for additional information.

This Bargaining Basics guide includes sample collective bargaining agreement language regarding the administration of the plan and collection of contributions, NIPF Rehabilitation Plan and addendums, NIPF Rehabilitation Plan Bargaining Guide, NIPF Collection Policy, and NIPF Trust Agreement.

Additional information may be found at https://www.seiufunds.org/employers-local-unions/pension-employers.

**Minimum Contribution Requirements**

The collective bargaining agreement must contain the following language:

## Required NIPF Pension Provisions

Pension provisions in all collective bargaining agreements must fulfill the following requirements.

1. States that the CBA is in compliance with ERISA and the PPA.
2. States that the Employer agrees to remain a participating employer in the NIPF throughout the term of the CBA, including any extensions thereof.
3. States the Rehabilitation Plan Schedule (Default or Preferred).
4. Employers must contribute on behalf of all employees covered by the pension provisions of the collective bargaining agreement, regardless of whether the employees join the union.
5. Provisions must clearly state a flat pension contribution rate or a pension contribution rate based on a percentage of salary.
6. States the effective dates of the pension contribution requirement and any increases within the CBA term.
7. Provisions must indicate a minimum contribution rate of $0.15 per paid hour, or the equivalent if contributions are based on a percentage of salary.
8. States that pension contributions are required for all bargaining unit employees from: (1) the date-of-hire or; (2) no later than 90 days of employment; or (3) worked for one thousand (1,000) hours or more during the 12-month period beginning with the employee's date of hire. See the attached sample language.
9. Only the employer may contribute. The NIPF will not accept employee contributions.
10. Employers must contribute the same rate for employees in the same job classification. The NIPF will not accept contribution rates that are lower for employees hired after a date specified in the collective bargaining agreement. For example, employees hired before January 1, 2007 have $1.00 per hour rate and employees hired after January 1, 2007 have $.50 per hour rate.
11. Provisions must clearly state the effective dates of the pension contribution and the dates of any increases within the term of the agreement.
12. All covered job classifications are listed.
13. Provisions must clearly state that employers remit pension contributions to the SEIU National Industry Pension Fund.
14. Employers must agree to comply with the NIPF Trust Agreement and Collection Policy.

15. Collective bargaining agreements that exceed four (4) years must include a pension reopener no later than the four-year anniversary of the collective bargaining agreement effective date.
16. Employers must submit their reports to the Fund in a specific electronic format.

**There may be issues unique to your bargaining situations that are not addressed in this guide. Please contact the Compliance Department at contributioncompliance@seiufunds.org or your designated Contract Technician before executing any collective bargaining agreements that do not clearly comply with the requirements listed in this guide.**

## Limitations on Collective Bargaining Agreements

**The following CBA provisions are unacceptable and may cause your CBA not to be accepted:**

- Terms that exceed four (4) years without a pension reopener within four years
- Renewal or amended CBAs that reduce the pension contribution rate
- Probationary periods longer than 90 days for full-time and part-time employees or one thousand (1,000) hours during a 12-month period for temporary, seasonal, casual and on-call employees or more
- Suspension of pension contributions for any periods of service
- Exclusion of certain job classifications from NIPF participation (unless there is a clearly defined difference in job duties)
- Direct or indirect exclusion of younger or newly hired employees from NIPF participation
- Exemption from Withdrawal Liability
- Provisions requiring employee contributions
- Provisions allowing employees to opt-out of NIPF coverage

## Compliance with Employee Retirement Income Security Act (ERISA)

To ensure compliance with the Employee Retirement Income Security Act (ERISA) and the Pension Protection Act (PPA), the Trustees of the NIPF may in their sole discretion terminate the participation of an Employer in the NIPF for any of the following reasons:

1) The Employer enters into a CBA for the same collective bargaining unit with a labor organization which is not affiliated with the International.
2) A renewal collective bargaining agreement does not require the continuation of at least the same level of contributions to the NIPF.
3) The Employer fails to comply with any requirements which the Trustees may have set with respect to participation in the NIPF.
4) The Employer fails to make required contributions to the NIPF in a timely manner.
5) A Local Union disaffiliates from the International.

## Sample CBA provisions

**The following sample CBA provisions must be used for the following situations:**

1. When all employees are covered on either their date of hire or the effective date of the collective bargaining agreement, whichever is later;
2. When all employees are covered after 90 days of employment or the effective date of the collective bargaining agreement, whichever is later;
3. When all employees are covered after 90 days of employment (with contributions retroactive to date of hire) or the effective date of the collective bargaining agreement, whichever is later;
4. When regular full-time and regular part-time employees are covered from their date of hire or the effective date of the collective bargaining agreement, whichever is later, <u>and</u> all other employees (such as temporary, casual, on-call, extra, and seasonal) are covered after 1,000 hours of employment;
5. When regular full-time and regular part-time employees are covered after 90 days of employment or the effective date of the collective bargaining agreement, whichever is later, <u>and</u> all other employees (such as temporary, casual, on-call, extra and seasonal) are covered after 1,000 hours of employment;
6. When regular full-time and regular part-time employees are covered after 90 days of employment (with contributions retroactive to date of hire) or the effective date of the collective bargaining agreement, whichever is later, <u>and</u> all other employees (such as temporary, casual, on-call, extra and seasonal) are covered after 1,000 hours of employment; and
7. When a new employer takes over a site and the parties have not negotiated a new collective bargaining agreement.

> **If the bargaining parties do not use these models in the situations described, the Fund must review the proposed language <u>before</u> the agreement becomes final to ensure the agreement can be accepted by the Fund.**

## 1 Sample Appendix - All Employees from Date of Hire

APPENDIX

TO COLLECTIVE BARGAINING AGREEMENT

BETWEEN ________________________

AND SEIU LOCAL ______________

Section 1. COVERAGE

__________________________ ("Employer") agrees to make periodic contributions on behalf of all employees covered by the Collective Bargaining Agreement to the Service Employees International Union National Industry Pension Fund ("Fund") in the amounts specified in Section 3 below.

Section 2. TERM

The Employer agrees to become and remain a participating employer in the Fund throughout the term of this Collective Bargaining Agreement, including any extensions thereof.

Section 3. CONTRIBUTIONS

(a) (1) As of _________ , the Employer agrees to contribute to the Fund $____ per paid hour for all employees covered by the Collective Bargaining Agreement. Employees hired after the effective date of this Appendix shall be covered from their date of hire.

[Complete subsections (2), (3), and (4) or strike, as appropriate]

(2) Commencing on ___________, 20___ , the Employer shall contribute to the Fund in the amount of $ _____ per paid hour for all employees covered by the Collective Bargaining Agreement.

(3) Commencing _______________ , 20 ____ , the Employer shall contribute to the Fund in the amount of $ _____ per paid hour for all employees covered by the Collective Bargaining Agreement.

(4) Commencing ______________ , 20 _____ , the Employer shall contribute to the Fund in the amount of $ _____ per paid hour for all employees covered by the Collective Bargaining Agreement.

(b) Contributions required by this provision shall be paid to the Fund on or before the fifteenth day of the month following the period for which contributions are due or before such other date as the Trustees may hereafter determine.

(c) Contributions shall be transmitted together with a remittance report containing such information, in such manner, and on such form as may be required by the Fund or their designee.

Section 4. TRUST AGREEMENT

The Employer hereby agrees to be bound by the provisions of the Agreement and Declaration of Trust establishing the Fund, as it may from time to time be amended, and by all resolutions and rules adopted by the Trustees pursuant to the powers delegated to them by that agreement, including collection policies, receipt of which is hereby acknowledged. The Employer hereby designates the Employer members of the Fund's Board of Trustees, or their duly selected successor(s), as its representatives on the Board.

Section 5. AUDITS

The Employer agrees to permit auditors authorized by the Fund to inspect and review any of its records necessary to ensure compliance with this Agreement and to forward such records or true copies thereof to the Fund's auditors upon request.

Section 6. DELINQUENCIES

The Employer agrees and affirms that, should it default or become delinquent in any of its obligations to the Fund set forth in this Article, it shall be liable for such damages, penalties and costs as may be provided for by the Fund's Trust Agreement, resolution(s) and collection policy including, but not limited to, a late payment penalty, interest, liquidated damages, and all costs of collection including reasonable attorney's and accounting fees.

Section 7. COOPERATION

The Employer and Union agree to cooperate with the Trustees of the Fund in distributing Plan booklets, literature, and other documents supplied by the Fund Administrator and in obtaining and providing such census and other data as may be required by the Fund's Administrator or Trustees to enable them to comply with the applicable provisions of the Employee Retirement Income Security Act.

Section 8. APPROVAL BY TRUSTEES

The undersigned parties acknowledge that the provisions of this Article and the participation of the employees covered by it are subject to approval by the Trustees of the Fund and that the Trustees reserve the right to terminate, at their sole and unreviewable discretion, the participation of the employees covered by this Agreement and to establish the level(s) of benefits to be provided. Termination may be directed by the Trustees for reasons including, but not limited to, failure of the Employer to timely pay contributions and expiration of a Collective Bargaining Agreement. The parties further acknowledge that the Trustees' acceptance for participation in the Fund of the employees covered by the Collective Bargaining Agreement is limited only to the categories of employment covered by the Collective Bargaining Agreement at the time application for acceptance occurs and the admission of other categories of employment to participate in the Fund will require specific acceptance by the Trustees.

Section 9. MISCELLANEOUS

In the event of any inconsistency between this Appendix and the Collective Bargaining Agreement, the terms of this Appendix shall prevail.

For the Employer [Fed. EIN: ______________ For the Union

________________________________ ________________________________

Dated ____________________________ Dated ____________________________

## 2 Sample Appendix - All Employees after 90 days

APPENDIX

TO COLLECTIVE BARGAINING AGREEMENT

BETWEEN ___________________________

AND SEIU LOCAL___________________

Section 1. COVERAGE

__________________________ ("Employer") agrees to make periodic contributions on behalf of all employees covered by the Collective Bargaining Agreement to the Service Employees International Union National Industry Pension Fund ("Fund") in the amounts specified in Section 3 below.

Section 2. TERM

The Employer agrees to become and remain a participating employer in the Fund throughout the term of this Collective Bargaining Agreement, including any extensions thereof.

Section 3. CONTRIBUTIONS

(a) (1) As of _________ , the Employer agrees to contribute to the Fund $____ per paid hour for all employees covered by the Agreement who have completed 90 days of employment, measured from date of hire.

[Complete subsections (2), (3), and (4) or strike, as appropriate]

(2) Commencing on __________, 20___ , the Employer shall contribute to the Fund in the amount of $ _____ per paid hour for all employees covered by the Collective Bargaining Agreement.

(3) Commencing _______________, 20 ____ , the Employer shall contribute to the Fund in the amount of $ _____ per paid hour for all employees covered by the Collective Bargaining Agreement.

(4) Commencing ______________ , 20 _____ , the Employer shall contribute to the Fund in the amount of $ _____ per paid hour for all employees covered by the Collective Bargaining Agreement.

(b) Contributions required by this provision shall be paid to the Fund on or before the fifteenth day of the month following the period for which contributions are due or before such other date as the Trustees may hereafter determine.

(c) Contributions shall be transmitted together with a remittance report containing such information, in such manner, and on such form as may be required by the Fund or their designee.

Section 4. TRUST AGREEMENT

The Employer hereby agrees to be bound by the provisions of the Agreement and Declaration of Trust establishing the Fund, as it may from time to time be amended, and by all resolutions and rules adopted by the Trustees pursuant to the powers delegated to them by that agreement, including collection policies, receipt of which is hereby acknowledged. The Employer hereby designates the Employer members of the Fund's Board of Trustees, or their duly selected successor(s), as its representatives on the Board.

Section 5. AUDITS

The Employer agrees to permit auditors authorized by the Fund to inspect and review any of its records necessary to ensure compliance with this Agreement and to forward such records or true copies thereof to the Fund's auditors upon request.

Section 6. DELINQUENCIES

The Employer agrees and affirms that, should it default or become delinquent in any of its obligations to the Fund set forth in this Article, it shall be liable for such damages, penalties and costs as may be provided for by the Fund's Trust Agreement, resolution(s) and collection policy(ies) of the Fund's Trustees including, but not limited to, a late payment penalty, interest, liquidated damages, and all costs of collection including reasonable attorney's and accounting fees.

Section 7. COOPERATION

The Employer and Union agree to cooperate with the Trustees of the Fund in distributing Plan booklets, literature, and other documents supplied by the Fund Administrator and in obtaining and providing such census and other data as may be required by the Fund's Administrator or Trustees to enable them to comply with the applicable provisions of the Employee Retirement Income Security Act.

Section 8. APPROVAL BY TRUSTEES

The undersigned parties acknowledge that the provisions of this Article and the participation of the employees covered by it are subject to approval by the Trustees of the Fund and that the Trustees reserve the right to terminate, at their sole and unreviewable discretion, the participation of the employees covered by this Agreement and to establish the level(s) of benefits

to be provided. Termination may be directed by the Trustees for reasons including, but not limited to, failure of the Employer to timely pay contributions and expiration of a Collective Bargaining Agreement. The parties further acknowledge that the Trustees' acceptance for participation in the Fund of the employees covered by the Collective Bargaining Agreement is limited only to the categories of employment covered by the Collective Bargaining Agreement at the time application for acceptance occurs and the admission of other categories of employment to participate in the Fund will require specific acceptance by the Trustees.

Section 9. MISCELLANEOUS

In the event of any inconsistency between this Appendix and the Collective Bargaining Agreement, the terms of this Appendix shall prevail.

| | |
|---|---|
| For the Employer [Fed. EIN: _______________ | For the Union |
| ______________________________________ | ________________________________ |
| Dated ________________________________ | Dated __________________________ |

## 3 Sample Appendix - All Employees after 90 days Retro

APPENDIX

TO COLLECTIVE BARGAINING AGREEMENT
BETWEEN _________________________________
AND SEIU LOCAL_______

PENSION

Section 1. COVERAGE

________________________________(“Employer”) agrees to make periodic contributions on behalf of all employees covered by the Collective Bargaining Agreement to the Service Employees International Union National Industry Pension Fund ("Fund") in the amounts specified in Section 3 below.

Section 2. TERM

The Employer agrees to become and remain a participating employer in the Fund throughout the term of this Collective Bargaining Agreement, including any extensions thereof.

Section 3. CONTRIBUTIONS

(a) (1) As of , 20 . The Employer agrees to contribute to the Fund $_____ per paid hour for all employees covered by the Collective Bargaining Agreement who have completed 90 days of employment, measured from date of hire. The Employer shall, on the date on which its next monthly contributions are due, make retroactive contributions for such employees for all hours paid from the employee’s date of hire.

[Complete subsections (2), (3), and (4) or strike, as appropriate]

(2) Commencing on ____________, 20___ , the Employer shall contribute to the Fund in the amount of $ ____ per paid hour for all employees covered by the Collective Bargaining Agreement.

(3) Commencing _____________ , 20 ___ , the Employer shall contribute to the Fund in the amount of $ ______ per paid hour for all employees covered by the Collective Bargaining Agreement.

(4) Commencing _____________ , 20 ___ , the Employer shall contribute to the Fund in the amount of $ ______ per paid hour for all employees covered by the Collective Bargaining Agreement.

(b) Contributions required by this provision shall be paid to the Fund on or before the fifteenth day of the month following the period for which contributions are due or before such other date as the Trustees may hereafter determine.

(c) Contributions shall be transmitted together with a remittance report containing such information, in such manner, and on such form as may be required by the Fund or their designee.

Section 4. TRUST AGREEMENT

The Employer hereby agrees to be bound by the provisions of the Agreement and Declaration of Trust establishing the Fund, as it may from time to time be amended, and by all resolutions and rules adopted by the Trustees pursuant to the powers delegated to them by that agreement, including collection policies, receipt of which is hereby acknowledged. The Employer hereby designates the Employer members of the Fund's Board of Trustees, or their duly selected successor(s), as its representatives on the Board.

Section 5. AUDITS

The Employer agrees to permit auditors authorized by the Fund to inspect and review any of its records necessary to ensure compliance with this Agreement and to forward such records or true copies thereof to the Fund's auditors upon request.

Section 6. DELINQUENCIES

The Employer agrees and affirms that, should it default or become delinquent in any of its obligations to the Fund set forth in this Article, it shall be liable for such damages, penalties and costs as may be provided for by the Fund's Trust Agreement, resolution(s) and collection policy(ies) of the Fund's Trustees including, but not limited to, a late payment penalty, interest, liquidated damages, and all costs of collection including reasonable attorney's and accounting fees.

Section 7. COOPERATION

The Employer and Union agree to cooperate with the Trustees of the Fund in distributing Plan booklets, literature, and other documents supplied by the Fund Administrator and in obtaining

and providing such census and other data as may be required by the Fund's Administrator or Trustees to enable them to comply with the applicable provisions of the Employee Retirement Income Security Act.

Section 8. APPROVAL BY TRUSTEES

The undersigned parties acknowledge that the provisions of this Article and the participation of the employees covered by it are subject to approval by the Trustees of the Fund and that the Trustees reserve the right to terminate, at their sole and unreviewable discretion, the participation of the employees covered by this Agreement and to establish the level(s) of benefits to be provided. Termination may be directed by the Trustees for reasons including, but not limited to, failure of the Employer to timely pay contributions and expiration of a Collective Bargaining Agreement. The parties further acknowledge that the Trustees' acceptance for participation in the Fund of the employees covered by the Collective Bargaining Agreement is limited only to the categories of employment covered by the Collective Bargaining Agreement at the time application for acceptance occurs and the admission of other categories of employment to participate in the Fund will require specific acceptance by the Trustees.

Section 9. MISCELLANEOUS

In the event of any inconsistency between this Appendix and the Collective Bargaining Agreement, the terms of this Appendix shall prevail.

For the Employer [Fed. EIN: _______________] For the Union:

__________________________________________ ______________________________________

Dated __________________________________ Dated ______________________________

# 4 Sample Appendix - Date of Hire & 1000 hours

APPENDIX
TO COLLECTIVE BARGAINING AGREEMENT
BETWEEN ____________________
AND SEIU LOCAL _______________

Section 1. COVERAGE

_________________________ ("Employer") agrees to make periodic contributions on behalf of all employees covered by the Collective Bargaining Agreement to the Service Employees International Union National Industry Pension Fund ("Fund") in the amounts specified in Section 3 below.

Section 2. TERM

The Employer agrees to become and remain a participating employer in the Fund throughout the term of this Collective Bargaining Agreement, including any extensions thereof.

Section 3. CONTRIBUTIONS

*(a)* (1) As of ____________, the Employer agrees to contribute to the Fund $____ per paid hour for employees covered by the Collective Bargaining Agreement. Regular full-time and regular part-time employees hired after the effective date of this Appendix shall be covered from their date of hire. *Employees who are not regular full-time or regular part-time (such as temporary, seasonal, extra, casual, and on-call employees) shall be covered after they satisfy the provisions of subsection (d) below.*

[Complete subsections (2), (3), and (4) or strike, as appropriate]

(2) Commencing on ___________, 20___, the Employer shall contribute to the Fund in the amount of $ _____ per paid hour for all employees covered by the Collective Bargaining Agreement.

(3) Commencing _______________, 20 ____, the Employer shall contribute to the Fund in the amount of $ _____ per paid hour for all employees covered by the Collective Bargaining Agreement.

(4) Commencing ______________, 20 ____, the Employer shall contribute to the Fund in the amount of $ _____ per paid hour for all employees covered by the Collective Bargaining Agreement.

(b) Contributions required by this provision shall be paid to the Fund on or before the fifteenth day of the month following the period for which contributions are due or before such other date as the Trustees may hereafter determine.

(c) Contributions shall be transmitted together with a remittance report containing such information, in such manner, and on such form as may be required by the Fund or their designee.

(d) Notwithstanding any other provision of the Agreement or this Appendix thereto, contributions shall be made on behalf of any employee who is not a regular full-time or regular part-time employee, provided he has worked, or been compensated, for one thousand (1,000) hours or more during the twelve-month period beginning with the employee's date of hire. If such an employee does not work, or is not compensated for, at least one thousand (1,000) hours during the first year of employment, the computation period shall be based on the calendar year beginning after the end of his first of employment. Thereafter, contributions shall be made for such employee for all hours paid irrespective of whether the hours worked exceeds one thousand (1,000) hours in subsequent years. Until contributions are required to be made on behalf of an employee pursuant to the terms of this provision, the employee shall not be deemed to be a covered employee working in covered employment within the meaning of the SEIU National Industry Pension Plan and subsection (a) above. All employees who previously were participants in the pension plan sponsored by the Employer or its predecessor by virtue of having one thousand (1,000) or more hours of service with the Employer or predecessor shall be deemed to be participants under the SEIU National Industry Pension Plan and have contributions made on their behalf to the Fund for all paid hours without the necessity of meeting any additional eligibility requirement.

Section 4. TRUST AGREEMENT

The Employer hereby agrees to be bound by the provisions of the Agreement and Declaration of Trust establishing the Fund, as it may from time to time be amended, and by all resolutions and rules adopted by the Trustees pursuant to the powers delegated to them by that agreement, including collection policies, receipt of which is hereby acknowledged. The Employer hereby designates the Employer members of the Fund's Board of Trustees, or their duly selected successor(s), as its representatives on the Board.

Section 5. AUDITS

The Employer agrees to permit auditors authorized by the Fund to inspect and review any of its records necessary to ensure compliance with this Agreement and to forward such records or true copies thereof to the Fund's auditors upon request.

Section 6. DELINQUENCIES

The Employer agrees and affirms that, should it default or become delinquent in any of its obligations to the Fund set forth in this Article, it shall be liable for such damages, penalties and costs as may be provided for by the Fund's Trust Agreement, resolution(s) and collection policy(ies) of the Fund's Trustees including, but not limited to, a late payment penalty, interest, liquidated damages, and all costs of collection including reasonable attorney's and accounting fees.

Section 7. COOPERATION

The Employer and Union agree to cooperate with the Trustees of the Fund in distributing Plan booklets, literature, and other documents supplied by the Fund Administrator and in obtaining and providing such census and other data as may be required by the Fund's Administrator or Trustees to enable them to comply with the applicable provisions of the Employee Retirement Income Security Act.

Section 8. APPROVAL BY TRUSTEES

The undersigned parties acknowledge that the provisions of this Article and the participation of the employees covered by it are subject to approval by the Trustees of the Fund and that the Trustees reserve the right to terminate, at their sole and unreviewable discretion, the participation of the employees covered by this Agreement and to establish the level(s) of benefits to be provided. Termination may be directed by the Trustees for reasons including, but not limited to, failure of the Employer to timely pay contributions and expiration of a Collective Bargaining Agreement. The parties further acknowledge that the Trustees' acceptance for participation in the Fund of the employees covered by the Collective Bargaining Agreement is limited only to the categories of employment covered by the Collective Bargaining Agreement at the time application for acceptance occurs and the admission of other categories of employment to participate in the Fund will require specific acceptance by the Trustees.

Section 9. MISCELLANEOUS

In the event of any inconsistency between this Appendix and the Collective Bargaining Agreement, the terms of this Appendix shall prevail.

For the Employer [Fed. EIN: _______________ For the Union

_______________________________________ _________________________________

Dated _________________________________ Dated ___________________________

## 5 Sample Appendix - 90 days & 1000 hours

APPENDIX
TO COLLECTIVE BARGAINING AGREEMENT
BETWEEN __________________
AND SEIU LOCAL ____________

Section 1. COVERAGE

__________________________ (“Employer”) agrees to make periodic contributions on behalf of all employees covered by the Collective Bargaining Agreement to the Service Employees International Union National Industry Pension Fund ("Fund") in the amounts specified in Section 3 below.

Section 2. TERM

The Employer agrees to become and remain a participating employer in the Fund throughout the term of this Collective Bargaining Agreement, including any extensions thereof.

Section 3. CONTRIBUTIONS

(a) (1) As of _________ , the Employer agrees to contribute to the Fund $____ per paid hour for all employees covered by the Collective Bargaining Agreement. Regular full-time and part-time employees shall be covered after the completion of 90-days of employment, measured form their date of hire. *Employees who are not regular full-time or regular part-time (such as temporary, seasonal, extra, casual, and on-call employees) shall be covered after they satisfy the provisions of subsection (d) below.*

[Complete subsections (2), (3), and (4) or strike, as appropriate]

(2) Commencing on ___________, 20___ , the Employer shall contribute to the Fund in the amount of $ _____ per paid hour for all employees covered by the Collective Bargaining Agreement.

(3) Commencing _______________ , 20 ____ , the Employer shall contribute to the Fund in the amount of $ _____ per paid hour for all employees covered by the Collective Bargaining Agreement.

(4) Commencing ______________ , 20 ____ , the Employer shall contribute to the Fund in the amount of $ _____ per paid hour for all employees covered by the Collective Bargaining Agreement.

(b) Contributions required by this provision shall be paid to the Fund on or before the fifteenth day of the month following the period for which contributions are due or before such other date as the Trustees may hereafter determine.

(c) Contributions shall be transmitted together with a remittance report containing such information, in such manner, and on such form as may be required by the Fund or their designee.

(d) Notwithstanding any other provision of the Agreement or this Appendix thereto, contributions shall be made on behalf of any employee who is not regular full-time or regular part-time, provided he has worked, or been compensated, for one thousand (1,000) hours or more during the twelve-month period beginning with the employee's date of hire. If such an employee does not work, or is not compensated for, at least 1,000 hours during his first year of employment, the computation period shall be based on the calendar year beginning after the end of their first year of employment. Thereafter, contributions shall be made for such employee for all hours paid irrespective of whether the hours worked exceeds one thousand (1,000) hours in subsequent years. Until contributions are required to be made on behalf of an employee pursuant to the terms of this provision, the employee shall not be deemed to be a covered employee working in covered employment within the meaning of the SEIU National Industry Pension Plan and subsection (a) above. All employees who previously were participants in the pension plan sponsored by the Employer or its predecessor by virtue of having one thousand (1,000) or more hours of service with the Employer or predecessor shall be deemed to be participants under the SEIU National Industry Pension Plan and have contributions made on their behalf to the Fund for all paid hours without the necessity of meeting any additional eligibility requirement.

Section 4. TRUST AGREEMENT

The Employer hereby agrees to be bound by the provisions of the Agreement and Declaration of Trust establishing the Fund, as it may from time to time be amended, and by all resolutions and rules adopted by the Trustees pursuant to the powers delegated to them by that agreement, including collection policies, receipt of which is hereby acknowledged. The Employer hereby designates the Employer members of the Fund's Board of Trustees, or their duly selected successor(s), as its representatives on the Board.

Section 5. AUDITS

The Employer agrees to permit auditors authorized by the Fund to inspect and review any of its records necessary to ensure compliance with this Agreement and to forward such records or true copies thereof to the Fund's auditors upon request.

Section 6. DELINQUENCIES

The Employer agrees and affirms that, should it default or become delinquent in any of its obligations to the Fund set forth in this Article, it shall be liable for such damages, penalties and costs as may be provided for by the Fund's Trust Agreement, resolution(s) and collection policy(ies) of the Fund's Trustees including, but not limited to, a late payment penalty, interest, liquidated damages, and all costs of collection including reasonable attorney's and accounting fees.

Section 7. COOPERATION

The Employer and Union agree to cooperate with the Trustees of the Fund in distributing Plan booklets, literature, and other documents supplied by the Fund Administrator and in obtaining and providing such census and other data as may be required by the Fund's Administrator or Trustees to enable them to comply with the applicable provisions of the Employee Retirement Income Security Act.

Section 8. APPROVAL BY TRUSTEES

The undersigned parties acknowledge that the provisions of this Article and the participation of the employees covered by it are subject to approval by the Trustees of the Fund and that the Trustees reserve the right to terminate, at their sole and unreviewable discretion, the participation of the employees covered by this Agreement and to establish the level(s) of benefits to be provided. Termination may be directed by the Trustees for reasons including, but not limited to, failure of the Employer to timely pay contributions and expiration of a Collective Bargaining Agreement. The parties further acknowledge that the Trustees' acceptance for participation in the Fund of the employees covered by the Collective Bargaining Agreement is limited only to the categories of employment covered by the Collective Bargaining Agreement at the time application for acceptance occurs and the admission of other categories of employment to participate in the Fund will require specific acceptance by the Trustees.

Section 9. MISCELLANEOUS

In the event of any inconsistency between this Appendix and the Collective Bargaining Agreement, the terms of this Appendix shall prevail.

For the Employer [Fed. EIN: ______________ For the Union

________________________________ ________________________________

Dated ____________________________ Dated ____________________________

## 6 Sample Appendix – 90 day-1000 hours & Retro

APPENDIX

TO COLLECTIVE BARGAINING AGREEMENT
BETWEEN ________________________________
AND SEIU LOCAL_______

PENSION

Section 1. COVERAGE

_______________________________(“Employer”) agrees to make periodic contributions on behalf of all employees covered by the Collective Bargaining Agreement to the Service Employees International Union National Industry Pension Fund ("Fund") in the amounts specified in Section 3 below.

Section 2. TERM

The Employer agrees to become and remain a participating employer in the Fund throughout the term of this Collective Bargaining Agreement, including any extensions thereof.

Section 3. CONTRIBUTIONS

(a) (1) As of __________, 20___. The Employer agrees to contribute to the Fund $_____ per paid hour for all employees covered by the Agreement.

[Complete subsections (2), (3), and (4) or strike, as appropriate]

(2) Commencing on ___________, 20___ , the Employer shall contribute to the Fund in the amount of $ ______ per paid hour for all employees covered by the Collective Bargaining Agreement.

(3) Commencing ______________ , 20 ____ , the Employer shall contribute to the Fund in the amount of $ _____ per paid hour for all employees covered by the Collective Bargaining Agreement.

(4) Commencing ______________ , 20 ____ , the Employer shall contribute to the Fund in the amount of $ _____ per paid hour for all employees covered by the Collective Bargaining Agreement.

(b) Contributions required by this provision shall be paid to the Fund on or before the fifteenth day of the month following the period for which contributions are due or before such other date as the Trustees may hereafter determine.

(c) Contributions shall be transmitted together with a remittance report containing such information, in such manner, and on such form as may be required by the Fund or their designee.

(d) Nothing any other provision of the Agreement or this Appendix thereto, contributions shall be made on behalf of any employee who is not regular full-time or regular part-time, provided he worked, or been compensated, for one thousand (1,000) hours or more during the twelve-month period beginning with the employee's date of hire. If such an employee does not work, or is not compensated for, at least 1,000 hours during his first year of employment, the computation period shall be based on a calendar year beginning after the end of his first year of employment. Thereafter, contributions shall be made for such employee for all hours paid irrespective of whether the hours worked exceeds one thousand (1,000) hours in subsequent years. Until contributions are required to be made on behalf of an employee pursuant to the terms of this provision, the employee shall not be deemed to be a covered employee working in covered employment within the meaning of the SEIU National Industry Pension Plan and subsection (a) above. All employees who previously were participants in the pension plan sponsored by the Employer or its predecessor by virtue of having one thousand (1,000) or more hours of service with the Employer or predecessor shall be deemed to be participants under the SEIU National Industry Pension Plan and have contributions made on their behalf to the Fund for all paid hours without the necessity of meeting any additional eligibility requirement.

Section 4. TRUST AGREEMENT

The Employer hereby agrees to be bound by the provisions of the Agreement and Declaration of Trust establishing the Fund, as it may from time to time be amended, and by all resolutions and rules adopted by the Trustees pursuant to the powers delegated to them by that agreement, including collection policies, receipt of which is hereby acknowledged. The Employer hereby designates the Employer members of the Fund's Board of Trustees, or their duly selected successor(s), as its representatives on the Board.

Section 5. AUDITS

The Employer agrees to permit auditors authorized by the Fund to inspect and review any of its records necessary to ensure compliance with this Agreement and to forward such records or true copies thereof to the Fund's auditors upon request.

Section 6. DELINQUENCIES

The Employer agrees and affirms that, should it default or become delinquent in any of its obligations to the Fund set forth in this Article, it shall be liable for such damages, penalties and costs as may be provided for by the Fund's Trust Agreement, resolution(s) and collection

policy(ies) of the Fund's Trustees including, but not limited to, a late payment penalty, interest, liquidated damages, and all costs of collection including reasonable attorney's and accounting fees.

Section 7. COOPERATION

The Employer and Union agree to cooperate with the Trustees of the Fund in distributing Plan booklets, literature, and other documents supplied by the Fund Administrator and in obtaining and providing such census and other data as may be required by the Fund's Administrator or Trustees to enable them to comply with the applicable provisions of the Employee Retirement Income Security Act.

Section 8. APPROVAL BY TRUSTEES

The undersigned parties acknowledge that the provisions of this Article and the participation of the employees covered by it are subject to approval by the Trustees of the Fund and that the Trustees reserve the right to terminate, at their sole and unreviewable discretion, the participation of the employees covered by this Agreement and to establish the level(s) of benefits to be provided. Termination may be directed by the Trustees for reasons including, but not limited to, failure of the Employer to timely pay contributions and expiration of a Collective Bargaining Agreement. The parties further acknowledge that the Trustees' acceptance for participation in the Fund of the employees covered by the Collective Bargaining Agreement is limited only to the categories of employment covered by the Collective Bargaining Agreement at the time application for acceptance occurs and the admission of other categories of employment to participate in the Fund will require specific acceptance by the Trustees.

Section 9. MISCELLANEOUS

In the event of any inconsistency between this Appendix and the Collective Bargaining Agreement, the terms of this Appendix shall prevail.

For the Employer [Fed. EIN: _______________] For the Union:

_______________________________________ _______________________________________

Dated ________________________________ Dated ______________________________

## 7 Assumption Agreement

### Assumption Agreement

SEIU Local (insert #) and __________________________ (insert previous employer's name) have a Collective Bargaining Agreement covering (insert site name). The term of that Collective Bargaining Agreement is (insert start date) through (insert end date).

__________________________ (insert new employer's name) hereby agrees to adhere to all terms and conditions of the above-referenced Collective Bargaining Agreement that relate to the SEIU National Industry Pension Fund for the duration, and any extensions, thereof.

_______________________ (insert new employer's name) shall be bound by the terms of the SEIU National Industry Pension Fund's Trust Agreement and Collection Policy.

This Assumption Agreement will be effective as of __________________________________ and (insert new employer name)'s first remittance to the SEIU National Industry Pension Fund shall be due on __________________________________

For the Employer
(Insert Employer's Name)

For the Union
SEIU Local (insert #)

By: _____________________________

By:_______________________________

Date: _____________________________

Date: _____________________________

# The Rehabilitation Plan Bargaining Guide (November 25, 2009)

SEIU
National Industry Pension Fund

11 Dupont Circle, N.W. • Ste. 900
Washington, D.C 20036-1202
202-730-7500 • 800-458-1010 (Toll Free)

**To:** **Participating Employers and Union Representatives**

**From:** **SEIU NIPF Board of Trustees** **Date:** **November 25, 2009**

**Re:** **SEIU National Industry Pension Fund**
**Implementation of the Rehabilitation Plan's Default and Preferred Schedules**

We are sending this notice to you to inform you of the Rehabilitation Plan adopted by the SEIU National Industry Pension Fund (NIPF) to comply with the requirements of the Pension Protection Act of 2006 (PPA). This follows up communications to you and to participants earlier this year indicating that investment losses in 2008 triggered the Fund entering what PPA calls "critical status" (generally referred to as the "Red Zone"). That notice also indicated the kinds of changes that a plan must consider in establishing a Rehabilitation Plan.

The Rehabilitation Plan changes benefits for participants who retire and commence a pension on or after January 1, 2010 and changes future accruals earned on or after January 1, 2010.

The pensions of participants and beneficiaries whose pension effective date is before January 1, 2010, are not affected.

Also, additional employer contributions are required in order for the plan to exit the Red Zone as required by the end of 2023. The Trustees are providing two schedules of contribution increases for the bargaining parties to consider – a Preferred Schedule and a Default Schedule. There is also a Transition Schedule specifically available to groups whose contracts expire on or before January 1, 2010 but who have not yet renewed. The schedules are designed so that the plan will exit the Red Zone by the end of 2023. Each collective bargaining agreement must select one of the available schedules.

The following documents are enclosed for your background and use to understand the Rehabilitation Plan and the choices available to the bargaining parties:

- Appendix A contains the benefit and contribution changes in the Rehabilitation Plan, including the schedules.
- Appendix B contains additional information specific to implementing the contribution increases required in the schedules. Note that these are designated as supplemental contributions, and are not used to calculate benefits.
- The official notice of benefit reductions being distributed to all plan participants in the coming days is also included in this package.

The Trustees are required to monitor the progress of the Fund under the Rehabilitation Plan and to make adjustments if necessary in order to meet the target of recovery from critical status by the deadline.

Please review the attached information. Contact the Fund Office with any questions. Ask for Betsy Blount for questions relating to benefit changes or Miriam Gibbs for questions relating to contribution rate changes.

## *Appendix A –*
## *Rehabilitation Plan Details and Schedules*

This Appendix includes the Schedules currently offered by the Trustees for adoption by the bargaining parties, and additional information about Trustee-directed benefit changes that are occurring outside the Schedules.

**BACKGROUND ON REHABILITATION PLAN**

There are certain changes that the Trustees have the authority to implement regardless of the zone status of the Plan. These include reductions in benefit accruals to be earned in the future, and the features of new accruals, including early retirement subsidies, payment guarantees and options. The generally allowable changes also include elimination of ancillary benefits of the plan, including lump sum death benefits (and disability benefits, which the Trustees are not eliminating except in the Default Plan – see below). Ancillary benefits are not protected benefits even if they relate to service or benefits already earned. The Trustees are making these changes effective January 1, 2010.

The Pension Protection Act (PPA) allows plans in the Red Zone to also change certain features of benefits already earned, which are protected from cutbacks in all other situations. These are called "adjustable benefits" and include features such as early retirement subsidies, lump sum benefit options, benefit guarantees and certain supplemental payments. PPA provides that the Trustees can reduce or eliminate adjustable benefits in two ways:

- The Trustees can remove or reduce adjustable benefits as part of a Schedule offered to the bargaining parties for adoption.

- As part of a Rehabilitation Plan, the Trustees can cut adjustable benefits for participants who are no longer covered by a collective bargaining agreement and whose pension effective date is after the date the original zone notice was distributed to participants. This group includes terminated participants and those who in the future leave service (including retirement) before their bargaining group has adopted a Schedule.

**The Trustees have chosen to treat all participants whose pension Effective Dates will be on or after January 1, 2010 as uniformly as possible, as follows:**

- The January 1, 2010 benefit changes described below plus the changes described in the Preferred Schedule – together, these changes are the Preferred Plan of benefits – shall apply to:
  - Participants who terminated or will terminate covered employment, including those who retire on and after January 1, 2010 before they have service under a collective bargaining agreement that adopts terms consistent with a Schedule;
  - Participants who earn at least 1 hour of service under a collective bargaining agreement that adopts the Preferred Schedule;
  - Participants who earn at least 1 hour of service under a collective bargaining agreement that adopts the Transition Schedule.

- The January 1, 2010 benefit changes described below plus the changes described in the Default Schedule – together, these changes are the Default Plan of benefits – shall apply to Participants who earn at least 1 hour of service under a collective bargaining agreement that adopts the Default Schedule.

In addition to these benefit reductions, additional employer contributions are also required to bring the plan out of the Red Zone by the 2023 deadline. The contributions required in the Preferred Schedule are sufficient to support the Preferred Plan of benefits and get the plan out of the Red Zone. PPA requires that the Default Schedule reduce benefits to the maximum extent allowed before additional employer contributions can be required. Therefore, the Default Schedule makes all of the reductions in the Preferred Schedule plus two additional reductions: 1) reduces the future accrual rate to 1% of contributions, and 2) eliminates the subsidized disability benefit, (participants could still be eligible for a disability benefit, but on a non-subsidized basis that is actuarially equivalent to the accrued benefit payable at normal retirement age). The contributions required in the Default Schedule are sufficient to support the Default Plan of benefits.

Details of the Rehabilitation Plan and Schedules are below.

**BENEFIT CHANGES EFFECTIVE JANUARY 1, 2010**

The following changes are effective for all benefits accrued on and after January 1, 2010:

- For all accruals on and after January 1, 2010, except for accruals subject to the lower accrual rate of the Default Schedule as described below, the benefit accrual rate becomes 1.75% of contributions required to be made with respect to the participant's service. "Contributions" for this purpose exclude any employer contribution surcharges imposed by PPA and any supplemental contributions required by the Preferred Schedule or Default Schedule.

- For all accruals on and after January 1, 2010, the 60-month guarantee is eliminated. Participants will have the option of electing an unsubsidized 60-month guarantee on the single life annuity benefit.

- For all accruals on and after January 1, 2010, early retirement subsidies are eliminated. This includes:
    - Special reduction factors for the Rule of 80 Pension are replaced by the factors described below.
    - The Plan's 6% annual reduction factor for retirements before age 65 that do not meet the Rule of 80 is replaced by the factors described below.
    - All new early retirement benefits will be the actuarial equivalent of the normal retirement benefit payable at age 65; actuarial equivalence will be based on the RP-2000 Combined Healthy Mortality Table (weighted 2/3% male, 1/3% female) with 7.50% interest and are attached as Exhibit A. The basis for actuarial equivalence shall be reviewed periodically and, if appropriate, updated.

- The voluntary lump sum benefit ($5,000 to $10,000) is eliminated for all new participants whose first employer contributions are for work on or after January 1, 2010.

In addition, the following ancillary benefits are eliminated:

- The pre-retirement lump sum death benefit of 50% return of contributions is eliminated for deaths occurring on and after January 1, 2010.
- The Michigan Race Tracks ($2,500) death benefits are eliminated for participants not in pay status as of January 1, 2010.

## PREFERRED SCHEDULE

**Benefit Changes**

- These changes are in addition to the January 1, 2010 changes to prospective accruals and ancillary benefits.
- All of the benefit changes listed below are effective as of the date specified in the benefit-reduction notice furnished by the plan.
- The benefit accrual rate remains 1.75% of contributions required to be made with respect to the participant's covered service. "Contributions" for this purpose exclude any supplemental contribution increases specifically required by this Schedule and any employer contribution surcharges imposed by PPA.
- The pop-up subsidy on pre-2005 accruals is eliminated. The reductions for the pop-up optional form will be the same as those currently used for post-2005 accruals.
- The 60-month guarantee on pre-2010 accruals is eliminated with respect to benefits not in pay status. Participants will have the option of electing an unsubsidized 60-month guarantee on the single life annuity.
- The lump sum option, which is available if the present value of the accrued benefit is between $5,000 and $10,000 or if the monthly pension is less than $50, is eliminated. (The NIPF will still pay any benefit as a lump sum that has a lump sum value of $5,000 or less.)
- Early retirement subsidies on pre-2010 accruals for retirement (including Rule of 80) and pre-retirement death benefits are eliminated. Instead, early retirement benefits and pre-retirement benefits on pre-2010 accruals will be based on actuarially equivalent reductions from age 65. The new early retirement factors are based on the RP-2000 Combined Healthy Mortality Table (weighted 2/3% male, 1/3% female) with 7.50% interest and are attached as Exhibit A. The basis for actuarial equivalence shall be reviewed periodically and, if appropriate, updated.
- The BSEPP Medicare Part B Supplement is eliminated for all participants who are not yet in pay status.

**Supplemental Contributions**

Surcharges shall cease and employer contribution levels shall increase as follows under this Schedule, beginning with contributions due the first of the month coincident with or next following the effective date of the Collective Bargaining Agreement (CBA):

| | **Required Percent Increase in Contributions** | |
|---|---|---|
| **Year of CBA Signing** | *Year 1** | *Each year thereafter through 2022* |
| 2010 | 10.0% | 7.75% |
| 2011 | 18.5% | 7.75% |
| 2012 | 27.7% | 7.75% |
| 2013 | 37.6% | 7.75% |
| 2014 | 48.3% | 7.75% |
| 2015 | 59.8% | 7.75% |

* Based on negotiated contributions prior to all surcharges.

See table in Appendix B for full year-by-year schedule of contributions.

**Future Revisions**

As the Trustees are required by ERISA and the Internal Revenue Code to review the progress of their Rehabilitation Plan each year and to update the Rehabilitation Plan and schedules if necessary, benefit reductions and contribution levels specified in this schedule as applicable in future years are subject to change, except with respect to a collective bargaining agreement negotiated in reliance on this schedule – provided that, if the term exceeds three years, the agreement has a pension re-opener after three years.

## DEFAULT SCHEDULE

**Benefit Changes**

- These changes are in addition to the January 1, 2010 changes to prospective accruals and ancillary benefits.
- All of the benefit changes listed below are effective as of the date specified in the benefit-reduction notice furnished by the plan.
- The benefit accrual rate becomes 1.00% of contributions required to be made with respect to the participant's covered service. "Contributions" for this purpose exclude any supplemental contribution increases specifically required by this Schedule and any employer contribution surcharges imposed by PPA.
- The disability benefit subsidy is eliminated for any participant whose effective date is on or after the date the Default Schedule is adopted. The amount of the disability benefit will be

the actuarial equivalent of the normal retirement benefit payable at age 65; actuarial equivalence will be based on the RP-2000 Combined Healthy Mortality Table (weighted 2/3 male and 1/3 female) with 7.50% interest. Factors are attached as Exhibit B. The basis for actuarial equivalence shall be reviewed periodically and, if appropriate, updated.

- The pop-up subsidy on pre-2005 accruals is eliminated. The reductions for the pop-up optional form will be the same as those currently used for post-2005 accruals.
- The 60-month guarantee on pre-2010 accruals is eliminated with respect to benefits not in pay status. Participants will have the option of electing an unsubsidized 60-month guarantee on the single life annuity.
- The lump sum option, which is available if the present value of the accrued benefit is between $5,000 and $10,000 or if the monthly pension is less than $50, is eliminated. (The NIPF will still pay any benefit as a lump sum that has a lump sum value of $5,000 or less.)
- Early retirement subsidies on pre-2010 accruals for retirement (including Rule of 80) and pre-retirement death benefits are eliminated. Instead, early retirement benefits and pre-retirement benefits on pre-2010 accruals will be based on actuarially equivalent reductions from age 65. The new early retirement factors are based on the RP-2000 Combined Healthy Mortality Table (weighted 2/3% male, 1/3% female) with 7.50% interest and are attached as Exhibit A. The basis for actuarial equivalence shall be reviewed periodically and, if appropriate, updated.
- The BSEPP Medicare Part B Supplement is eliminated for all participants who are not yet in pay status.

**<u>Supplemental Contributions</u>**

Surcharges shall cease and employer contribution levels shall increase as follows under this Schedule, beginning with contributions due the first of the month coincident with or next following the effective date of the Collective Bargaining Agreement (CBA):

| | **Required Percent Increase in Contributions** | |
|---|---|---|
| **Year of CBA Signing** | *Year 1** | *Each year thereafter through 2013* |
| 2010 | 21.3% | 10.25% |
| 2011 | 33.7% | 10.25% |
| 2012 | 47.4% | 10.25% |
| 2013 | 62.5% | ------ |

* Based on negotiated contributions prior to all surcharges.

See table in Appendix B for full year-by-year schedule of contributions.

**Future Revisions**

As the Trustees are required by ERISA and the Internal Revenue Code to review the progress of their Rehabilitation Plan each year and to update the Rehabilitation Plan and schedules if necessary, benefit reductions and contribution levels specified in this schedule as applicable in future years are subject to change, except with respect to a collective bargaining agreement negotiated in reliance on this schedule – provided that, if the term exceeds three years, the agreement has a pension re-opener after three years.

## TRANSITION SCHEDULE

**Note that this schedule is available ONLY to collective bargaining agreements (CBAs) which expired on or before January 1, 2010 and have not been renewed by the date the Preferred and Default Schedules are provided.**

Under this transition schedule, groups with CBAs as described above may elect to defer adoption of the Preferred or Default schedules of supplemental contributions to the earlier of their next CBA renewal or re-opener, provided that:

1. The renewal CBA has a term not to exceed three years from the expiration of the prior contract or has a mandatory re-opener on pension within three years from the expiration of the prior contract and

2. The Fund Office receives a copy of the renewal CBA within six months of the expiration date of the CBA it replaces.

The 10% surcharge will be payable as a supplemental contribution by groups following this Transition Schedule until the Preferred Schedule or Default Schedule is effective.

Benefits under the Transition Schedule will be the same benefits as under the Preferred Schedule.

**Future Revisions**

As the Trustees are required by ERISA and the Internal Revenue Code to review the progress of their Rehabilitation Plan each year and to update the Plan and schedules if necessary, benefit reductions and contribution rates specified in this schedule as applicable in future years are subject to change, except with respect to a collective bargaining agreement negotiated in reliance on this schedule – provided that, if the term exceeds three years, the agreement has a pension re-opener after three years..

## SPECIAL RULES FOR APPLICATION OF SCHEDULES

1. For non-collectively bargained active participants who have had contributions made to the plan under a participation agreement, their benefit will be determined in the same way as for collectively bargained participants who work for the same employer. The Schedule adopted for collectively-bargained participants will also apply to the non-collectively-bargained participants for the same employer.

2. If a participant changes employers and, as a result, becomes covered under a different schedule, benefits shall be determined as follows:

    - If a participant who was covered by a particular Schedule subsequently becomes covered by another Schedule, benefits accrued under the plan, up to the date of change, will be determined and have associated rights and features as described under the first Schedule, and benefits accruing for work performed under a different schedule will be determined and have associated rights and features as described under the second Schedule.

    - If a participant works simultaneously for more than one employer at the time that each employer initially adopts a schedule, then the benefits earned under each employer will be calculated in accordance with the schedule adopted by that employer. For purposes of determining disability benefits, the first schedule under which the participant works will determine whether the benefits earned before the participant worked under any schedule are subsidized.

3. If a pensioner returns to work, the schedule under which he or she works will determine the benefit amounts and features of new benefit accruals but will not affect the features of the prior benefit already commenced.

4. If a terminated vested participant who has never worked under a schedule returns to work, the schedule under which he or she works will determine the benefit amounts and features of new benefit accruals.

5. Benefits of a beneficiary or alternate payee with respect to a participant or retiree shall be determined on the same basis as benefits of the participant or retiree to whom they relate.

6. The trustees may amend this Rehabilitation Plan at any time, to prescribe rules for determining when benefits with respect to a participant or retiree cease to be governed by a Schedule, including the circumstances under which they become subject to a different Schedule.

## ANNUAL UPDATING OF REHABILITATION PLAN

Each year the Fund's actuary will review and certify the status of the Fund under PPA funding rules and, starting with the beginning of the rehabilitation period, whether the Fund is making the scheduled progress in meeting the requirements of the Rehabilitation Plan. If the Trustees determine that it is necessary in light of updated information, they will revise the Rehabilitation Plan and present updated schedules to the bargaining parties, which may prescribe additional benefit reductions or higher contribution rates.

Notwithstanding subsequent changes in benefit and contribution schedules, a schedule provided by the Trustees and relied upon by the bargaining parties in negotiating a collective bargaining agreement shall remain in effect for the duration of that collective bargaining agreement. However, a collective bargaining agreement that is renewed or extended will need to include terms consistent with one of the schedules in effect at the time of the renewal or extension.

Benefit changes will become effective pursuant to the terms of this Rehabilitation Plan as soon as legally permissible after the Rehabilitation Plan is adopted.

## EXHIBIT A – ACTUARIAL EQUIVALENT EARLY RETIREMENT REDUCTION

| Age | Actuarially Equivalent Early Retirement Reduction |
|---|---|
| 55 | 61.87% |
| 56 | 58.30% |
| 57 | 54.35% |
| 58 | 49.95% |
| 59 | 45.04% |
| 60 | 39.56% |
| 61 | 33.42% |
| 62 | 26.52% |
| 63 | 18.75% |
| 64 | 9.96% |

## EXHIBIT B – ACTUARIAL EQUIVALENT DISABILITY REDUCTION

| Age | Actuarially Equivalent Disability Reduction |
|---|---|
| 30 | 94.86% |
| 31 | 94.46% |
| 32 | 94.02% |
| 33 | 93.55% |
| 34 | 93.04% |
| 35 | 92.48% |
| 36 | 91.88% |
| 37 | 91.24% |
| 38 | 90.53% |
| 39 | 89.77% |
| 40 | 88.94% |
| 41 | 88.03% |
| 42 | 87.05% |
| 43 | 85.99% |
| 44 | 84.82% |
| 45 | 83.56% |
| 46 | 82.17% |
| 47 | 80.66% |
| 48 | 79.01% |
| 49 | 77.20% |
| 50 | 75.21% |
| 51 | 73.03% |
| 52 | 70.64% |
| 53 | 68.00% |
| 54 | 65.09% |
| 55 | 61.87% |
| 56 | 58.30% |
| 57 | 54.35% |
| 58 | 49.95% |
| 59 | 45.04% |
| 60 | 39.56% |
| 61 | 33.42% |
| 62 | 26.52% |
| 63 | 18.75% |
| 64 | 9.96% |

## *Appendix B –*
## *Additional Information on Implementing Contribution Adjustments*

Regular employer contributions: These are the contributions negotiated in each agreement that are credited to the participant on whose behalf they were made to determine that participant's benefits under the NIPF plan formula. These contribution rates may not be reduced. They may be negotiated upward in a renewal agreement, but note that this will cause the supplemental contributions owed by the employer to increase as well, since they are derived from the regular contribution rate. Any future contribution increases that have been negotiated in agreements currently in effect, will be treated as regular employer contributions when the increases go into effect unless the parties specifically agree before the increase becomes effective that they shall be treated as supplemental contributions

Employer surcharges and supplemental contributions: Since June 1 of this year, as required by the PPA, employers have been paying a surcharge equal to 5% of the contributions that have been negotiated in collective bargaining agreements. As of January 1, 2010, this surcharge becomes 10% of contributions, and remains so until each collective bargaining agreement is renewed or the Default Schedule is imposed. The higher ,increases called for in the Default Schedule or the Preferred Schedule must be negotiated into the renewal agreement. The surcharge is replaced by the supplemental contributions. Surcharges and supplemental contributions do not cause higher benefits to be paid.

Default Schedule imposed if no schedule is selected: If your bargaining group does not adopt a schedule and provide your agreement to the Fund Office within 180 days of the termination of the last agreement, the NIPF Trustees will impose the Default Schedule on the employers and members. If your collective bargaining agreement has expired prior to the date of this notice, but not yet renewed, the 180 days starts counting from the date of this notice.

Contracts currently in negotiations: Groups whose contracts expire on or before January 1, 2010 have a special option (the Transition Schedule) to renew their agreement without electing the Preferred or Default Schedule, provided that the agreement is no longer than three years or that it has pension re-opener within at least three years, and provided that the contract is renewed within 180 days of its expiration and provided to the Fund Office. The 10% surcharge in place as of January 1, 2010 will remain in place as a supplemental contribution until the Preferred or Default Schedule is adopted.

Limitations on Collective Bargaining Agreements: The Trustees will not accept CBAs that have the following provisions:

- Terms of agreement longer than three years unless the CBA has pension re-opener within at least three years
- Renewal or amended CBAs that reduce the negotiated contribution rate for any participant.
- Renewal or amended CBAs that suspend contributions for any periods of service that were not in the previous agreement, provided the previous agreement conformed to then-current NIPF rules.

- Renewal or amended CBAs that exclude directly or indirectly younger or newly hired employees from plan participation in ways that were not present in the previous agreement, provided the previous agreement conformed to then-current NIPF policy.

- New CBAs likewise may not have provisions that reduce a negotiated contribution rate once established, suspend contributions for any period of service, or that exclude directly or indirectly younger or newly hired employees from plan participation.

New Groups. For groups entering the plan on or after the date the schedules are distributed, :
if it is a group with a new CBA, then benefits and contributions will be determined under the Preferred Schedule. If it is a newly-organized or accreted unit into an existing master contract, benefits and contributions will be determined under the schedule applicable to the master contract.

Designating the supplemental contributions in the collective bargaining agreement (CBA): The employer supplemental contribution schedules shown below reflect the specific percentage adjustments required each year on the regular contribution, based on the year in which the Preferred Schedule or the Default Schedule are adopted. They are paid on a group basis and not credited on any participant's behalf toward the benefit formula. The surcharges in effect before your group adopts a Schedule are required under law and will be assessed regardless of whether they appear in your CBA.

When you adopt a Schedule, the supplemental contribution is compounded each year. Each subsequent year's supplemental contribution increase is compounded on the increase of the prior year. The amount in the tables below is the amount to be included in your CBA for each year. Your CBA should also indicate which Schedule you have adopted.

Effective date of supplemental contribution adjustments: The supplemental contributions must start as of the Effective Date of the renewal agreement, or, if earlier, 180 days from expiration of the old agreement, but not earlier than January 1, 2010. Supplemental contributions must commence for all contributions due under the new agreement. Surcharges are required for all contributions due prior to the date that the supplemental contributions take effect.

Each scheduled subsequent increase in the supplemental contribution is to take effect no later than the anniversary of the date of the initial increase, even if a subsequent bargaining agreement renews on a different cycle.

The collective bargaining agreement needs to contain only those increases specified during the term of its agreement. Subsequent agreements must continue the contribution increase pattern called for by the chosen schedule unless the Trustees have replaced this table with an updated table or adopted a different rule. Any updated contribution rate table would only apply to collective bargaining agreements as they are opened or renewed.

Effective date of benefit changes in the Default Schedule: If the Default Schedule is adopted, the reduction in benefits will not be applied retroactively. It will occur on the date the renewal agreement is signed if it is the first of a month. Otherwise benefits are adjusted at the beginning of the first full month that follows.

## Table of Scheduled Contribution Increases

The year at the top of each column represents the year in which the bargaining parties first adopt the schedule. The shaded percentages are the surcharges payable for periods until a schedule is effective. Within each column, the unshaded percentages are the supplemental contributions due on all regular contributions, effective on the effective date of the contract adopting the schedule (or 180 days after expiration of the prior contract, if earlier), and on each anniversary thereafter.

**Note:** The Trustees are required by ERISA and the Internal Revenue Code to review the progress of their Rehabilitation Plan each year and to update the Rehabilitation Plan and schedules. Benefit reductions and contribution rates specified in the schedules as applicable in future years are subject to change, except with respect to a collective bargaining agreement negotiated in reliance on this schedule. Accordingly, while the contribution rate increases listed here for years 2011 and later represent the amounts expected to be required if all of the underlying assumptions are borne out, they may be changed if the Trustees decide that is advisable in light of the Fund's actual future experience.

**Preferred Schedule Supplemental Contributions by Year of Adoption:**

| | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 |
|---|---|---|---|---|---|---|
| 2009 | **5.0%** | **5.0%** | **5.0%** | **5.00%** | **5.00%** | **5.00%** |
| 2010 | 10.0% | **10.0%** | **10.0%** | **10.00%** | **10.00%** | **10.00%** |
| 2011 | 18.5% | 18.5% | **10.0%** | **10.00%** | **10.00%** | **10.00%** |
| 2012 | 27.7% | 27.7% | 27.7% | **10.00%** | **10.00%** | **10.00%** |
| 2013 | 37.6% | 37.6% | 37.6% | 37.6% | **10.00%** | **10.00%** |
| 2014 | 48.3% | 48.3% | 48.3% | 48.3% | 48.3% | **10.00%** |
| 2015 | 59.8% | 59.8% | 59.8% | 59.8% | 59.8% | 59.8% |
| 2016 | 72.1% | 72.1% | 72.1% | 72.1% | 72.1% | 72.1% |
| 2017 | 85.5% | 85.5% | 85.5% | 85.5% | 85.5% | 85.5% |
| 2018 | 99.9% | 99.9% | 99.9% | 99.9% | 99.9% | 99.9% |
| 2019 | 115.4% | 115.4% | 115.4% | 115.4% | 115.4% | 115.4% |
| 2020 | 132.0% | 132.0% | 132.0% | 132.0% | 132.0% | 132.0% |
| 2021 | 150.0% | 150.0% | 150.0% | 150.0% | 150.0% | 150.0% |
| 2022 | 169.4% | 169.4% | 169.4% | 169.4% | 169.4% | 169.4% |
| 2023 | 169.4% | 169.4% | 169.4% | 169.4% | 169.4% | 169.4% |

**Default Schedule Supplemental Contributions by Year of Adoption:**

| | 2010 | 2011 | 2012 | 2013 |
|---|---|---|---|---|
| 2009 | **5.0%** | **5.0%** | **5.0%** | **5.0%** |
| 2010 | 21.3% | **10.0%** | **10.0%** | **10.0%** |
| 2011 | 33.7% | 33.7% | **10.0%** | **10.0%** |
| 2012 | 47.4% | 47.4% | 47.4% | **10.0%** |
| 2013 | 62.5% | 62.5% | 62.5% | 62.5% |
| 2014 | 62.5% | 62.5% | 62.5% | 62.5% |
| 2015 | 62.5% | 62.5% | 62.5% | 62.5% |
| 2016 | 62.5% | 62.5% | 62.5% | 62.5% |
| 2017 | 62.5% | 62.5% | 62.5% | 62.5% |
| 2018 | 62.5% | 62.5% | 62.5% | 62.5% |
| 2019 | 62.5% | 62.5% | 62.5% | 62.5% |
| 2020 | 62.5% | 62.5% | 62.5% | 62.5% |
| 2021 | 62.5% | 62.5% | 62.5% | 62.5% |
| 2022 | 62.5% | 62.5% | 62.5% | 62.5% |
| 2023 | 62.5% | 62.5% | 62.5% | 62.5% |

*7206936v2/02185.059*

# Rehabilitation Plan - November 17, 2009

**SERVICE EMPLOYEES INTERNATIONAL UNION**
**NATIONAL INDUSTRY PENSION FUND**

**Rehabilitation Plan**

(November 17, 2009)

**Introduction**

The Pension Protection Act of 2006 ("PPA"), as amended by the Worker, Retiree, and Employer Recovery Act of 2008 ("WRERA"), requires the trustees of a multiemployer pension plan that has been certified by the plan's actuary as being in critical status to develop a Rehabilitation Plan that is intended to enable the plan to cease to be in critical status by the end of the plan's rehabilitation period. The Rehabilitation Plan must be based on reasonably anticipated experience and on reasonable actuarial assumptions. On March 31 2009, the SEIU National Industry Pension Fund ("NIPF") was certified by its actuary to be in critical status for the plan year beginning January 1, 2009.

This Rehabilitation Plan:

1. Specifies the rehabilitation period and the expected emergence date;

2. Includes two schedules (Default Schedule plus Preferred Schedule) of benefit and contribution changes that will be provided to the bargaining parties, one of which must be implemented as part of future collective bargaining agreements between local unions and contributing employers entered into or renewed after January 1, 2010.

3. Provides annual standards for meeting the requirements of the Rehabilitation Plan and describes how the Rehabilitation Plan will be updated from time to time;

4. Describes how the Default Schedule will be automatically implemented if there is no agreement between the bargaining parties in a timely manner.

**Rehabilitation Period and Expected Emergence Date**

Pursuant to Section 205 of WRERA, the Trustees elected on October 26, 2009 that the rehabilitation period shall be 13 years long. The Trustees also determined, based on information about the expiration of the current collective bargaining agreements, that the Rehabilitation Period will begin on January 1, 2011. The Fund is expected to emerge from critical status by January 1, 2024, based on reasonable assumptions and implementation of this Rehabilitation Plan.

**Changes Effective January 1, 2010**

The following changes are effective for all benefits accrued on and after January 1, 2010:

- For all accruals on and after January 1, 2010 except for accruals subject to the lower accrual rate of the Default Schedule as described below, the benefit accrual rate becomes 1.75% of contributions required to be made with respect to the participant's service. "Contributions"

## Addendum - November 17, 2009 -continued

for this purpose exclude any employer contribution surcharges imposed by PPA and any supplemental contributions required by the Preferred Schedule or Default Schedule.

- For all accruals on and after January 1, 2010, the 60-month guarantee is eliminated. Participants will have the option of electing an unsubsidized 60-month guarantee on the single life annuity benefit.
- For all accruals on and after January 1, 2010, early retirement subsidies are eliminated. This includes:
    - Special reduction factors for the Rule of 80 Pension are replaced by the factors described below.
    - The plan's 6% annual reduction factor for retirements before age 65 that do not meet the Rule of 80 is replaced by the factors described below.
    - All new early retirement benefits will be the actuarial equivalent of the normal retirement benefit payable at age 65; actuarial equivalence will be based on the RP-2000 Combined Healthy Mortality Table (weighted 2/3% male, 1/3% female) with 7.50% interest and are attached as Exhibit A. The basis for actuarial equivalence shall be reviewed periodically and, if appropriate, updated.
- The voluntary lump sum benefit ($5,000 to $10,000) is eliminated for all new participants whose first employer contributions are for work on or after January 1, 2010.

In addition, the following ancillary benefits are eliminated:

- The pre-retirement lump sum death benefit of 50% return of contributions is eliminated for deaths occurring on and after January 1, 2010.
- The Michigan Race Tracks ($2,500) death benefits are eliminated for participants not in pay status as of January 1, 2010.

**Rehabilitation Plan Schedules**

***Schedules***

Attached to this document are the Default Schedule and Preferred Schedule under the Rehabilitation Plan, which describe different contribution rates and the benefit revisions that will be made if they are adopted. Notwithstanding any other terms of this Rehabilitation Plan or the schedules provided under it, the benefits of participants who retired and began receiving benefits as of a date before April 30, 2009 will not be reduced.

***Implementation of Schedules***

1. The benefits of participants whose annuity starting date is prior to January 1, 2010 are not subject to reduction under this Rehabilitation Plan. Active participants whose annuity starting date is on or prior to March 1, 2010 are not subject to the following reductions under this Rehabilitation Plan to their benefit accrued as of December 31, 2009: early retirement subsidies, 60-month payment guarantee subsidy, pop-up subsidy, and eligibility for the Medicare Supplement (Note: An active participant is a participant who has at least 350 hours

## Addendum - November 17, 2009 -continued

of service in 2009 – 120 hours for Seasonal Employees). Benefits for other participants are determined as follows:

- A Participant who earns at least 1 Hour of Service under a collective bargaining agreement that adopts terms consistent with one of the Schedules of this Rehabilitation Plan shall have his or her benefits determined based on that Schedule.
- All other participants (those who terminated or will terminate covered employment, including active participants with an annuity starting date after March 1, 2010 before they have service under a collective bargaining agreement that adopts terms consistent with a Schedule) shall have their benefits determined based on the benefit changes described in the Preferred Schedule. These provisions shall take effect on the date specified in the notice of benefit reduction provided by the plan.

2. The Trustees will not accept CBAs that have the following provisions:

   - Renewal or amended CBAs that reduce the negotiated contribution rate for any participant.
   - Renewal or amended CBAs that suspend contributions for any periods of service that were not in the previous agreement, provided the previous agreement conformed to then-current NIPF rules.
   - Renewal or amended CBAs that exclude directly or indirectly younger or newly hired employees from plan participation in ways that were not present in the previous agreement, provided the previous agreement conformed to then-current NIPF policy.
   - New CBAs likewise may not have provisions that reduce a negotiated contribution rate once established, suspend contributions for any period of service, or that exclude directly or indirectly younger or newly hired employees from plan participation.

***Special Rules for Application of Benefit Schedules***

1. For non-collectively bargained active participants who have had contributions made to the plan under a participation agreement, their benefit will be determined in the same way as for collectively bargained participants who work for the same employer. The Schedule adopted for collectively-bargained participants will also apply to the non-collectively-bargained participants for the same employer.
2. If a participant changes employers and, as a result, becomes covered under a different schedule, benefits shall be determined as follows:

   - If a participant who was covered by a particular Schedule subsequently becomes covered by another Schedule, benefits accrued under the plan, up to the date of

- 3 -

## Addendum - November 17, 2009 -continued

`

change, will be determined and have associated rights and features as described under the first Schedule, and benefits accruing for work performed under a different schedule will be determined and have associated rights and features as described under the second Schedule.

- If a participant works simultaneously for more than one employer at the time that each employer initially adopts a schedule, then the benefits earned under each employer will be calculated in accordance with the schedule adopted by that employer. For purposes of determining disability benefits, the first schedule under which the participant works will determine whether the benefits earned before the participant worked under any schedule are subsidized.

3. If a pensioner returns to work, the schedule under which he or she works will determine the benefit amounts and features of new benefit accruals but will not affect the features of the prior benefit already commenced.

4. If a terminated vested participant who has never worked under a schedule returns to work, the schedule under which he or she works will determine the benefit amounts and features of new benefit accruals.

5. Benefits of a beneficiary or alternate payee with respect to a participant or retiree shall be determined on the same basis as benefits of the participant or retiree to whom they relate.

6. The trustees may amend this Rehabilitation Plan at any time, to prescribe rules for determining when benefits with respect to a participant or retiree cease to be governed by a Schedule, including the circumstances under which they become subject to a different Schedule.

***Automatic Implementation of Default Schedule***

If a collective bargaining agreement providing for contributions under the plan that was in effect on January 1, 2009 expires, has not renewed prior to receiving the schedules, and after receiving the schedules, the bargaining parties fail to adopt an agreement with terms consistent with any of those schedules (including the Transition Schedule), the Default Schedule will be imposed, and the benefits and required contribution increases adjusted accordingly, 180 days after the date on which the collective bargaining agreement expires or, if later, 180 days from the date of the notice distributing the schedules to the bargaining parties.

**Annual Standards for Meeting the Rehabilitation Requirements**

Based on reasonable assumptions, the Fund is expected to emerge from critical status by the Plan Year beginning January 1, 2024. The Trustees recognize the possibility that actual experience could be less favorable than the reasonable assumptions. Therefore, the Trustees are establishing the following annual standards to reflect possible actuarial losses and still keep the Fund on target to emerge from critical status by the end of the rehabilitation period.

| Determination for Year Beginning January 1: | Credit Balance (Funding Deficiency) on December 31: |
|---|---|
| 2011 | $160,000,000 |
| 2012 | $120,000,000 |

- 4 -

## Addendum - November 17, 2009 -continued

| | |
|---|---|
| 2013 | $70,000,000 |
| 2014 | $10,000,000 |
| 2015 | ($50,000,000) |
| 2016 | ($110,000,000) |
| 2017 | ($140,000,000) |
| 2018 | ($150,000,000) |
| 2019 | ($160,000,000) |
| 2020 | ($150,000,000) |
| 2021 | ($130,000,000) |
| 2022 | ($100,000,000) |
| 2023 | ($60,000,000) |
| 2024 | $0 |

**Annual Updating of Rehabilitation Plan**

Each year the Fund's actuary will review and certify the status of the Fund under PPA funding rules and, starting with the beginning of the rehabilitation period, whether the Fund is making the scheduled progress in meeting the requirements of the Rehabilitation Plan. If the Trustees determine that it is necessary in light of updated information, they will revise the Rehabilitation Plan and present updated schedules to the bargaining parties, which may prescribe additional benefit reductions or higher contribution rates.

Notwithstanding subsequent changes in benefit and contribution schedules, a schedule provided by the Trustees and relied upon by the bargaining parties in negotiating a collective bargaining agreement shall remain in effect for the duration of that collective bargaining agreement. However, a collective bargaining agreement that is renewed or extended will need to include terms consistent with one of the schedules in effect at the time of the renewal or extension.

Benefit changes will become effective pursuant to the terms of this Rehabilitation Plan as soon as legally permissible after the Rehabilitation Plan is adopted.

## Addendum - November 17, 2009 -continued

### DEFAULT SCHEDULE

**Benefit Changes**

- These changes are in addition to the January 1, 2010 changes to prospective accruals and ancillary benefits.
- All of the benefit changes listed below are effective as of the date specified in the benefit-reduction notice furnished by the plan.
- The benefit accrual rate becomes 1.00% of contributions required to be made with respect to the participant's covered service. "Contributions" for this purpose exclude any supplemental contribution increases specifically required by this Schedule and any employer contribution surcharges imposed by PPA.
- The disability benefit subsidy is eliminated for any participant whose effective date is on or after the date the Default Schedule is adopted. The amount of the disability benefit will be the actuarial equivalent of the normal retirement benefit payable at age 65; actuarial equivalence will be based on the RP-2000 Combined Healthy Mortality Table (weighted 2/3 male and 1/3 female) with 7.50% interest. Factors are attached as Exhibit B. The basis for actuarial equivalence shall be reviewed periodically and, if appropriate, updated.
- The pop-up subsidy on pre-2005 accruals is eliminated. The reductions for the pop-up optional form will be the same as those currently used for post-2005 accruals.
- The 60-month guarantee on pre-2010 accruals is eliminated with respect to benefits not in pay status. Participants will have the option of electing an unsubsidized 60-month guarantee on the single life annuity.
- The lump sum option, which is available if the present value of the accrued benefit is between $5,000 and $10,000 or if the monthly pension is less than $50, is eliminated. (The NIPF will still pay any benefit as a lump sum that has a lump sum value of $5,000 or less.)
- Early retirement subsidies on pre-2010 accruals for retirement (including Rule of 80) and pre-retirement death benefits are eliminated. Instead, early retirement benefits and pre-retirement benefits on pre-2010 accruals will be based on actuarially equivalent reductions from age 65. The new early retirement factors are based on the RP-2000 Combined Healthy Mortality Table (weighted 2/3% male, 1/3% female) with 7.50% interest and are attached as Exhibit A. The basis for actuarial equivalence shall be reviewed periodically and, if appropriate, updated.
- The BSEPP Medicare Part B Supplement is eliminated for all participants who are not yet in pay status.

**Supplemental Contributions**

Surcharges shall cease and employer contribution levels shall increase as follows under this Schedule, beginning with contributions due the first of the month coincident with or next following the effective date of the Collective Bargaining Agreement (CBA):

## Addendum - November 17, 2009 -continued

| | **Required Percent Increase in Contributions** | |
|---|---|---|
| **Year of CBA Signing** | *Year 1** | *Each year thereafter through 2013* |
| 2010 | 21.3% | 10.25% |
| 2011 | 33.7% | 10.25% |
| 2012 | 47.4% | 10.25% |
| 2013 | 62.5% | ------ |

* Based on negotiated contributions prior to all surcharges.

**Future Revisions**

As the Trustees are required by ERISA and the Internal Revenue Code to review the progress of their Rehabilitation Plan each year and to update the Rehabilitation Plan and schedules if necessary, benefit reductions and contribution levels specified in this schedule as applicable in future years are subject to change, except with respect to a collective bargaining agreement negotiated in reliance on this schedule – provided that, if the term exceeds three years, the agreement has a pension re-opener after three years.

## Addendum - November 17, 2009 -continued

**PREFERRED SCHEDULE**

**Benefit Changes**

- These changes are in addition to the January 1, 2010 changes to prospective accruals and ancillary benefits.
- All of the benefit changes listed below are effective as of the date specified in the benefit-reduction notice furnished by the plan.
- The benefit accrual rate remains 1.75% of contributions required to be made with respect to the participant's covered service. "Contributions" for this purpose exclude any supplemental contribution increases specifically required by this Schedule and any employer contribution surcharges imposed by PPA.
- The pop-up subsidy on pre-2005 accruals is eliminated. The reductions for the pop-up optional form will be the same as those currently used for post-2005 accruals.
- The 60-month guarantee on pre-2010 accruals is eliminated with respect to benefits not in pay status. Participants will have the option of electing an unsubsidized 60-month guarantee on the single life benefit.
- The lump sum option, which is available if the present value of the accrued benefit is between $5,000 and $10,000 or if the monthly pension is less than $50, is eliminated. (The NIPF will still pay any benefit as a lump sum that has a lump sum value of $5,000 or less.)
- Early retirement subsidies on pre-2010 accruals for retirement (including Rule of 80) and pre-retirement death benefits are eliminated. Instead, early retirement benefits and pre-retirement benefits on pre-2010 accruals will be based on actuarially equivalent reductions from age 65. The new early retirement factors are based on the RP-2000 Combined Healthy Mortality Table (weighted 2/3% male, 1/3% female) with 7.50% interest and are attached as Exhibit A. The basis for actuarial equivalence shall be reviewed periodically and, if appropriate, updated.
- The BSEPP Medicare Part B Supplement is eliminated for all participants who are not yet in pay status.

**Supplemental Contributions**

Surcharges shall cease and employer contribution levels shall increase as follows under this Schedule, beginning with contributions due the first of the month coincident with or next following the effective date of the Collective Bargaining Agreement (CBA):

- 8 -

## Addendum - November 17, 2009 -continued

| | **Required Percent Increase in Contributions** | |
|---|---|---|
| **Year of CBA Signing** | *Year 1** | *Each year thereafter through 2022* |
| 2010 | 10.0% | 7.75% |
| 2011 | 18.5% | 7.75% |
| 2012 | 27.7% | 7.75% |
| 2013 | 37.6% | 7.75% |
| 2014 | 48.3% | 7.75% |
| 2015 | 59.8% | 7.75% |

* Based on negotiated contributions prior to all surcharges.

**Future Revisions**

As the Trustees are required by ERISA and the Internal Revenue Code to review the progress of their Rehabilitation Plan each year and to update the Rehabilitation Plan and schedules if necessary, benefit reductions and contribution levels specified in this schedule as applicable in future years are subject to change, except with respect to a collective bargaining agreement negotiated in reliance on this schedule – provided that, if the term exceeds three years, the agreement has a pension re-opener after three years.

## Addendum - November 17, 2009 -continued

### TRANSITION SCHEDULE

**Note that this schedule is available ONLY to collective bargaining agreements (CBAs) which expired on or before January 1, 2010 and have not been renewed by the date the Preferred and Default Schedules are provided.**

Under this transition schedule, groups with CBAs as described above may elect to defer adoption of the Preferred or Default schedules of supplemental contributions to the earlier of their next CBA renewal or re-opener, provided that:

1. The renewal CBA has a term not to exceed three years from the expiration of the prior contract or has a mandatory re-opener on pension within three years from the expiration of the prior contract and

2. The Fund Office receives a copy of the renewal CBA within six months of the expiration date of the CBA it replaces.

The 10% surcharge will be payable as a supplemental contribution by groups following this Transition Schedule until the Preferred Schedule or Default Schedule is effective.

Benefits under the Transition Schedule will be the same benefits as under the Preferred Schedule.

**Future Revisions**

As the Trustees are required by ERISA and the Internal Revenue Code to review the progress of their Rehabilitation Plan each year and to update the Rehabilitation Plan and schedules if necessary, benefit reductions and contribution rates specified in this schedule as applicable in future years are subject to change, except with respect to a collective bargaining agreement negotiated in reliance on this schedule – provided that, if the term exceeds three years, the agreement has a pension re-opener after three years..

## Addendum - November 17, 2009 -continued

**EXHIBIT A**

| Age | Actuarially Equivalent Early Retirement Reduction |
|---|---|
| 55 | 61.87% |
| 56 | 58.30% |
| 57 | 54.35% |
| 58 | 49.95% |
| 59 | 45.04% |
| 60 | 39.56% |
| 61 | 33.42% |
| 62 | 26.52% |
| 63 | 18.75% |
| 64 | 9.96% |

## Addendum - November 17, 2009 -continued

**EXHIBIT B**

| Age | Actuarially Equivalent Disability Reduction |
|---|---|
| 30 | 94.86% |
| 31 | 94.46% |
| 32 | 94.02% |
| 33 | 93.55% |
| 34 | 93.04% |
| 35 | 92.48% |
| 36 | 91.88% |
| 37 | 91.24% |
| 38 | 90.53% |
| 39 | 89.77% |
| 40 | 88.94% |
| 41 | 88.03% |
| 42 | 87.05% |
| 43 | 85.99% |
| 44 | 84.82% |
| 45 | 83.56% |
| 46 | 82.17% |
| 47 | 80.66% |
| 48 | 79.01% |
| 49 | 77.20% |
| 50 | 75.21% |
| 51 | 73.03% |
| 52 | 70.64% |
| 53 | 68.00% |
| 54 | 65.09% |
| 55 | 61.87% |
| 56 | 58.30% |
| 57 | 54.35% |
| 58 | 49.95% |
| 59 | 45.04% |
| 60 | 39.56% |
| 61 | 33.42% |
| 62 | 26.52% |
| 63 | 18.75% |
| 64 | 9.96% |

# Rehabilitation Plan Addendums

## Addendum - May 2020

**SEIU National Industry Pension Fund**

**Rehabilitation Plan Addendum**

(May 2020)

WHEREAS, on November 20, 2009, in accordance with Section 305(a)(2)(A) of the Employee Retirement Income Security Act of 1974, *as amended,* and Section 432(a)(2)(A) of the Internal Revenue Code, the Trustees of the SEIU National Industry Pension Fund ("Fund") adopted a Rehabilitation Plan, and thereafter amended it as of December 23, 2009, May 19, 2011, and November 30, 2012;

WHEREAS, the Rehabilitation Plan requires that collective bargaining agreements ("CBAs") incorporate increases in the rate of Supplemental Contributions in accordance with the Rehabilitation Plan schedule applicable to the employer and that such increases must be effective as of the earlier of the effective date of the CBA or 180 days following the expiration date of the prior CBA, and that all subsequent Supplemental Contribution increases must go into effect no later than then anniversary date of the initial increase;

WHEREAS, the anniversary dates of certain CBAs entered into covering work performed under the McNamara-O'Hara Service Contract Act ("SCA"), upon which the affected employers may obtain reimbursement from the contracting entities, may not coincide with the required anniversary dates for Supplemental Contribution increases, making it impractical for such employers to increase the rate of their contributions on the dates required under the Rehabilitation Plan; and

WHEREAS, the Trustees desire to provide more flexibility for employers performing work under the SCA with respect to the effective date of such required Supplemental Contribution increases without either harming the Fund or unintentionally affecting the Base Contribution rate;

NOW, THEREFORE, BE IT RESOLVED that the following Addendum is added to the Rehabilitation plan, effective as of June 1, 2019:

Notwithstanding the requirements contained in Appendix B of the Rehabilitation Plan, employers and local unions may agree to use a different effective date for Supplemental Contribution increases, provided:

1. That the CBA covers work performed under the McNamara-O'Hara Service Contract Act or a comparable state statute;
2. The CBA provides for substantially equivalent contributions over the term of the contract, as determined by the Trustees in their absolute discretion;
3. Payments for the Supplemental Contribution increases are remitted as separate payments or as otherwise determined by the Fund; and
4. The CBA is for a term of not less than three years.

# Addendum - October 23, 2019

Rehabilitation Plan Addendum
SEIU National Industry Pension Fund
October 23, 2019

The Rehabilitation Plan of the SEIU National Industry Pension Fund (NIPF) shall remain in effect, except as modified as follows.

New Base Rate Increases Effective On or After January 1, 2020

Effective January 1, 2020, if the bargaining parties agree to increase the base contribution rate in a renewal collective bargaining agreement, supplemental contributions will not be required for the increase in the base contribution rate.

New Contributing Groups Effective On or After January 1, 2020

Effective January 1, 2020, benefits and contributions for New Contributing Groups shall operate under the Preferred Schedule, except as follows.

1. Supplemental contributions for New Contributing Groups joining the Plan on or after January 1, 2020 shall begin at 7.75% for the year of entry and shall increase by 7.75%, compounded each year for the following four years:

   | | |
   |---|---|
   | Year 1 | 7.75% |
   | Year 2 | 16.1% |
   | Year 3 | 25.1% |
   | Year 4 | 34.8% |
   | Year 5 | 45.2% |

   Thereafter, the ultimate supplemental contribution load will remain in effect prior to and following emergence from Critical Status, and until the Trustees adopt a change in such load.

2. A site in a new geographic area under a master collective bargaining agreement may be considered a New Contributing Group if contributions for covered employment at the site have not been made to the NIPF during the last twenty (20) years.
3. Sites defined as Area 1L, 1M or 1N in the collective bargaining agreement between SEIU USWW and Northern CA Maintenance Contractors will be considered New Contributing Groups.
4. An employer that takes over an existing site under a master collective bargaining agreement shall pay supplemental contributions in accordance with the rates and rate changes of the schedule in effect for the site's predecessor employer.
5. A newly constructed site which would have been subject to NIPF contributions had it existed prior to October 23, 2019 shall not be considered a New Contributing Group.

The Rehabilitation Plan is further amended as follows:

As the Trustees are required by ERISA and the Internal Revenue Code to review the progress of their Rehabilitation Plan each year and to update the Rehabilitation Plan and schedules if necessary, benefit reductions and contribution levels specified in this schedule as applicable in future years are subject to change, except with respect to a collective bargaining agreement negotiated in reliance on this schedule – provided that, if the term exceeds four years, the agreement has a pension re-opener after four years.

## Addendum - November 30, 2012

### *Rehabilitation Plan Addendum*
### *SEIU National Industry Pension Fund*

***(November 30, 2012)***

---

**WHEREAS**, on November 20, 2009, in accordance with IRC§432(e)(1), the Trustees adopted the Rehabilitation Plan, and thereafter amended it as of December 23, 2009.

**WHEREAS**, the Trustees desire to encourage groups to adopt the Preferred Schedule and to stay in the Preferred Schedule throughout the Rehabilitation Period.

**WHEREAS**, the Trustees desire to eliminate the risk to Plan funding from groups with the Preferred Schedule transferring into the Default Schedule. This risk occurs because the total amount of supplemental contributions from such a group over the course of the Rehabilitation Period will be less, and the impact on funding benefits will be less, than if the group had stayed in either one of the Schedules over the course of the Rehabilitation Period.

**WHEREAS**, the PPA Subcommittee considered alternatives for limiting groups' ability to switch schedules, and as a result of such discussion made the following recommendation.

**NOW, THEREFORE, BE IT RESOLVED** that the following Addendum is added to the Rehabilitation Plan, effective as of the date of adoption:

> Once a group has adopted the Preferred Schedule, the group cannot subsequently switch to the Default Schedule.

*Adopted this 30th day of November, 2012, at Washington, D.C.*

STEVE ABRECHT, *Chairperson*

EDWARD MANKO, *Secretary*

7610027v3/02185.007

## Addendum – May 19, 2011

### *Rehabilitation Plan Addendum*
### *SEIU National Industry Pension Fund*

***(May 19, 2011)***

---

**WHEREAS**, on November 20, 2009, in accordance with IRC§432(e)(1), the Trustees adopted the Rehabilitation Plan, and thereafter amended it as of December 23, 2009;

**WHEREAS**, the Trustees desire to amend the Plan effective immediately to establish a Schedule for new groups seeking to begin participation on or after January 1, 2011.

**NOW, THEREFORE, BE IT RESOLVED** that the following Addendum is added to the Rehabilitation Plan, effective as of the date of adoption:

**Schedule for New Contributing Groups (based on initial participation on or after 1/1/2011)**

Benefits shall accrue as under the Preferred Schedule.

Supplemental contributions, which shall be non-benefit bearing, shall be payable as follows:

| **Required Supplemental Contributions** | |
|---|---|
| *Year of Entry* | *Percent Increase in Each Year thereafter (through 2022)* |
| 7.75% of benefit-bearing contribution | Additional 7.75%, compounded |

For the purposes of eligibility for this Schedule, an existing work site – which is a work site for which contributions have previously been due – that is taken over by a new employer shall not be considered a new group, nor shall a new work site or new employer under the jurisdiction of an existing master contract be considered a new group

*Signed this* 19th *day of* May*, 2011, at* Washington, DC.

*Chairperson*

*Secretary*

7339275v3/02185.007

## Collections Policy

**SEIU NATIONAL INDUSTRY PENSION FUND**
**STATEMENT OF POLICY FOR COLLECTION OF DELINQUENT CONTRIBUTIONS**

(effective for all amounts due and owing on or after July 1, 2017)

The Board of Trustees of the Service Employees International Union National Industry Pension Fund ("Fund"), in accordance with the Restated Trust Agreement of the Service Employees International Union National Industry Pension Fund ("Trust Agreement"), hereby adopts the following policy for the collection of delinquent contributions. The following policy shall apply to all employers participating in the Fund ("Employers"), including employers that have executed or will execute a collective bargaining agreement or other agreement requiring contributions to the Fund (collectively "Collective Bargaining Agreement"), all other employers that are or were bound by, or whose employees are or were otherwise covered by, such agreements, and any successor to such employer.

**SECTION 1**
**General Policy**

It is the policy of the Fund to make such diligent and systematic efforts as are appropriate under the circumstances to collect contributions when they are due. The Trustees have the legal right to exercise all remedies allowable under the Trust Agreement and under the Employee Retirement Income Security Act of 1974, *as amended* ("ERISA"), and any other applicable law, including but not limited to:

1. The right to establish a date on which contributions are due and the format in which remittance reports supporting such contributions must be made;

2. The right to conduct a review of the payroll records of all employees of the Employers, including, but not limited to, payroll ledgers, federal and state tax returns, union dues remittance reports, state unemployment forms and withholding remittances, documentation to verify job classifications and hire/termination dates, IRS Form 941 and such other books and records of the Employers that are necessary in order for the auditor to give an opinion that the proper contributions have been made;

3. The right to establish an audit or payroll review program;

4. The right to require that Employers pay the cost of a payroll review, plus interest, liquidated damages, attorneys' fees, and any other expenses incurred by the Fund in conducting the payroll review;

5. The right to recover interest, liquidated damages, attorneys' fees and any other expenses incurred by the Fund in collecting any delinquency;

6. The right to require a bond, a cash deposit, or other type of instrument as security for prompt future payments due from Employers that have been habitually delinquent in their contributions to the Fund;

7. The right to enforce this Policy against all Employers for all periods of covered employment, including a) periods for which the applicable Collective Bargaining

Agreement automatically continues following expiration of its term, b) periods for which Employers remain obligated to contribute to the Fund under the provisions of the Pension Protection Act ("PPA"), as modified by the Multiemployer Pension Reform Act of 2014 ("MPRA") and c) periods for which Employers remain obligated to contribute to the Fund under the National Labor Relations Act ("NLRA") and any other applicable law.

8. The right to enforce this Policy against any Employer that ceases to have an obligation to contribute to the Fund for the time period during which the Employer was obligated to contribute to the Fund;

9. The right to terminate a delinquent Employer's participation in the Fund in appropriate circumstances, as determined by the Trustees in their sole discretion;

10. The right to take all other steps and to perform all other acts that are necessary to collect contributions due to the Fund in a timely and expeditious manner;

11. The right to, from time to time, appoint a Committee of at least one Employer and one Union Trustee to act on behalf of the Board of Trustees, as provided for under this Policy; and

12. The procedures set forth herein shall be followed unless the Board of Trustees in their sole discretion determines that they should be waived in a particular instance.

All questions or disputes relating to the interpretation, meaning, and/or application of this Policy shall be finally and exclusively resolved by the Board of Trustees in the exercise of its discretion and in the performance of its fiduciary obligations to the Fund's participants and beneficiaries, in the protection of the financial integrity and soundness of the Fund and the efficient and effective administration of the Fund. The obligations to pay interest, liquidated damages, and fees chargeable under this Policy and under the Trust Agreement are contractual in nature and independent of the provisions of ERISA Section 502(g) and other applicable law. In consideration for its participation, or continued participation, in the Fund, each Employer is and shall be obligated to pay all interest, liquidated damages, fees, and costs chargeable pursuant to this Policy and pursuant to the Trust Agreement.

**SECTION 2**
**Collection Procedure**

In accordance with the Trust Agreement, ERISA, all other applicable law, and the above declaration of policy, the following procedures shall be required of all Employers and the steps set out below shall be taken to effectuate the collection of delinquent contributions. As used in this Policy, the term "delinquent contributions" includes all contributions and surcharges or supplemental contributions owed pursuant to the PPA or a Funding Improvement Plan or Rehabilitation Plan adopted by the Trustees under the PPA, that are unpaid or underpaid for any reason, including but not limited to mistake, miscalculation, misinterpretation of contract terms, reliance upon a local union or other third party, or ignorance and regardless of whether remittance reports have been provided for such delinquent contributions.

1. Contributions and supporting remittance reports(s) are due by the 15th day of the month following the month in which the work was performed for which the contributions are

owed. Initial contributions and supporting remittance reports for Employers which are newly subject to Collective Bargaining Agreements (*i.e.* for all months necessary to bring the employee group current) are due no later than the 15th day of the month following the month in which the agreement to contribute was executed by the parties. Retroactive contributions made on behalf of employees shall be considered timely made if paid by the 15th day of the month following the month in which the employee becomes eligible for those contributions.

2. Contributions must be accompanied by a completed remittance report form(s) supplied by the Fund, or in electronic form as directed by the Fund Office, supporting such contributions. The Executive Director may approve the submission of reports in other forms, including in electronic form, if it is determined that providing reports in such form will not cause additional burden or expense to the Fund.

3. If the contributions and the remittance report are not received by the last day of the month in which they were due, the Fund Office shall send a notice of delinquency to the Employer requesting immediate payment of the delinquent contributions plus interest thereon at the rate prescribed by Section 2, paragraphs 5(b) and 5(c) and liquidated damages described at Section 2, paragraphs 5(d) and 5(e), along with submission of the appropriate remittance report form. The notice will inform the delinquent Employer that, unless the full amount due and required reports are received, the matter may be referred to the Fund's legal counsel for collection.

4. If the contributions and remittance report(s) are not received by the last day of the second month following that for which contributions were due, the delinquency may be referred to legal counsel, with copies of notices sent to the Employer and other relevant documents. The Fund Office also shall refer to counsel the cases of Employers that have accrued balances of unpaid interest or liquidated damages that equal or exceed $1,000. Notwithstanding the procedures set out in this Policy, the Board of Trustees or Executive Director may refer any delinquent account to legal counsel at an earlier or later date than provided for herein or may forego referral to legal counsel, where circumstances warrant that the collection action be expedited or, delayed, or addressed without legal action.

5. Whether collected by the Fund's legal counsel or the Fund Office, the following rules shall apply to all delinquent, late or underpaid contributions:

   a. Net Contributions Due: Net Contributions Due shall include all monthly delinquent contributions, supplemental contributions and surcharges ("Monthly Contributions Owed") owed for all months less any credited monthly overpayments made by the Employer in accordance with Section 2, paragraph 7.

   <u>PLUS</u>

   b. Interest on Late Payments: If contributions are not received by the last day of the month in which the contributions were due, interest shall be charged on the late payment from the due date for the delinquent contributions through and including the date payment is actually received by the Fund Office at the rate of ten percent (10%) per annum on the contributions due for the Monthly Contributions Owed. Interest shall be compounded monthly. Notwithstanding the foregoing, interest calculated to be less than one dollar ($1.00) shall not be charged.

PLUS

c. Interest on Net Contributions Due: If an Employer has Net Contributions Due, interest shall be calculated on the Net Contributions Due at a rate of ten percent (10%) per annum compounded monthly.

PLUS

d. Liquidated Damages on Late Payments: If contributions and supporting remittance report(s) in a form acceptable to the Fund are received later than the 15th day of the month following the month in which the contributions were due, the Employer shall be obligated to pay liquidated damages in the amount of 5% of the Monthly Contributions Owed, with a minimum of $50 for each month's delinquency. If litigation has commenced, the Employer shall be obligated to pay liquidated damages in the amount of the greater of (i) the interest owed on the Late Payment as calculated in Section 2, paragraph 5(b), or (ii) 20% of the Monthly Contributions Owed.

PLUS

e. Liquidated Damages on Underpayments: If an employer underpays its Monthly Contributions Owed for a specific month, the Employer shall be obligated to pay liquidated damages in the amount of 5% of the underpayment, with a minimum of $50 for each such month. If litigation has commenced, the Employer shall be obligated to pay liquidated damages in the greater of (a) the total of the interest owed on the underpayment or (b) 20% of the underpayment. If liquidated damages have been charged or assessed for a Late Payment, no additional liquidated damages shall be charged on an underpayment of Monthly Contributions Owed.

6. If the Fund Office has not received complete and correct remittance report(s) necessary to determine the amounts owed by the Employer, the Fund Office shall estimate the contributions due based on the most recent remittance report submitted to the Fund, payroll information, or other basis as reasonably determined by the Fund, and the Employer shall be deemed delinquent in its contributions in that amount on a monthly basis, as a minimum, in any subsequent legal action.

7. Any payment made by the Employer in excess of its required monthly contribution amount due shall be applied to the earliest pay period for which any amounts including delinquent contributions, interest and liquidated damages, are due. The Trustees may enforce and take all action under this Policy including the initiation of legal action under Section 3, to collect interest, liquidated damages and other amounts owed.

8. An Employer that believes it has paid an amount in excess of all amounts owed to the Fund ("Net Overpayment") resulting solely from either an error in its calculations or in the amount of its payment (*i.e.,* not resulting from an error in its reported hours) may apply the amount of its Net Overpayment as a credit towards its future contributions. Any other Net Overpayment, including a Net Overpayment resulting from a reporting error, must be confirmed by the Fund Office before a credit may be taken. Such confirmation from the Fund Office is not binding on the Fund and does not preclude the Fund from auditing the Employer for the same period at a later date. An Employer may request

confirmation in writing from the Fund of any believed credit within two years of the original Net Overpayment. The Employer must apply the credit within two years from the date of the Net Overpayment or six months from the Fund's confirmation of the Net Overpayment, whichever is later, or such overpayment shall be forfeited.

9. An Employer that believes it has a Net Overpayment may request a refund of the claimed overpayment by submitting a request in writing to the Trustees within two years of the date on which the overpayment was received by the Fund. The writing must include a detailed explanation for the basis of the claimed overpayment and include all supporting documentation. The Trustees shall have the discretion to approve or deny any request for refund less any outstanding liquidated damages, interest or other penalties (including attorneys' fees and costs and audit testing fees) due. Any approved refund shall also be reduced by (a) an administrative fee equal to ten percent (10%) of the amount of the overpayment and (b) any other financial detriment to the Trust resulting from the overpayments, including overpaid pension benefits which are not recovered.

10. Credits or refunds for Net Overpayments shall be issued only in a manner consistent with ERISA section 403(c)(2) and Internal Revenue Code section 401(a)(2). The Fund shall not be obligated to pay benefits resulting from any overpaid contributions. Notwithstanding the forgoing, in the event that an Employer's overpayment has resulted in an erroneous increase in a participant's pension benefit, the Trustees may elect to not correct any overpayment to the participant and shall apply the amount of the Employer's overpayment towards the cost of the additional benefit in a manner consistent with IRS self-correction rules. No interest shall be due to any Employer on any overpayment.

**SECTION 3**
**Legal Action and Settlement**

1. When a delinquency or other collection matter is referred to the Fund's legal counsel for collection, legal counsel shall send a letter to the Employer demanding any required remittance report with payment of the delinquent contributions and advising the Employer of its liability for interest, liquidated damages, and costs. In the event an Employer fails to respond to the letter within thirty (30) days, legal counsel shall send a second demand letter.

2. In the event an Employer fails to respond or otherwise fails or refuses to pay the delinquent contributions and submit the remittance report(s) within thirty (30) days after legal counsel's second demand for payment, legal counsel may initiate legal action for any delinquency valued to be in excess of $1,000.00. Legal counsel is authorized to immediately initiate legal action notwithstanding the above procedures in order to preserve or maintain the Fund's claim.

3. Legal counsel is authorized to enter into settlement negotiations with delinquent Employers.

4. Attorneys' fees shall be assessed against a delinquent Employer, at a reasonable hourly rate (which rate shall be no less than the hourly rate charged to the Fund for such services) for all time spent by legal counsel in collection efforts pursuant to this Policy or in enforcing the Board of Trustees' rights to payroll reviews pursuant to Section 4 hereof.

5. All costs actually incurred in court actions for collection of delinquent contributions or to enforce the Trustees' right to conduct a payroll review of the Employer's records shall be assessed against the delinquent Employer, including, but not limited to, filing fees, fees for service of process, copying charges, postage, and such other costs as would otherwise be charged to or paid by the Fund and all other costs that are properly recoverable under the applicable Rules of Civil Procedure.

6. In any action to collect delinquent contributions or other amounts under this Policy, the limitations period for such action shall be governed by the law of the state in which all or the majority of the employees at the specific work site on whose behalf the contributing employer makes contributions work, unless such limitations period is less than three years, in which case the limitation period under the laws of the District of Columbia shall govern.

7. Any compromise of amounts owed or deadline extension by the Board of Trustees under this Policy shall comply with Prohibited Transaction Exemption 76-1.

## SECTION 4
## Payroll Review Procedure

1. The Board of Trustees shall select such number of participating Employers each year for payroll reviews as it deems from time to time to be appropriate. The Board of Trustees may, at its discretion, delegate to the Executive Director the task of selecting which Employers shall be reviewed pursuant to this Policy or pursuant to an employer selection policy separately adopted by the Trustees. The Board of Trustees or the Executive Director may also choose for a payroll review an Employer which was not randomly selected. Notwithstanding the foregoing, unless the Board of Trustees or the Executive Director determine that there is good cause to delay or cancel an audit of a particular Employer, each Employer must be subject to a payroll review at least once every 7 years.

2. The Executive Director may coordinate audit/payroll review activities with those of any other employee benefit plan(s) covering employees of the selected Employer. In each case of a joint audit/review, the Fund Office shall enter into an agreement (or agreements) with the other plan(s) for an equitable allocation of the costs of such audit/review. The Executive Director is authorized to enter into any cost sharing agreement with respect to preliminary payroll reviews (in which testing for discrepancies is involved) in which costs are shared equally. The Executive Director is authorized to enter into any cost sharing agreement with respect to detailed payroll reviews (in which data on a per participant basis is generated) pro-rata in the same proportions as the discovered delinquencies of, or underpayments to, the respective plans bear to one another. Cost sharing agreements on any other basis must be approved by the Trustees or Committee appointed under Section 1, paragraph 11.

3. The period covered by the payroll review shall not be less than one (1) year.

4. The right of the Fund to conduct a review of an Employer's records shall survive the termination of an Employer's Collective Bargaining Agreement, any other written agreement under which the Employer is contributing to the Fund, any bankruptcy filing, or any assessment or payment of withdrawal liability.

5. The Fund Office shall forward a letter to the Employer advising it of the impending payroll review and citing the Trustees' authority to conduct the review.

6. The auditor shall schedule the payroll review with the Employer, which shall make available to the auditor all books and records which the auditor determines are required. Alternatively, at the auditor's election, the Employer shall be required to send the pertinent records to the Fund Office or make the records available to the auditor for inspection at a location in the Washington, D.C. metropolitan area

7. Where a payroll review of an Employer is conducted and the payroll review discloses an underpayment, the Fund Office shall send a letter to the Employer advising of the underpayment and requesting that the Employer make payment of the underpayment, liquidated damages, interest, testing fees (when appropriate under this Policy) and any other costs associated with conducting the payroll review or collecting amounts owed within thirty (30) days of the date of the letter. After the expiration of the thirty (30) day period, a second letter shall be sent to the Employer demanding that the underpayment be remitted immediately. If payment is not received within ten (10) days of the date of such letter, the Fund Office may turn the matter over to legal counsel, with copies of the letters, for legal action pursuant to Section 3.

8. In the event an Employer refuses to permit a payroll review upon request by the Trustees or if the Employer refuses the Fund auditor access to pertinent records, the Fund auditor shall refer the matter to legal counsel.

9. Legal counsel shall thereafter demand that the Employer make available such books and records as necessary for the Fund auditor to conduct the payroll review. If such books and records are not made available within a reasonable period of time not to exceed 60 days or if the Employer otherwise fails to cooperate with the Fund's payroll review procedures, the Employer shall be liable for any attorneys' fees and costs incurred by the Fund in enforcing the Fund's right to review the Employer's records. Legal counsel may institute legal action to enforce the Trustees' right to conduct a payroll review and the Employer shall be assessed all costs and attorney's fees incurred as a result of the Employer's refusal to permit the payroll review or refusal to make available all pertinent records. Employers have a duty to maintain a record of individual hours worked by their employees for at least six (7) years. Any Employer failing to maintain or provide its records as required herein shall sign any authorizations necessary for any state or federal agency to release tax or other records showing payroll records and shall pay all expenses associated with obtaining these records. If an Employer violates the duty to maintain or provide required records, the burden will be on the Employer to show that any portion of its payroll or independent contractor expense was not for work requiring contributions to this Fund.

10. Employers will be billed for net amounts owed in excess of $50.00. Billings will be calculated as follows.

    a. Principal Amount Owed: The Principal Amount Owed shall include all contributions, supplemental contributions, and surcharges owed for all months less any overpayments discovered by the payroll review.

PLUS

b. Interest: Interest on the amounts owed is calculated from the date originally due to the date paid and compounded monthly at rate of 10% per annum.

PLUS

c. Liquidated Damages: Liquidated Damages are calculated at the greater of 5% of the total net Principal Amount Due or $50. If litigation has commenced, the Employer shall be obligated to pay liquidates damages in the greater of (1) the total of the Interest on the amounts due or (2) 20% of the total Principal Amount Due. Notwithstanding the forgoing, the Executive Director may waive Liquidated Damages assessed on any amount of the underpayment that the Employer pays within 30 days of the initial demand.

PLUS

d. Testing Fee: The testing fee will include the auditor's time and expenses in performing the payroll review. The cost of the payroll review, in addition to any other applicable fees and costs, shall be payable by the Employer whenever a review of an Employer's record discloses a Principal Amount Owed due equal to or greater than:

   i. in the case of an Employer that contributed (or should have contributed) $50,000 or more in any contract year, 5% of the Employer's total required contributions for such period,

   or

   ii. in the case of an Employer that contributed (or should have contributed) $10,000 or more but less than $50,000 in any contract year, the lesser of

      1. 7% of the Employer's total required contributions for such period;
      2. $2,500,

   or

   iii. in the case of an Employer that annually contributed (or should have contributed) less than $10,000, the lesser of

      1. 10% of the Employer's total required contributions for such period;
      2. $1,000.

The testing fee will be charged for the entire audit period whenever one of the above thresholds is met in any of the calendar years tested.

11. The Board of Trustees shall authorize the Executive Director to make decisions regarding the collection of fees associated with the audit following the advice of legal counsel. In such cases where legal counsel has advised that the cost of further collection efforts for unsubstantial amounts would not be financially prudent to pursue, the Executive Director may then terminate collection efforts.

12. The Board of Trustees authorizes the Executive Director to apply any Net Overpayment discovered by the payroll review procedure to any Employer delinquencies including at

other work sites in accordance with Section 2, paragraph 7. If the Employer has no other delinquencies, the rules for the application of a credit of a Net Overpayment towards future contributions set forth in Section 2, paragraph 8 shall apply.

13. Any request for a refund from an Employer resulting from a Net Overpayment discovered by the payroll review procedure shall be governed by the rules regarding Net Overpayment refunds described in Section 2, paragraph 9. An Employer is not entitled to a refund, however, of any Net Overpayment discovered in the payroll review procedure if it is has any contributions or other amounts owed, including at other work sites.

**SECTION 5**
**Reports and Records**

1. Legal counsel and the Fund Office shall prepare a delinquency report to be presented at each Board of Trustees' meeting. The report shall show all Employers that are delinquent. The determination of the Board with respect to action on such delinquencies, and the specific bases therefore, shall be recorded in the minutes.

2. The Fund Office shall maintain a file of currently effective Collective Bargaining Agreements and other agreements detailing the basis upon which Employers are obligated to make contributions to the Fund.

3. Employers are obligated to timely remit to the Fund Office all new collective bargaining agreements that they enter into that provide for participation in the Fund. The failure of an Employer to timely remit to the Fund a signed collective bargaining agreement shall not impede the Fund's ability to pursue delinquencies.

**SECTION 6**
**Termination of Employer Participation**

1. The Board of Trustees, upon recommendation by the Fund Office and with consultation with Fund Counsel, may immediately suspend a delinquent Employer's participation in the Fund in their sole discretion. Employees of a suspended Employer shall accrue no benefits under the Fund unless such Employer's participation is restored. Following suspension, the Fund Office shall send a notice to the Employer, with a copy to the local union(s) whose members are presently employed by such Employer. Such notice shall state the reason for the Employer's suspension from the Fund and shall describe the actions the Employer must take in order to avoid permanent termination from the Fund.

2. In determining whether to suspend a delinquent Employer, the Trustees may consider the following:

    a. The frequency of the Employer's delinquencies over the preceding five years, and the amount owed for, length of employment covered by or number of employees affected by such delinquencies;

    b. The extent to which the Employer has complied with the terms of previous settlement agreements with the Fund;

    c. The financial solvency of the Employer and likelihood that the Fund will be able to collect contributions for ongoing covered employment at such Employer's worksites;

d. Any pattern of failure or refusal to cooperate with the Fund in resolving delinquencies by the Employer or Employer's agent;

e. Any dilatory conduct or other acts believed to be taken in bad faith by the Employer or Employer's agent in the course of attempted resolution of a delinquency by the Fund;

f. The projected costs and expense of continuing the employer's participation in the Fund; and

g. Any other recommendations and comments from the Fund Office and Fund Counsel regarding the Employer.

3. This provision shall be applied in a manner that conforms to ERISA Section 204(h) and ensures that the appropriate notice is provided to the effected employees.

4. Any suspended Employer which fails to take the actions necessary to lift the suspension within thirty days shall be permanently terminated from the Fund. Any termination of participation under this Section shall be deemed a complete withdrawal by the Employer. The right of the Fund to enforce collections of contributions, interest, liquidated damages, and other applicable fees under this Policy against an Employer suspended or terminated pursuant to this Section shall survive such Employer's termination of participation in the Fund.

**SECTION 7**
**Pension Protection Act Provisions**

Any Employer obligated to contribute in accordance with a contribution schedule imposed or elected pursuant to the PPA shall remain bound by such contribution schedule, including any applicable increases under the contribution schedule, as may be updated by the Trustees, following expiration of its Collective Bargaining Agreement unless the Employer has ceased participation in the Fund.

**SECTION 8**
**Effective Date**

The revisions to this Policy, which originally was adopted May 1, 1994, and revised effective March 1, 2007, December 17, 2008, November 15, 2011, November 30, 2012, and May 24, 2017; respectively, shall be effective July 1, 2017, and shall be applicable to all amounts due and owing on or after such effective date.

# NIPF TRUST Agreement

**AMENDED AND RESTATED
AGREEMENT AND DECLARATION OF TRUST
OF THE
SERVICE EMPLOYEES INTERNATIONAL UNION
NATIONAL INDUSTRY PENSION FUND**

Amended and Restated as of November 1, 2020

**PREAMBLE** .......... **1**
**TRUST** .......... **1**
Section 1.01 – Continuation of Trust .......... 1
Section 1.02 – Purpose of Trust .......... 2
Section 1.03 – Application of Fund .......... 2
Section 1.04 – Plan Part of Agreement .......... 2
Section 1.05 – Terms Binding .......... 2
**PARTICIPATION AND BENEFITS** .......... **2**
Section 2.01 – Plan Participation .......... 2
Section 2.02 – Benefits .......... 2
Section 2.03 – Special Limit on Participation .......... 3
**CONTRIBUTIONS** .......... **3**
Section 3.01 – Acceptance of Trust Agreement .......... 3
Section 3.02 – Employer Contributions .......... 3
Section 3.03 – Remittance Reports/Audits .......... 3
Section 3.04 – Delinquent Contributions .......... 4
Section 3.05 – Collection Actions; Choice of Law; Statute of Limitations .......... 4
Section 3.06 – Irrevocability of Contributions .......... 4
Section 3.07 – Reciprocal Agreements .......... 5
**TRUSTEES AND ADMINISTRATION** .......... **5**
Section 4.01 – Board of Trustees .......... 5
Section 4.02 – Term of Service/Resignation/Removal .......... 5
Section 4.03 – Successor Appointments .......... 6
Section 4.04 – Meetings; Quorum; Voting .......... 6
Section 4.05 – Deadlocks .......... 7
Section 4.06 – Signatures .......... 8
Section 4.07 – Legal Proceedings .......... 8
Section 4.08 – Fiduciary Provisions .......... 8
Section 4.09 – General Power to Construe .......... 9
Section 4.10 – Power to Construe the Plan .......... 9
Section 4.11 – Investment Authority .......... 9
Section 4.12 – Additional Powers .......... 10
Section 4.13 – Books and Records .......... 12
Section 4.14 – Compensation; Expenses .......... 12

Section 4.15 – Liability; Insurance; Indemnification ..... 12

**AMENDMENT; MERGER; TERMINATION ..... 13**

Section 5.01 – Amendment ..... 13

Section 5.02 – Merger, Consolidation, or Transfer of Assets ..... 13

Section 5.03 – Termination ..... 14

**MISCELLANEOUS PROVISIONS ..... 14**

Section 6.01 – Participant's Rights ..... 14

Section 6.02 – Adoption of Trust Agreement ..... 14

Section 6.03 – Spendthrift ..... 14

Section 6.04 – Costs ..... 15

Section 6.05 – Separability ..... 15

Section 6.06 – Compliance with the Code and ERISA ..... 15

Section 6.07 – Gender and Number ..... 15

Section 6.08 – Situs; Governing Law ..... 15

Section 6.09 – Resolution of Disputes; Venue ..... 15

Section 6.10 – Recovery of Mistaken Payments ..... 15

Section 6.11 – Notice ..... 16

Section 6.12 – Counterparts ..... 16

**DEFINITIONS ..... 16**

Section 7.01 – Agreement / Trust Agreement ..... 16

Section 7.02 – Board of Trustees or Trustees ..... 16

Section 7.03 – Code ..... 16

Section 7.04 – Employee ..... 16

Section 7.05 – Employer ..... 16

Section 7.06 – Employer Contributions ..... 16

Section 7.07 – ERISA ..... 17

Section 7.08 – Fund ..... 17

Section 7.09 – Participants ..... 17

Section 7.10 – Plan ..... 17

Section 7.11 – Taft-Hartley Act ..... 17

Section 7.12 – Union ..... 17

**SIGNATURE PAGE ..... 18**

**AMENDED AND RESTATED
AGREEMENT AND DECLARATION OF TRUST
OF THE
SERVICE EMPLOYEES INTERNATIONAL UNION
NATIONAL INDUSTRY PENSION FUND**

THIS AMENDED AND RESTATED AGREEMENT AND DECLARATION OF TRUST is made and entered into effective as of November 1, 2020, by and between the signatory Trustees hereto.

**PREAMBLE**

**WHEREAS**, effective May 20, 1968, the Service Employees International Union (the "Union") and employers who entered collective bargaining agreements with the Union or certain local unions affiliated with the Union ("Employers") to make contributions to the Service Employees International Union National Industry Pension Fund to provide pension benefits to eligible employees, entered into an Agreement and Declaration of Trust ("Agreement"); and

**WHEREAS**, the Agreement created a jointly trusteed pension fund administered in accordance with the provisions of Section 302(c) of the Labor-Management Relations Act of 1947 (the "Taft-Hartley Act") and intended to be tax exempt under the Internal Revenue Code ("Code"); and

**WHEREAS**, the Board of Trustees consists of Employer-appointed Trustees and Union-appointed Trustees (collectively "Trustees"); and

**WHEREAS**, the Trustees adopted one or more plans of benefits, as amended from time to time, (the "Plan") to provide for the establishment and administration of the pension benefits contemplated by the collective bargaining agreements; and

**WHEREAS,** the Trustees, in accordance with the rights reserved to them under the provisions of the Agreement, have amended and restated the Agreement effective August 15, 1968, September 6, 1973, January 1, 1976, October 12, 1977, November 30, 1983, January 17, 1990, February 8, 1991, January 14, 1992, and January 1, 2000.

**NOW THEREFORE,** in accordance with those same rights, the Trustees hereby amend the Agreement in its entirety as follows, effective as of November 1, 2020.

**ARTICLE I**

**TRUST**

**Section 1.01 – Continuation of Trust**

(a) The Trust Agreement continues the trust known as the Service Employees International Union National Industry Pension Fund. All assets currently held in trust under the terms of the current Agreement, together with such sums of money as shall be paid or delivered from time to time thereafter to the Trustees in accordance with the Plan, and together with all investments made therewith and proceeds thereof and all earnings and profits thereon, less any losses thereon and the payments and disbursements made by the Trustees hereunder, without distinction between principal and income, shall

constitute the assets of the trust embodied in the Agreement, which amount is referred to herein as the "Fund."

(b) The Trustees may deposit all or a portion of the Fund with a corporate trustee or custodian and enter into such agreements with said trustee or custodian on such terms and conditions as the Trustees deem necessary or desirable.

(c) The Trustees hereby accept the trust and agree to perform the duties on their part to be performed under the amended and restated Agreement.

**Section 1.02 – Purpose of Trust**

The purpose of the trust is to hold the assets used to provide benefits under the Plan to Participants.

**Section 1.03 – Application of Fund**

(a) The Fund shall be applied for the exclusive purpose of providing benefits due under the Plan and to pay the reasonable expenses of administering and operating the Plan and Fund, including, without limitation, compensation of employees, office space, office supplies and equipment, legal and accounting fees and expenses, the cost of collecting Employer Contributions, and taxes and other governmental charges. This shall include the accumulation of such reserves as the Board of Trustees deems necessary or desirable.

(b) The Fund shall be the sole source of the benefits under the Plan. Neither the Union, the Employers, nor the Board of Trustees (and members thereof) guarantee such benefits or payments.

**Section 1.04 – Plan Part of Agreement**

The Plan is hereby made a part of this Agreement.

**Section 1.05 – Terms Binding**

The terms and provisions of both this Agreement and the Plan shall be binding upon the Trustees, Employers, Union, and Participants as set forth in this Agreement and the Plan.

## ARTICLE II

## PARTICIPATION AND BENEFITS

**Section 2.01 – Plan Participation**

The terms and conditions and rules for participation in the Plan shall be as established by the Trustees from time to time, as set forth in the Plan.

**Section 2.02 – Benefits**

The benefits provided through the Fund shall be those benefits as the Trustees shall determine should be provided to eligible Participants from time to time, as set forth in the Plan.

**Section 2.03 – Special Limit on Participation**

The Fund is intended to be tax-exempt under the Code. Notwithstanding any contrary provisions, no Employee shall become a Participant, or continue as a Participant, for any period that the Board of Trustees determines such participation would cause the Plan and/or the Fund not to satisfy the tax-exemption requirements of the Code. In this regard, as and when required by the Board of Trustees, an Employer shall provide satisfactory demonstration and certification to the Board of Trustees that the participation of its Employees satisfy the tax-exemption requirements of the Code.

## ARTICLE III

## CONTRIBUTIONS

**Section 3.01 – Acceptance of Trust Agreement**

Pursuant to section 6.02, each Employer, upon the signing of a collective bargaining agreement or participation agreement, or upon remitting contributions to the Fund, adopts and is bound by all provisions of this Trust Agreement, to such amendments thereto as the Trustees may adopt pursuant to Article V, and to all rules and regulations adopted by the Trustees.

**Section 3.02 – Employer Contributions**

(a) An Employer shall contribute and pay Employer Contributions to the Fund in the amount and at the time specified in the applicable collective bargaining agreement with the Union or participation agreement with the Board of Trustees.

(b) The Board of Trustees shall have the power to demand, collect, and receive Employer Contributions and may take such steps as it deems necessary or desirable to effectuate the collection of Employer Contributions. The Board of Trustees shall not be obligated to invoke or exhaust any grievance and arbitration procedures that might be contained in any collective bargaining agreement to collect unpaid Employer Contributions or to compel an audit of an Employer's records for this purpose.

(c) No Employer has any right, title, or interest in any sum payable by the Employer to the Fund, but not yet paid into the Fund. Title to all monies paid or payable to the Fund shall be vested in the Board of Trustees.

(d) No Employer shall be responsible for the contributions or other obligations of any other Employer.

**Section 3.03 – Remittance Reports/Audits**

(a) The Board of Trustees shall have the right to require Employers to file such reports as it deems necessary or desirable for the administration of the Plan and the Fund. Each remittance report shall be accompanied by a payment for Employer Contributions made payable to the Fund.

(b) The Board of Trustees (or its agents) shall have the right to audit and examine any payroll, tax, employment, and other pertinent records of an Employer as the Board of Trustees may deem necessary or desirable in connection with the administration of the

Plan and the Fund and to require the Employer to provide the Board of Trustees with the same. The Board of Trustees may establish such policies and procedures as it deems necessary or desirable regarding the audit of an Employer's records, including those relating to the payment of audit expenses incurred by the Fund and the payment of legal fees described in section 3.04(b) below.

**Section 3.04 – Delinquent Contributions**

(a) If an Employer shall fail to contribute and pay Employer Contributions to the Fund when the same shall be due and payable, the Employer shall be considered delinquent and in breach of the Trust Agreement, and shall pay, in addition to, or in lieu of, other remedies provided by law liquidated damages, plus interest on the total delinquency. Said costs, charges, damages, and interest shall be due as provided for in policies and procedures established by the Board of Trustees for that purpose.

(b) The Board of Trustees may take such steps, including the prosecution of or the intervention in any proceedings at law, in equity or in bankruptcy as it may deem necessary or desirable, in order to collect delinquent Employer Contributions, and the delinquent Employer shall be liable for the Trustees' reasonable expenses, including, but not limited to, attorney's fees and other disbursements, incurred in the collection of such delinquent Employer Contributions.

(c) So as to avoid delinquent Employer Contributions, the Board of Trustees shall have the power, but not the duty, to require any Employer to post security for the payment of Employer Contributions in the form of cash or a corporate surety bond in the amount as determined by the Board of Trustees.

**Section 3.05 – Collection Actions; Choice of Law; Statute of Limitations**

In any action by the Fund to collect delinquent Employer Contributions from a contributing Employer, the limitations period shall be governed by the law of the state in which all or a majority of the Employees on whose behalf the contributing Employer makes contributions are employed, unless such limitations period is less than three years, in which case the limitations period under the laws of the District of Columbia shall govern.

**Section 3.06 – Irrevocability of Contributions**

All Employer Contributions shall be irrevocable; provided, however, to the extent permitted by ERISA, the Trustees may authorize a return of an overpayment of Employer Contributions made by reason of a mistake of fact or law. The determination of whether an Employer has made an Employer Contribution to the Fund by mistake of fact or law, and whether such Employer Contribution should be returned to the Employer, shall be made in the sole and absolute discretion of the Trustees (or their duly authorized designee) in accordance with ERISA and other applicable law, taking into account all of the evidence submitted by such Employer to demonstrate that such Employer Contribution was made by mistake; provided, however, that the Employer shall have the burden of proving that such Employer Contribution was made by mistake. The decision of the Trustees (or their duly authorized designee) as to whether such Employer Contribution was made by mistake, and whether it should be returned to the Employer, shall be final and binding on the Employer.

**Section 3.07 – Reciprocal Agreements**

The Board of Trustees may enter into, continue, amend, and terminate agreements or arrangements with the trustees of other multiemployer defined benefit pension plans to reciprocate employer contributions to and from such other plans under such terms and conditions as the Board of Trustees determines to be appropriate. Employer contributions reciprocated to this Plan pursuant to said agreements and arrangements shall be treated as Employer Contributions hereunder subject to all the terms and provisions of the Plan. To the extent employer contributions are reciprocated to such other defined benefit pension plans, the Employee/Participant for whom said contributions are reciprocated shall look solely to said defined benefit pension plans for the benefits attributable to such reciprocated contributions and said benefits shall be determined solely by the terms and provisions of said defined benefit pension plans.

**ARTICLE IV**

**TRUSTEES AND ADMINISTRATION**

**Section 4.01 – Board of Trustees**

(a) The Fund and Plan shall be administered by a Board of not less than four (4) Trustees. An equal number of Trustees shall be designated by the Union and by the Employer.

(b) One of the Union Trustees shall be appointed Chairperson of the Fund by the Union Trustees and one of the Employer Trustees shall be appointed Secretary of the Fund by the Employer Trustees.

(c) Each Trustee may designate in writing any other person to act as his or her Deputy. Said Deputy Trustee may attend and participate in meetings but shall have no voting authority. However, in the event the Trustee appointing the Deputy Trustee is absent from a meeting or recuses himself or herself, the Deputy Trustee shall have all the rights and duties of a regular Trustee, including voting authority. Any action of such Deputy Trustee shall be the same force and effect as if done by the Trustee.

(d) Whether and what extent any bond or other security shall be required for the faithful performance of the Trustees or any of them or any employee of the Fund, shall be determined by the Trustees, subject to applicable law.

**Section 4.02 – Term of Service/Resignation/Removal**

(a) Each Trustee or Deputy Trustee shall continue to serve as such until his or her death, incapacity, resignation, or removal as herein provided.

(b) A Trustee or Deputy Trustee may resign at any time and become and remain fully discharged from all future duty or responsibility hereunder upon giving 30 days' notice in writing to the remaining Trustees, or upon such other notice as the remaining Trustees may accept as sufficient. Such notice shall state a date upon which such resignation shall take effect. A resignation shall take effect on the date specified in the notice unless a successor Trustee shall be appointed at an earlier date, in which event such resignation shall take effect immediately upon the appointment of such successor Trustee.

(c) Any Employer Trustee may be removed at any time by a majority of votes of the remaining Employer Trustees; provided, however, that the Employer Trustee appointed by ABM Industries Inc. ("ABM"), and his successors, may only be removed by ABM so long as it remains a contributing Employer.

Any Union Trustee may be removed at any time by a writing filed with the remaining Trustees signed by the President or Secretary/Treasurer of the International Union. Such removal shall be effective immediately upon such filing.

A Deputy Trustee may be removed at any time by a writing filed with the remaining Trustees signed by the Trustee that designated such person to act as his or her Deputy. Such removal shall be effective immediately upon such filing. A Deputy Trustee also shall be removed automatically when the Trustee that designated such person as Deputy Trustee is no longer serving as a Trustee, and the Deputy Trustee's removal shall be effective on the same date as the Trustee's removal.

**Section 4.03 – Successor Appointments**

(a) In the event there is a vacancy among the Union Trustees, the Successor Union Trustee shall be designated by President of the International Union.

(b) If the Employer Trustee appointed by ABM becomes vacant for any reason, his or her successor and deputy (if one) shall be appointed by ABM, provided ABM is a contributing Employer at the time. If any other Employer Trustee becomes vacant for any reason, a successor Employer Trustee shall be appointed by a majority vote of the then remaining Employer Trustees.

(c) Any successor Trustee shall, immediately upon his or her acceptance of the trusteeship, become vested with all of the property, rights, powers, and duties of a Trustee hereunder with like effect as if originally named as a Trustee.

(d) It is the intention that the Fund shall be administered at all times by an equal number of Employer Trustees and Union Trustees, but until the appointment of a successor Trustee or Trustees as herein provided, the remaining Trustees shall have full power to act.

(e) If any entity having the right to fill a vacancy in the office of Trustee shall fail, for a period of 180 days, to fill such vacancy, any Trustee may petition a court of competent jurisdiction for an order requiring such party to appoint a successor Trustee, and in the event of the failure of such party to comply with such order, may petition such court for the appointment by it of a successor Trustee to fill such vacancy.

**Section 4.04 – Meetings; Quorum; Voting**

(a) Except as otherwise provided herein, any action taken by the Trustees shall be approved by a majority vote of the Trustees in attendance at a duly convened meeting of the Board of Trustees at which a quorum is present. The Trustees may meet in-person or by teleconference or similar electronic conference means so long as all persons can communicate with each other during the meeting.

(b) A quorum of the Board of Trustees shall consist of two members of the Board, provided

that one is an Employer Trustee and one is a Union Trustee. Deputy Trustees shall not count for quorum purposes. No action binding upon the Fund or upon any third party may be taken at any meeting at which a quorum is not present. Participation by one or more Trustees or Deputy Trustees at a meeting by means of teleconference or similar electronic conference when the Trustees are otherwise meeting in-person shall constitute presence at the meeting for all purposes of Article IV so long as all persons can communicate with each other during the meeting.

(c) Each Trustee shall have one vote on all matters; provided, however, that if there is an unequal number of Employer Trustees and Union Trustees present at any meeting, the group of Trustees being the lesser in number shall be entitled to cast votes equal in number to the votes of the group having the greater number at any such meeting.

(d) The Chairperson and Secretary of the Fund may jointly call a meeting of the Trustees at any time by giving at least seven days written notice of the time and place thereof to the remaining Trustees. Meetings of the Trustees may also be held at any time without such notice if all of the Trustees consent to the meeting.

(e) With respect to matters concerning changes in any benefit formula, no action shall be taken at any meeting of the Trustees unless all Trustees (including a duly authorized Deputy Trustee acting for an absent Trustee) shall be present and vote in favor of such action, or, if not present, vote by proxy in favor of such action.

(f) Action by the Trustees (or subcommittees) may also be taken by them without a meeting by written poll; provided, however, that in such case there shall be unanimous written concurrence by all of the Trustees (or subcommittee members) then appointed. Polls and related information may be transmitted by mail or electronic medium. (g)

(g) Pursuant to section 4.14(m), the notice, quorum, and voting rules in this section 4.04 shall also apply to subcommittee meetings.

**Section 4.05 – Deadlocks**

(a) In the event that the Trustees who have not abstained from a vote cannot decide any matter or resolve any dispute because of a tie vote or because the Union Trustees or Employer Trustees or both are unable to agree as to how their vote shall be cast, or in the event any decision cannot be made because of the lack of a quorum at two successive meetings of the Trustees, a deadlock may be declared. If the Trustees shall deadlock upon any action involving the administration of the Plan or Fund, or interpretations of the Trust Agreement, the disposition of such action shall, upon the demand of any Trustee, be submitted to arbitration in accordance with applicable rules of the American Arbitration Association ("AAA"), and the decision of such arbitrator shall be final and binding. The arbitrator shall be without power or authority to amend, modify, or vary any provision of the Plan or this Agreement.

(b) The arbitrator shall be selected from a list of impartial arbitrators to be furnished by the AAA. Any Trustee may request the AAA to furnish such list of impartial arbitrators.

(c) If the Trustees are unable to agree on an impartial arbitrator from the list provided by the AAA, the AAA shall be authorized to designate an impartial arbitrator in accordance with the rules and regulations of the AAA. In all instances, the AAA shall be advised of the

nature of the dispute and shall be requested to furnish a list of impartial arbitrators or to designate an impartial arbitrator qualified and competent by training and experience to decide the particular issue or issues involved.

(d) In the event that the AAA shall fail to designate an impartial arbitrator within a fifteen (15) business days, or should the Trustees be unable to agree on another impartial arbitrator within fifteen (15) business days after the AAA is requested to act, any Trustee may petition the District Court of the United States for the District of Columbia to appoint an impartial arbitrator to settle the matter in dispute.

(e) The failure of any Trustee to attend the arbitration hearing as scheduled and noticed by the AAA shall not delay the arbitration, and the arbitrator is authorized to proceed to take evidence and issue his or her decision as though such Trustee were present.

(f) In the event that such arbitrator, having been selected, shall resign or for whatever reason shall fail or refuse to act within a reasonable time after his or her selection, the AAA shall be requested to appoint another arbitrator; provided, however, that should the AAA fail to act within fifteen (15) business days after the request, or should the Trustees be unable to agree on another arbitrator within fifteen (15) business days after the AAA is requested to act, an arbitrator shall be appointed by the District Court for District Court of the United States for the District of Columbia upon the petition of any Trustee.

(g) All hearings of the arbitrator shall take place in the District of Columbia, unless otherwise specifically mutually agreed upon.

**Section 4.06 – Signatures**

Any instrument in writing shall be signed by two authorized Trustees, provided that one is an Employer Trustee and one is a Union Trustee. All persons may rely upon such execution as evidence that such written instrument has been duly authorized.

**Section 4.07 – Legal Proceedings**

All suits and proceedings to enforce or protect any right, demand, or claim on behalf of the Trustees or of the Plan and/or Fund may be instituted or prosecuted by the Trustees, jointly, in their capacities as such, or by their designee.

**Section 4.08 – Fiduciary Provisions**

(a) The Trustees shall be the named fiduciary of the Plan and Fund. The Trustees may designate any other person as a named fiduciary by an instrument in writing signed by it, delivered to the designated named fiduciary, and acknowledged and accepted in writing by such designated fiduciary. Any such designation may be modified or amended by written agreement between the parties and may be revoked by either party by written notice delivered to the other party.

(b) Any named fiduciaries who have joint and severable duties and responsibilities under the Plan and Fund may allocate such duties and responsibilities (other than the duty to invest all or a portion of the Fund) to any one or more of them, and any named fiduciary may delegate to any person such responsibility he has with respect to the Plan and Fund (other than the duty to invest all or a portion of the Fund). Any such allocation or

delegation shall be made by written agreement between the parties, may be amended or modified by written agreement between such parties, and may be revoked by either party by written notice delivered to the other party.

(c) Each fiduciary shall have only those specific powers, duties, and responsibilities specified under the Plan and Agreement or as otherwise allocated or delegated pursuant to the Plan and Agreement. The Plan and Agreement are intended to allocate to each fiduciary the individual responsibilities allocated or delegated to him or her, and no such responsibilities shall be shared by two or more fiduciaries unless such sharing shall be specifically provided by the Plan and Agreement.

**Section 4.09 – General Power to Construe**

The Trustees shall have the exclusive power to construe the provisions of the Agreement and the terms used herein, and to promulgate rules and regulations, as they deem necessary or desirable for the efficient administration of the Fund. Any such construction and any such rules and regulations so adopted by the Trustees shall be binding upon all persons.

**Section 4.10 – Power to Construe the Plan**

(a) The Trustees shall have the exclusive power to determine the eligibility requirements and conditions for participation in the Plan and the benefits to be provided thereunder, including the right to change the same from time to time.

(b) The Trustees shall have all the powers, authority, and discretion necessary to operate, administer, and manage the Plan in accordance with its terms, including, but not limited to, the following:

(1) to make and enforce such standards, rules, and regulations as they deem necessary or desirable for the efficient administration of the Plan;

(2) to interpret the Plan, including the right to remedy possible ambiguities, inconsistencies or omissions;

(3) to decide all questions, including factual and legal questions, related to participation in the Plan and eligibility for and payment of benefits thereunder;

(4) to prescribe procedures for filing an application for benefits and to review applications for review of denial thereof;

(5) to authorize the payment of benefits; and

(6) to maintain all necessary records for the administration of the Plan.

(c) The exercise of said powers by the Trustees shall be binding upon all persons.

**Section 4.11 – Investment Authority**

(a) Except as delegated to an investment manager, the Trustees shall have the exclusive authority and responsibility for the investment of the Fund.

(b) The Trustees are authorized to invest and reinvest the Fund as a single fund without distinction between principal and income, at such time or times and in such shares and proportions, as the Trustees believe, in their sole discretion, to be suitable investments for the Fund, including, but not limited to, stocks (common or preferred); bonds, debentures, notes and other evidences of indebtedness; real estate and mortgages; insurance company contracts; interests in investment companies, including so-called "money market funds"; deposits in a bank or other financial institution under state or federal supervision, including the banking department of any corporate trustee or custodian; and any other kind of real or personal property; provided, however, that no investment shall be made in securities or real property of any Employer in violation of the provisions of Title I, Part 4 of ERISA. In making investments under the Fund, the Trustees shall not be limited to any class of investments prescribed by statute, or otherwise, other than ERISA, as legal investments for trust funds.

(c) The Trustees are authorized to invest all or any part of the Fund in any collective, common or pooled funds, including those maintained by a corporate trustee or custodian or an investment manager, for the collective investment of fiduciary accounts or solely as a medium for the collective investment of employee benefit trusts which are similarly tax exempt under the Code as the Fund, or any statute of similar import. If such investment shall occur, said investment shall be subject to the provisions of the common fund agreement, which is incorporated herein by reference.

(d) The Trustees are authorized to adopt and participate in the SEIU Pension Plans Master Trust ("Master Trust") pursuant to paragraph (c) above and to appoint Trustees to the Master Trust who shall have authority to make investment decisions that are binding upon this Fund and Plan, provided that such decisions are consistent with the Plan's Investment Policy and provided further that the Fund's Trustees shall receive regular reports of these investment decisions.

(e) The Trustees are authorized to appoint an investment manager or managers (within the meaning of ERISA § 3(38)) and to delegate to such investment manager or managers the authority and responsibility to manage, invest, and reinvest all or any portion of the Fund.

(f) The Trustees may designate a person or entity as named fiduciary with the authority under the Fund to appoint, pursuant to section 402(c)(3) of ERISA, an investment manager or investment managers (as such term is defined under Section 3(38) of ERISA) to manage (including the power to acquire and dispose of) assets of the Trust; and in that event, such named fiduciary may exercise such discretionary authority to select, appoint, retain, and terminate one or more investment managers to manage Fund assets.

(g) The Trustees may hold uninvested, from time to time, without liability for interest thereon, such amounts as are necessary for the cash requirements of the Fund. Said amount may be deposited in an account of a bank under state or federal supervision that is a corporate trustee or custodian.

**Section 4.12 – Additional Powers**

Without limiting any powers and authority otherwise conferred upon the Trustees by the

Agreement or law, the Trustees shall have the following powers and authority with respect to the Fund:

(a) Purchase of Property: To purchase, or subscribe for, any security or other property and to retain the same in the Fund.

(b) Sale, Exchange, Conveyance and Transfer of Property: To sell, exchange, convey, transfer, or otherwise dispose of any security or other property held by the Fund by private or public sale; to grant options for the purchase or exchange thereof, including put options and call options for Fund securities and property. No person dealing with the Trustees shall be bound to see to the application of the purchase money or to inquire into the validity, expediency, or propriety of any such sale or other disposition.

(c) Leasing and Sale of Real Estate: To sell any real estate which at any time constitutes a part of the Fund, to lease real estate for any term or terms, and to execute good and sufficient deeds and leases.

(d) Exercise of Owner's Rights: To vote upon any stocks, bonds or other securities; to give general or special proxies or powers of attorney with or without power of substitution; to exercise any conversion privileges, subscription rights, or other options, and to make any payments incidental thereto; to oppose or to consent to, or otherwise participate in, corporate reorganization or other changes affecting corporate securities, and to delegate discretionary powers, and to pay any assessments or charges in connection therewith; and generally to exercise any of the powers of an owner with respect to stocks, bonds, securities, or other properties held as part of the Fund.

(e) Registration of Investments: To cause any securities or other properties held as part of the Fund to be registered in its own name or in the name of one or more of its nominees, and to hold any investments in bearer form, but the books and records of the Fund shall at all times show that all such investments are a part of the Fund.

(f) Borrowing and Lending: To borrow or to raise money for the purposes of the Fund in such amounts, and upon such terms and conditions, as the Trustees shall deem advisable; and, for any sum so borrowed, to issue promissory notes as Trustees, and to secure the repayment thereof by pledging all, or any part, of the Fund. No person lending money to the Fund shall be bound to see to the application of the money lent or to inquire into the validity, expediency, or propriety of any such borrowing. Sums borrowed may be borrowed from any source not prohibited by law.

(g) Retention of Property Acquired: To accept and retain for such time as the Trustees may deem advisable any securities or other property received or acquired by the Fund, whether or not such securities or other property would normally be purchased as trust investments.

(h) Execution of Instruments: To make, execute, acknowledge, and deliver any and all documents of transfer and conveyance and any and all deeds, leases, notes, bonds, guarantees, mortgages, contracts, waivers, releases and other instruments that may be necessary or appropriate to carry out the purposes of the Fund and the powers herein granted.

(i) Settlement of Claims and Debts: To settle, compromise, or submit to arbitration any

claims, debts or damages due or owing to or from the Fund, to commence or defend suits or legal or administrative proceedings, and to represent the Fund in all legal and administrative proceedings.

(j) Employment of Administrator, Agents, Counsel, and Investment Managers: To employ suitable administrators, agents, actuaries, accountants, counsel, and other professional consultants, including investment managers, and to pay their reasonable expenses and compensation from the Fund.

(k) Power to Do Any Necessary Act: To exercise, generally, any of the powers which an individual owner might exercise in connection with property either real, personal, or mixed held by the Fund, and to do all such acts, take all such proceedings, and execute all such rights and privileges, although not specifically mentioned herein, as the Trustees may deem necessary or desirable to administer the Fund and to carry out the purposes of the Agreement.

(l) Collective Bargaining Agreements: To reject any collective bargaining agreement of an Employer and all contributions due thereunder whenever the Board of Trustees determines that any provision of said collective bargaining agreement or practice of the Employer related to the Employees covered by the collective bargaining agreement is inconsistent with the practices and rules of the Plan or Fund or is adverse to the Plan or Fund. Any such rejection shall be effective as of the date determined by the Board of Trustees (which can be retroactive to the effective date of the rejected collective bargaining agreement), and from and after said effective date, said Employer and the Employees of said Employer shall not be considered an Employer or Employee for the purposes of this Agreement or the Plan.

(m) Subcommittees: The Trustees may appoint and delegate powers to subcommittees of Trustees, which shall have authority to act on behalf of the Board of Trustees. The notice, quorum, and voting rules in section 4.04 shall also apply to subcommittee meetings. A report shall be provided to the Trustees of subcommittee action taken.

**Section 4.13 – Books and Records**

The Trustees shall keep accurate books of account and records of all Fund transactions, which shall be audited annually or more often by a certified public accountant. A duly signed and certified copy of such audit shall be available to the Employers under the Plan and the Union without charge therefor being made to them.

**Section 4.14 – Compensation; Expenses**

No Trustee shall receive compensation for the performance of their duties.

All Trustees may be reimbursed for all reasonable and necessary expenses that they may incur in the performance of their duties.

**Section 4.15 – Liability; Insurance; Indemnification**

Except as may otherwise be required by ERISA or other applicable law:

(a) No Trustee shall be liable for any error of judgment or for any Claims (as that term is

defined in paragraph (e) below) arising out of any action taken or omitted in good faith, nor for any act or omission of any other Trustee or any subcommittee of Trustees or any agent elected or appointed by or acting for the Trustees, except as provided by ERISA or any other applicable law.

(b) The Trustees shall be permitted to procure any liability insurance permitted by law or regulation with respect to the performance of their duties.

(c) The Trustees shall not be personally answerable for any liabilities or debts of the Plan or the Fund incurred by them as Trustees, but said debts and liabilities shall be paid out of the Trust Fund;

(d) The Trustees shall not be personally liable for the proper application or any part of the Trust Fund or for any other liabilities arising in connection with the administration of the Plan or the Trust Fund;

(e) To the extent not covered by insurance, the Trust Fund shall protect, indemnify, and hold harmless the Trustees and their employees and other agents, from and against any and all liabilities, damages, taxes, judgments, debts, assessments, penalties, losses, expenses, attorneys' fees, costs, and claims (hereinafter collectively referred to as "Claims") incurred by such person(s) as a result of any act, omission, or conduct committed by said person(s) in connection with the performance of his or her powers, duties, responsibilities, or obligations under the Plan, Fund, this Agreement, ERISA, the Code, or other applicable laws, except with respect to Claims as to which there is a final judgment of such person's own fraud or willful misconduct.

## ARTICLE V

## AMENDMENT; MERGER; TERMINATION

**Section 5.01 – Amendment**

(a) Subject to the provisions set forth in this Section, the Agreement may be amended at any time by a majority vote of the Trustees at a regular or special meeting or by the written concurrence of all of the Trustees.

(b) Amendments of the Agreement shall be made by due execution of an instrument of equal formality as the Agreement. Amendments shall not require the consent of any person.

(c) No amendment shall be made that would authorize an unequal number of Employer Trustees and Union Trustees, or that would change the prescribed voting method when an unequal number of Employer Trustees and Union Trustees are present at a meeting.

(d) No amendment shall be made that would cause any part of the Fund to be used for or diverted to any purpose other than the purposes of the Fund described above.

**Section 5.02 – Merger, Consolidation, or Transfer of Assets**

To the extent permitted under ERISA and other applicable law, the Plan and Fund may be merged or consolidated with, or a part of its assets or liabilities transferred to, any other plan

and trust at the direction of the Board of Trustees and under such terms and conditions as the Trustees shall specify.

**Section 5.03 – Termination**

(a) The Trust hereunder may be terminated at any time by vote of all Trustees and with such effective date as the Trustees may determine.

(b) In the event of a termination, the assets then remaining in the Fund, after providing for the expenses of the Plan and for any payments of benefits theretofore approved or properly due, shall be distributed in the manner determined by the Trustees consistent with the requirements of the Plan, the Code, and ERISA.

(c) In no event shall any part of the Fund revert to the Employers or inure to the benefit of any Employer as the result of the termination of the Plan and Fund.

## ARTICLE VI

## MISCELLANEOUS PROVISIONS

**Section 6.01 – Participant's Rights**

(a) The existence of the Plan, the Fund, and the benefits provided hereunder shall not create or change any contract between an Employer and its Employees. For example, participation hereunder shall not grant any Participant the right to be retained in the service of the Employer, and nothing in the Trust Agreement shall be construed as a guarantee of any given periods of work or employment at any job or given level of compensation or salary for any job.

(b) No person shall have any rights under the Plan and Fund except to the extent such rights accrue to him or her as provided in the Plan and the Trust Agreement. The Fund shall be the sole source for satisfaction of such rights, and under no circumstances shall any liability or responsibility therefor be attached to the Trustees, any Employer, or the Union, except the liability for making Employer Contributions or otherwise specifically provided for in the Trust Agreement or under applicable law.

**Section 6.02 – Adoption of Trust Agreement**

An Employer adopts and is bound by the Trust Agreement when it is a party or subject to a collective bargaining agreement or participation agreement obligating the Employer to make Employer Contributions.

**Section 6.03 – Spendthrift**

As and to the extent required or permitted by ERISA and the Code, benefits and interests in the Plan and the Fund shall not be subject in any manner to alienation, sale, transfer, assignment, pledge, attachment, or encumbrance of any kind, or otherwise subject to the claims of creditors (subject to the provisions of the Plan regarding qualified domestic relations orders and benefit offsets for certain violations and breaches).

**Section 6.04 – Costs**

All costs of administering the Plan and Fund, including the fees and expenses of agents, actuaries, accountants, counsel, and other professional consultants for the Plan, Fund, or the Trustees, shall be paid from the Fund, and no responsibility or liability therefor shall be asserted against any Employer, the Union, or the Trustees.

**Section 6.05 – Separability**

The Articles and Sections of the Agreement shall be deemed separable so that the invalidity of any portion shall not affect the validity of the remainder.

**Section 6.06 – Compliance with the Code and ERISA**

The Plan and Fund are intended to comply with all requirements for exemption under the Code and with ERISA. Accordingly, the Plan and Trust Agreement shall be construed and interpreted in such manner as to give effect to this intent.

**Section 6.07 – Gender and Number**

The use of the singular shall be interpreted to include the plural and the plural the singular, as the context shall require. The use of the masculine, feminine, or neuter shall be interpreted to include the masculine, feminine, or neuter, as the context shall require.

**Section 6.08 – Situs; Governing Law**

The Agreement is executed and delivered in Washington, D.C. To the extent not preempted by Federal law, the provisions of the Agreement and the Plan shall be governed and construed under the laws of the District of Columbia.

**Section 6.09 – Resolution of Disputes; Venue**

Any controversy or claim, other than collection actions governed by Section 3.05 of this Agreement, made arising out of or relating to the Plan or Fund shall be settled by arbitration in accordance with the Employee Benefit Plan Claims Arbitration Rules of the American Arbitration Association. The decision of the arbitrator shall be final and binding and judgment upon the award may be entered in any court having jurisdiction thereof. Any and all such disputes shall be resolved exclusively in Washington, D.C., unless the Board of Trustees agrees in writing to resolve the dispute elsewhere.

**Section 6.10 – Recovery of Mistaken Payments**

If for any reason (including, but not limited to, mistake of fact or law, or reliance on any false or fraudulent statements, information, or proof submitted by a claimant) benefit payments are made to any person from the Fund in excess of the amount that is due and payable under the Plan, the Trustees (or their delegate) shall have full authority, in their or his or her sole and absolute discretion, to recover the amount of any overpayment (plus interest and costs). That authority shall include, but not be limited to: (i) the right to reduce benefits payable in the future to the person who received the overpayment, (ii the right to reduce benefits payable to any beneficiary who is, or may become, entitled to receive payments from the Plan derived from the rights of that person, and (iii) the right to initiate legal action to recover any overpayment.

**Section 6.11 – Notice**

Any notice given hereunder to any of the Trustees, Employers, or the Union shall be sufficient if given in writing and delivered or sent by first class mail, fax, or electronic mail to the addressee at the address on file at the Fund office.

**Section 6.12 – Counterparts**

This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which shall be considered the same instrument. The signature of a party on any counterpart shall be sufficient evidence of his or her execution thereof.

## ARTICLE VII

## DEFINITIONS

**Section 7.01 – Agreement / Trust Agreement**

The Agreement and Declaration of Trust establishing the Service Employees International Union National Industry Pension Fund effective August 15, 1968, as amended from time to time.

**Section 7.02 – Board of Trustees or Trustees**

The Employer and Union Trustees, or their successors, as provided for under the Trust Agreement.

**Section 7.03 – Code**

The Internal Revenue Code of 1986, as the same may be amended from time to time.

**Section 7.04 – Employee**

A person employed by one or more Employers and represented by one or more local unions affiliated with the Service Employees International Union.

**Section 7.05 – Employer**

One or more persons, firms, or corporations who may employ one or more Employees and who is accepted by the Trustees for participation in the Fund, which may include (i) employers who have collective bargaining agreements with the Union or with local unions or other organization affiliated with, or related to the Union, (ii) local unions and other organizations affiliated with, or related to the Union, (iii) trust funds sponsored by the Union, local unions or organizations affiliated with, or related to the Union, and (d) any other employer or labor organization approved by the Trustees.

**Section 7.06 – Employer Contributions**

Payments made or required to be made to the Fund in accordance with the terms of a collective bargaining agreement, or such other contributions made or required to be made to the Fund as a result of a participation agreement executed by the Board of Trustees with an Employer. Employer Contributions also includes withdrawal liability payments.

**Section 7.07 – ERISA**

The Employee Retirement Income Security Act of 1974, as the same may be amended from time to time.

**Section 7.08 – Fund**

The Service Employees International Union National Industry Pension Fund, which shall include all funds received by the Board of Trustees in the form Employer Contributions, together with all contracts (including dividends, interest, refunds payable under such contracts) and investments made by the Board of Trustees, and all income, increments, earnings, and profits therefrom, and any and all other funds or property received and held by the Board of Trustees by reason of their acceptance of the Trust Agreement.

**Section 7.09 – Participants**

Employees of Employers who meet the requirements for participation in the Plan, and their spouses and beneficiaries.

**Section 7.10 – Plan**

The Pension Plan of the SEIU National Industry Pension Fund, as amended and restated as of January 1, 2015, and amended from time to time.

**Section 7.11 – Taft-Hartley Act**

The Labor-Management Relations Act of 1947, as amended from time to time.

**Section 7.12 – Union**

The Service Employees International Union. For purposes of this Agreement, Union shall also include local unions affiliated with the Service Employees International Union as the context shall require.

SIGNATURE PAGE TO FOLLOW