**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION NATIONAL INDUSTRY PENSION FUND, and BOARD OF TRUSTEES OF THE SERVICE EMPLOYEES AND INTERNATIONAL UNION NATIONAL PENSION FUND,<br><br>Plaintiffs,<br><br>v.<br><br>FLAGSHIP FACILITY SERVICES, INC.; et al.,<br><br>Defendants. | Civil Action No.: 1:25-cv-03438-TJK |

**DEFENDANT KG CLEAN, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant KG Clean, Inc. ("KG Clean"), through its undersigned counsel, moves to dismiss Counts III and IV of Plaintiffs' First Amended Complaint (ECF No. 53) ("FAC" or "Amended Complaint") under Fed. R. Civ. P. 12(b)(6). As set forth below, Plaintiffs fail to state a plausible claim for relief against KG Clean under Sections 502 and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132, 1145, and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

## INTRODUCTION

The Court has already dismissed Plaintiffs' claims for supplemental pension contributions against three co-defendants because Plaintiffs failed to allege either an agreement to pay those contributions or satisfaction of the statutory prerequisites for imposing them. (ECF No. 49 at 5–

8.) The Amended Complaint adds KG Clean as a defendant but leaves those same defects unresolved.

For Count IV for failure to pay supplemental contributions, Plaintiffs identify no agreement requiring KG Clean to pay more than the $0.40 hourly base contribution specified in the operative collective bargaining agreements. They instead demand $0.65 per hour based on the Pension Fund's Rehabilitation Plan Default Schedule. Yet the Amended Complaint does not allege that KG Clean received the required schedules or otherwise explain how Plaintiffs satisfied the statutory prerequisites for imposing that obligation on KG Clean. Allegations that Plaintiffs sent schedules to other entities do not supply the missing facts.

Count III for failure to pay to pay base contributions has a separate, straightforward defect. Plaintiffs seek base contributions from KG Clean beginning March 1, 2021, even though their own allegations place the start of KG Clean's covered period on June 1, 2021. They identify no agreement, covered employees, or hours worked that would support a contribution obligation for those three intervening months.

This is not the first time these claims have come before the Court. Nor is it the first time they have fallen short. The Court should therefore dismiss Count IV in full and Count III to the extent it seeks contributions from KG Clean before June 1, 2021, with prejudice.

## RELEVANT FACTUAL ALLEGATIONS FROM THE AMENDED COMPLAINT

Plaintiffs, Service Employees International Union ("SEIU") National Industry Pension Fund ("Pension Fund") and its Board of Trustees (the "Board") (collectively, "Plaintiffs") bring this action to collect pension contributions they claim are owed on behalf of janitorial employees at Denver International Airport. (FAC at ¶¶ 1, 34.) The Pension Fund provides retirement benefits to workers whose employers are signatories to a collective bargaining agreement ("CBA") with a

local union of the SEIU. (*Id.* ¶ 15.) SEIU Local 105 ("Local 105") has represented the Airport's janitorial workers at all times material to the Complaint. (*Id.* ¶ 34.) Each contributing employer is a party to the Pension Fund's Trust Agreement. (*Id.* ¶ 19, Ex. A-1 (Amended and Restated Agreement & Declaration of Trust of the Service Employees International Union National Industry Pension Fund) ("Trust Agreement").)

The Pension Fund is a critical status multiemployer pension plan. (*Id.* ¶ 22.) Its actuary certified it in critical status on March 31, 2009. (*Id.*) The Board then adopted a Rehabilitation Plan that went into effect on November 17, 2009. (*Id.*) Plaintiffs allege that the Rehabilitation Plan requires contributing employers to make a supplemental contribution in addition to the base rate contribution specified in their CBAs. (*Id.* ¶ 26.) Plaintiffs allege that, since 2013, employers subject to the Rehabilitation Plan's Default Schedule have been required to pay supplemental contributions equal to 62.5% of their base contributions. (*Id.* ¶ 29.)

In June 2020, during the competitive bidding process for the main airport contract (the "Airport Contract"), Defendant Flagship Facility Services, LLC ("Flagship"), improperly named in the Complaint as Flagship Facility Services, Inc. (ECF No. 65-1 at 1), entered a memorandum of understanding with Local 105 (the "MOU"). (FAC ¶ 62, Ex C-8 (ECF No. 53-3 at 126).) Plaintiffs allege that the MOU required Flagship, if it was to be awarded the contract, to maintain the incumbent employees' terms and conditions of employment and assume the ISS CBA, including any riders. (*Id.* ¶ 65.) The MOU names only Flagship and Local 105 as parties. (*Id.* Ex C-8.) The MOU does not state a contribution rate. (*Id.*)

ISS Facility Services ("ISS") served as the prime contractor for the Airport Contract until Flagship replaced it on March 1, 2021. (FAC ¶ 39.) The ISS CBA required covered employers to make base pension contributions of $0.40 per hour worked. (*Id.* ¶¶ 45, 50.) Plaintiffs allege that

ISS and Local 105 received Rehabilitation Plan schedules before the expiration of the ISS CBA, failed to adopt a schedule, and consequently became subject to the Board's imposition of the Default Schedule. (*Id.* ¶¶ 46-52.)

On or about March 1, 2021, Defendant Flagship took over the Airport Contract. (*Id.* ¶ 61.) KG Clean was one of Flagship's subcontractors. (*Id.* ¶ 83.) Plaintiffs' chart identifies KG Clean's covered period as beginning June 1, 2021. (*Id.* at 8-9.)

Plaintiffs allege that the ISS CBA expired on September 30, 2021, but remained in effect through November 30, 2021. (*Id.* ¶ 97.) After the ISS CBA expired, Flagship and Local 105 entered into successive CBAs for the 2021-2024 and 2024-2028 periods (the "Flagship CBAs"). (*Id.* ¶¶ 104, 113.) The 2021 Flagship CBA went into effect December 1, 2021. (*Id.* ¶ 104.) The Flagship CBAs are attached to the FAC as exhibits. (*Id.* Ex. C-15 & C-16.) Article 22 of each Flagship CBA specifies a base pension contribution rate of $0.40 per hour, and does not set out any supplemental rate. (*Id.* (*see* Article 22, ECF No 53-3 at 165, 198).)

Plaintiffs allege that because the Flagship CBAs did not adopt any Rehabilitation Plan schedules, the Board "has imposed the Default Schedule on Defendant Flagship and any employer that has an obligation to contribute." (*Id.* ¶ 107.) Plaintiffs allege the same with respect to the prior ISS CBA, stating that the Board "imposed the Default Schedule of supplemental contributions as a requirement on any employer required to contribute" under that agreement. (*Id.* ¶ 47.)

The Amended Complaint does not allege that the Board ever notified KG Clean that it had imposed the Default Schedule under any of the operative CBAs or that it provided KG Clean with notice of the schedules of supplemental contributions. Plaintiffs only allege they provided copies of the schedules of supplemental contributions under the Rehabilitation Plan to an Agent of Flagship and to Local 105. (*Id.* ¶¶ 102-103.) Specifically, Plaintiffs allege that, "[o]n June 11,

2021, the Pension Fund emailed an agent of Defendant Flagship, Ms. Maggie Portillo, a copy of its Bargaining Basics Manual, which contained within it a copy of the Rehabilitation Plan and the schedules of supplemental contributions under the Rehabilitation Plan." (*Id.* ¶ 102.) Plaintiffs allege that, "[o]n October 15, 2021, the Pension Fund emailed Local 105 a copy of its Bargaining Basics Manual, which contained within it a copy of the Rehabilitation Plan and the schedules of supplemental contributions under the Rehabilitation Plan." (*Id.* ¶ 103.) Both notices were sent in 2021, after Flagship assumed the ISS CBA and its $0.40 base rate, and after KG Clean's period began on June 1, 2021. Neither notice was tied to the negotiation that set the operative base rate. More importantly, neither notice is alleged to have been sent to KG Clean.

Plaintiffs now seek to hold all Defendants liable for failing to make contributions to the Pension Fund at "a rate of $0.65 per hour worked, consistent with the sum of the base rate of $0.40 per hour worked set forth in Article 22 of those agreements, and the 62.5% supplemental contribution rate set forth in the Default Schedule of the Pension Fund's Rehabilitation Plan." (*Id.* ¶ 151.) The FAC asserts that from "March 1, 2021, running through the present, none of the Defendants, other than Defendant AFL Maintenance, have made any contributions to the Pension Fund." (*Id.* ¶ 117.)

**<u>PROCEDURAL HISTORY</u>**

Plaintiffs commenced this action in September 2025. (ECF No. 1.) Defendants Flagship, AFL Maintenance Group, and Whayne & Sons Enterprises moved to dismiss the original Complaint's claims for supplemental contributions. (ECF No. 30.) On July 20, 2026, the Court dismissed the supplemental contribution claims against those defendants. (ECF No. 49.) The Court concluded that Plaintiffs had not plausibly alleged either a contractual assumption of the

supplemental-contribution obligation or satisfaction of the statutory prerequisites for imposing the Default Schedule. (*Id.* at 5-8.)

Plaintiffs filed the First Amended Complaint on September 4, 2026, adding KG Clean as a defendant. (ECF No. 53.) The Amended Complaint names KG Clean in three counts: Count III seeks base rate contributions for March 1 through November 30, 2021; Count IV seeks supplemental contributions from December 1, 2021, through the present; and Count V seeks compliance with reporting and record-production requirements. (FAC ¶¶ 145-158.)

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff states a facially plausible claim when he or she pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true "all well-pleaded factual allegations" and "construes reasonable inferences from those allegations in the plaintiff's favor." *Sissel v. U.S. Dep't of Health & Hum. Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014). But "mere conclusory statements" are not enough to establish a plausible claim, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Court may consider "any documents either attached to or incorporated in the complaint." *Joyner v. Morrison and Foerster LLP*, 140 F.4th 523, 529 (D.C. Cir. 2025) (quoting *Hurd v. District of Columbia Gov't*, 864 F.3d 671, 678 (D.C. Cir. 2017)). A court, however, does not "accept as true . . . the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. On Foreign Inv. In U.S.*, 758 F.3d 296, 315 (D.C. Cir.

2014). Where an amendment attempts to cure a previously identified pleading defect, the Court can and should presume that the Plaintiffs "cannot point to any actual facts giving rise to a valid claim for relief." *In re Papst Licensing GMBH & Co. KG Litig.*, 585 F. Supp. 2d 32, 35 (D.D.C. 2008). This is particularly true where the pleading asks the Court to accept "legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)

## ARGUMENT

### I. Count IV For Supplemental Contributions Fails Against KG Clean.

### A. No Agreement Binds KG Clean to the Claimed Supplemental Contribution Rate.

A fund cannot collect a contribution rate that no agreement imposes. The Amended Complaint does not plausibly allege that KG Clean agreed to contribute to the Pension Fund at a supplemental rate. Plaintiffs identify a $0.40 hourly base contribution rate in the operative CBAs, but do not identify contractual language requiring KG Clean to pay beyond that, much less a rate of $0.65. As with the original Complaint, Plaintiffs simply assert the $0.65 rate as a legal conclusion, untethered to any agreement that binds KG Clean to it.

ERISA and LMRA foreclose Plaintiffs' approach. "[A]s a general matter, ERISA holds employers and unions to the literal terms of their written commitments." *Fanning v. Capco Contractors, Inc.*, 711 F. Supp. 2d 65, 72 (D.D.C. 2010). Section 515 requires an employer obligated to contribute under a plan or CBA to make contributions only "in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; *see also Fanning v. AMF Mech. Corp.*, 326 F.R.D. 11, 14 (D.D.C. 2018) (Kelly, J.) ("ERISA requires employers to make contributions to multiemployer plans 'in accordance with the terms and conditions of' the relevant collective-bargaining agreements."). The LMRA likewise requires that "the detailed basis on

which such payments are to be made is specified in a written agreement with the employer." 29 U.S.C. § 186(c)(5)(B). These provisions enforce an existing contribution obligation. They do not create one. Citations to the statute do not supply the missing contractual term.

Here, no agreement binds KG Clean to a supplemental contribution rate. The KG Clean Me-Too Agreement[1] does not impose one. But it is the only agreement Plaintiffs identify as involving KG Clean directly. (FAC ¶ 91, Ex. C-11.) The single-paragraph agreement provides only that the parties agree to be bound by, and to execute as their own CBA, the agreement reached by Flagship. (*Id.*) The Amended Complaint itself cites Article 22 of the Flagship CBAs as the source of covered employers' obligation to contribute to the Pension Fund. (*Id.* ¶¶ 105, 114.) Yet Article 22 specifies only the $0.40 base rate. (FAC Ex. C-15 & C-16 (ECF No. 53-3 at 165, 198).) It provides nothing regarding any supplemental rate. (*Id.*)

The additional 62.5% increase that yields Plaintiffs' claimed $0.65 figure comes solely from the Board's unilateral imposition of the Default Schedule. (FAC ¶ 95.) But an allegation that the Board imposed that schedule is not itself an allegation that KG Clean contractually adopted it. Nothing in the Me-Too Agreement, the ISS CBA, the Flagship CBAs, or any other writing identified in the Amended Complaint is alleged to have adopted the Rehabilitation Plan's supplemental schedule on KG Clean's behalf. Nor do Plaintiffs otherwise plead facts showing that KG Clean assumed that obligation.

Without a written agreement setting forth a supplemental contribution rate undertaken by KG Clean, the Amended Complaint does not plausibly establish that KG Clean was obligated to

---

[1] A "me-too agreement" is simply "a contract where an employer agrees to be bound by the terms of a CBA negotiated by a multiemployer association and local union." *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Four-C-Aire, Inc.*, 42 F.4th 300, 307 (4th Cir. 2022) (citation omitted).

pay such an amount. Plaintiffs' assertion to the contrary is a conclusory recital that the Court "need not credit." (ECF No. 49 at 6.) This defect is structural, not a matter of pleading detail.

KG Clean's only agreement adopts a CBA that contains no supplemental rate. Because a fund cannot enforce a nonexistent contractual obligation, *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021-1022 (4th Cir. 1997), Plaintiffs' contractual theory underlying Count IV fails.

**B. Plaintiffs Fail to Allege That They Satisfied ERISA's Statutory Prerequisites for Imposing Supplemental Contribution Obligations on KG Clean.**

In addition to failing to allege that KG Clean contractually assumed a supplemental rate, the Amended Complaint further fails to allege that the statutory prerequisites for imposing the Default Schedule's supplemental rate were satisfied. Plaintiffs allege that KG Clean is liable for the supplemental contributions set out in the Rehabilitation Plan's Default Schedule. Like the original Complaint, the Amended Complaint invokes "federal law" as the basis for imposing that schedule. (FAC ¶¶ 30, 151.) But invoking the statute does not establish that its prerequisites were satisfied as to KG Clean. As demonstrated here, they were not.

The Court identified the same defect in dismissing the original supplemental contribution claims against the moving co-defendants on Plaintiffs' statutory theory. (ECF No. 49 at 5–8.) Specifically, the Court found only a conclusory assertion of liability under federal law, and it granted leave to amend the deficient allegations. (*Id.* at 6, 8-9.) The vestige of those deficient allegations still remain.

The governing provision is 29 U.S.C. § 1085(e)(3)(C), which allows a pension fund to impose contribution schedules on an employer only in defined circumstances and through distinct procedures for an initial schedule and subsequent schedule. For an initial schedule, the statute requires expiration of a CBA that was in effect when the plan entered critical status, and the

bargaining parties' failure, after receiving the sponsor's schedules, to adopt a compliant contribution schedule. For a subsequent schedule, it requires expiration of a CBA that provided for contributions under a previously provided or imposed schedule while the plan remained in critical status, and the bargaining parties' failure, after receiving updated schedules, to adopt a compliant schedule. In that circumstance, the sponsor implements the schedule applicable under the expired CBA, as updated and in effect at expiration. 29 U.S.C. § 1085(e)(3)(C)(i)–(ii). Under either route, the implementation date is 180 days after the relevant CBA expires. *Id.* § 1085(e)(3)(C)(iii). Receipt of the schedules is a statutory predicate under both routes. Section 1085(e)(1)(B)(i) requires the sponsor to provide schedules to the bargaining parties, and clauses (i) and (ii) of § 1085(e)(3)(C) expressly condition implementation on the parties' failure to adopt a compliant schedule *after* receiving them.

The Amended Complaint now pleads the relevant CBAs and their expiration dates, but it still does not identify any transmittal of the requisite schedules to KG Clean or allege when KG Clean received them. Plaintiffs allege only that the Fund: provided the Rehabilitation Plan and schedules to ISS and Local 105 (FAC ¶¶ 46, 48); emailed its Bargaining Basics manual, which contained a copy of the Rehabilitation Plan and the supplemental contribution schedules, to a named Flagship agent on June 11, 2021, and to Local 105 on October 15, 2021 (FAC ¶¶ 102-103); and provided the Rehabilitation Plan to Flagship and Local 105 in 2024 and 2025 (FAC ¶¶ 111–112). Those allegations identify other recipients. Not KG Clean. Plaintiffs make no attempt at explaining how those transmittals constituted receipt by KG Clean or otherwise satisfied the statutory prerequisites for imposing the Default Schedule on it. Most likely, because there is no reasonable explanation.

Ultimately, Plaintiffs allege that the Board imposed the Default Schedule because the Flagship CBAs did not adopt a Rehabilitation Plan schedule, and that federal law required supplemental contributions. (FAC ¶¶ 107, 116, 151.) Those allegations describe the Board's asserted action and Plaintiffs' legal conclusion. Still missing is why the resulting obligation applies to KG Clean. Indeed, the missing link is not merely an employer-specific 180-day period running from receipt; it is any plausible factual basis for applying the statutory procedures, and the resulting schedule, to KG Clean for the periods claimed. An allegation that a defendant owes the supplemental contribution "as a matter of federal law," unsupported by facts going to the § 1085(e)(3)(C) prerequisites, is precisely the "conclusory statement that the Court need not credit." (ECF No. 49 at 6.) Without those necessary facts, Plaintiffs fail to allege satisfaction of ERISA's statutory prerequisites as to KG Clean.

## II. Count III Seeks to Hold KG Clean Liable For Contributions Before Its Alleged Covered Periods.

In Count III, Plaintiffs seek contributions from all Defendants beginning March 1, 2021. (FAC ¶¶ 145-149.) But the Amended Complaint alleges that KG Clean signed its "me-too" agreement on or around June 1, 2021. (*Id.* ¶ 91.) Plaintiffs' own "coverage chart" likewise identifies June 1, 2021, as the beginning of KG Clean's covered period. (*Id.* at 8-9.)

The Amended Complaint alleges no covered employees, hours worked, or agreement establishing that KG Clean owed contributions from March 1 through May 31, 2021. Instead, the scant KG Clean-specific allegations identify a covered period beginning June 1, 2021. Plaintiffs' collective allegations against all Defendants cannot bridge that gap. Those allegations identify no basis for imposing a contribution obligation on KG Clean before its alleged coverage began. Count III therefore should be dismissed to the extent it seeks contributions from KG Clean for the period of March 1 through May 31, 2021.

## CONCLUSION

For the foregoing reasons, KG Clean respectfully requests that the Court dismiss the claims against it under Federal Rule of Civil Procedure 12(b)(6) as follows: dismiss Count IV in its entirety for supplemental contributions; and dismiss Count III to the extent it seeks contributions for the period before June 1, 2021. A proposed order is submitted concurrently.

Dated: October 30, 2026

Respectfully submitted,

*/s/ Jessica D. Feldman*

Jessica D. Feldman (DC Bar No. 1045132)
FISHER & PHILLIPS LLP
1401 New York Avenue, NW, Suite 400
Washington, DC 20005
Tel. (202) 908-1140
Fax (202) 978-3788
jfeldman@fisherphillips.com

*Attorney for Defendant KG Clean, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on October 30, 2026, undersigned caused a true and correct copy of the foregoing motion to be filed through the Court's CM/ECF filing system.

*/s/ Jessica D. Feldman*
Jessica D. Feldman